# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| CARLOS PRIETO, individually and on behalf of a class defined herein, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| HBLC, INC.; STEVEN J. FINK; and | ) |
| STEVEN J. FINK & ASSOCIATES, P.C., | ) |
| | ) |
| Defendants | ) |

```
FILED
MAY 9, 2008              YM
08CV2718
JUDGE GUZMAN
MAGISTRATE JUDGE SCHENKIER
              JURY TRIAL DEMANDED
```

## CLASS ACTION - COMPLAINT

### INTRODUCTION

1.     Plaintiff, Carlos Prieto ("Plaintiff"), brings this class action to secure redress against an unlawful credit and collection practice engaged in by Defendant HBLC, Inc. and Defendants Steven J. Fink and Steven J. Fink & Associates, P.C. ("Fink") collectively ("Defendants") that violates the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*., ("FDCPA") and which perpetrates a fraud upon the Illinois Court system and consumers through the use of a copy of the same "Cardmember Agreement" used in every state court complaint filed by Fink on behalf of HBLC, Inc. as the purported, "final transfer of Discover".

2.     Plaintiff complains that HBLC, Inc. and Fink have engaged in a systematic practice of filing the same copy of a two page "Cardmember Agreement" as an exhibit attached to state court collection lawsuits on behalf of HBLC, Inc. as the purported, "final transfer of Discover", Exhibit 1 attached hereto the Complaint, which is alleged to be, "A true copy of the Cardmember Agreement".  However, in fact it is a copy of the same exact document

that on its face was revised on "2/90" (nineteen-hundred ninety) and has a nineteen-hundred

ninety-six fax header "JAN 17 '96 09:18AM NOVUS SERVICE".

3.     On or about the end of February 2008, the fax header "JAN 17 '96

09:18AM NOVUS SERVICE" was cut off and the two-page "Cardmember Agreement" was

reduced into a one-page exhibit that is now attached to state court complaints filed by

Defendants where HBLC, Inc. is the purported, "final transfer of Discover".  A copy of the one-

page "Cardmember Agreement" now used by Defendants is attached hereto as Exhibit 2.

4.     The FDCPA was enacted, "to eliminate abusive debt collection practices

by debt collectors, to insure that those debt collectors who refrain from using abusive debt

collection practices are not competitively disadvantaged, and to promote consistent state action

to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

## JURISDICTION AND VENUE

5.     This Court has jurisdiction under 28 U.S.C. §§1331, 1337, 15 U.S.C.

§1692k (FDCPA).

6.     Venue and personal jurisdiction over Defendants in this District is proper

because:

a.     Plaintiff is a resident of Cook County, Illinois which is within in

the District;

b.     HBLC, Inc. transacts business in the District through litigation

against consumers who are located within the District;

c.     Fink maintains an office and transacts business in the District; and

d.     Defendants' collection activities occurred within the District.

## PARTIES

7.      Plaintiff is an individual who resides in Cook County, Illinois.

8.      HBLC, Inc. is an Illinois Corporation.  Its registered agent and offices are Jennifer L. McAllister, 421 N. Northwest Hwy., Suite 201, Barrington, Illinois 60010. Lawrence Splig ("Splig") is the President and Secretary of HBLC, Inc., has an equity interest in the company and lists his address with the Illinois Secretary of State as being that of Jennifer L. McAllister ("McAlister"), 421 N. Northwest Hwy., Suite 201, Barrington, Illinois 60010. According to the Illinois Attorney Registration & Disciplinary Commission's website Jennifer L. McAllister is an attorney at Jennifer L. McAllister, P.C.  Splig and McAllister are husband and wife.

9.      HBLC, Inc. business activities include the acquisition of assets.  These assets that are acquired by HBLC, Inc. are consumer debt that are in default at the time of HBLC Inc.'s acquisition.

10.      HBLC, Inc. is a debt collector as defined in 15 U.S.C. § 1692a(6) in regard to its conduct complained of herein.

11.      Defendant Steven J. Fink & Associates, P.C. is an Illinois Corporation.  Its office and registered agent is Steven J Fink, 25 E. Washington, Suite 1233, Chicago, Illinois 60602.

12.      Defendant Steven J. Fink & Associates, P.C.'s practice involves the regular collection of debts owed to others.

13.      Defendant Steven J. Fink & Associates, P.C. is a debt collector as defined in 15 U.S.C. § 1692a(6) in regard to its conduct complained of herein.

14.      Defendant Steven J. Fink is an individual attorney whose practice involves the regular collection of debts owed to others.

15.    Defendant Steven J. Fink is a debt collector as defined in 15 U.S.C. § 1692a(6) in regard to its conduct complained of herein.

16.    Under Illinois law, Steven J. Fink is personally responsible for the acts and omissions of his professional corporation that he directs or in which he participates. Additionally, on information and belief all of the state court complaints containing the acts complained of herein contain the signature of Steven J. Fink.

## FACTS RELATED TO CLASS MATTERS

17.    HBLC, Inc. prior to filing suit against a consumer obtains none or virtually no documentation sustaining that the purported debtor actually owes money to anyone.  If HBLC, Inc. wanted such documentation it would have to pay more money to obtain such documentation, if any documentation supporting the purported debt exist at all.

18.    To make up for this self-created deficiency HBLC, Inc. used a document in the form of Exhibit 1 and now in the form of Exhibit 2 in support HBLC, Inc.'s claims against consumers when HBLC, Inc. sues as "HBLC, Inc., final transfer of Discover".

19.    Documents in the form of Exhibit 1 were and Exhibit 2 are now used to make it appear to the state court judge that HBLC, Inc. has attached the consumer's purported actual "Cardmember Agreement", a purported written contract, to the state court complaint.

20.    Fink filed suit in HBLC Inc.'s name against Plaintiff, HBLC, Inc., final transfer of Discover v. Carlos Prieto, 08 M1 116396, Circuit Court of Cook County, Illinois, Municipal Division, First District.  Attached hereto as Exhibit 3 is a copy of the state court complaint filed against Plaintiff.

21.     The state court complaint alleged, "That Defendant(s) opened a DISCOVER credit card . . . . A true and correct copy of the Cardmenber Agreement is attached hereto as Exhibit '2'".

22.     Defendants' statement that, "A true and correct copy of the Cardmenber Agreement is attached hereto as Exhibit '2'" is false.

23.     On information and belief, Defendants' state court complaint is a form complaint and each and every suit that Defendants file on a purported Discover "Cardmember Agreement" contain the same language, "A true and correct copy of the Cardmenber Agreement is attached hereto as Exhibit '2'."

24.     On information and belief, Defendants' state court complaints contain copies of the exact same purported, "Cardmenber Agreement" where HBLC, Inc., files suit as the "final transfer of Discover".

25.     A spot check of cases filed in Cook County, Illinois by Defendants where HBLC, Inc., files suit as the "final transfer if Discover" shows the following cases contained the same form complaint containing the language, "A true and correct copy of the Cardmenber Agreement is attached hereto as Exhibit '2'" and a copy of the same "Cardmember Agreement":

a.     HBLC, Inc., final transfer of Discover v. Tamela Jasper, 08 M1 120347 (filed February 2008) attached hereto as Exhibit 4;

b.     HBLC, Inc., final transfer of Discover v. Taiphachan Keobowavanh, 08 M1 120345 (filed February 2008) attached hereto as Exhibit 5;

c.     HBLC, Inc., final transfer of Discover v. Antoinette Peterson, 08 M1 116395 (filed February 2008) attached hereto as Exhibit 6;

       d.     HBLC, Inc., final transfer of Discover v. Keri Conrad, 07 M1

160045 (filed June 2007) attached hereto as Exhibit 7;

       e.     HBLC, Inc., final transfer of Discover v. Tina Celeste, 07 M1

160046 (filed June 2007) attached hereto as Exhibit 8.

## FACTS RELATED TO PLAINTIFF ONLY

26.     The debt sought to be collected in Exhibit 3 was incurred primarily for

personal, family or household purposes and therefore is a "debt" within the definition set forth in

15 U.S.C. § 1692a(5).

27.     The debt sought to be collected in Exhibit 3 has been in default for more

than 5 (five) years.

## COUNT I – FDCPA § 1692e VIOLATIONS
## CLASS ALLEGATION

28.     Plaintiff incorporates paragraphs 1-25e above.

29.     15 U.S.C § 1692e, in pertinent part, provides:

> A debt collector may not use any false, deceptive, or misleading
> representation or means in connection with the collection of any debt.
> Without limiting the general application of the foregoing, the following
> conduct is a violation of this section:
>
> * * *
> (10) The use of any false representation or deceptive means to collect or
> attempt to collect any debt or to obtain information concerning a
> consumer.

30.     Under Illinois law, 735 ILCS 5/13-206 for there to be a "written contract"

the writing must: (1) identifies the parties, (2) states the date of the agreement, (3) contains the

signatures of the parties, (4) and sets forth all terms of the parties' agreement. *Brown v.*

*Goodman*, 147 Ill. App. 3d 935, 940, 498 N.E.2d 845 (1st Dist. 1986); *Clark v. Western Union*

*Telegraph Co.*, 141 Ill. App. 3d 174, 176, 490 N.E.2d (1st Dist. 1986); *Weaver v. Watson*, 130 Ill

App. 3d 563, 567, 474 N.E.2d 759, 762 (5th Dist. 1984); *Munsterman v. Illinois Agricultural Auditing Association*, 106 Ill. App. 3d 237, 238-39, 435 N.E.2d 923, 925 (3rd Dist. 1982); *O.K. Electric Co. v. Fernandes,* 111 Ill. App. 3d 466, 444 N.E.2d 264, 267, 67 Ill. Dec. 225 (Ill. App. Ct. 1982); *Plocar v. Dunkin' Donuts of America, Inc.,* 103 Ill. App. 3d 740, 748, 431 N.E.2d 1175, 59 Ill. Dec. 418 (1st. Dist. 1981); *Baird & Warner, Inc. v. Addison Industrial Park, Inc.*, 70 Ill. App. 3d 39, 73, 387 N.E. 831, 838 (1st Dist. 1979).

31.     On information and belief, the majority of judgments HBLC, Inc. obtains against consumers are default judgments.

32.     It is suggested that over 90% of collection suits filed against consumers where service of process is made on the consumer result in a default judgment being entered against the consumer. *Harvey v. Great Seneca Fin. Corp*., 453 F.3d 324, 327 (6th Cir. 2006); *See also Chavez v. Bowman, Heintz, Boscia & Vician*, 07 C 640, Dkt. 42-2, Affidavit of Gerald E. Bowman, pp. 7-8 ¶ 14 (N.D. Ill. Oct. 3, 2007) (law firm obtains a majority of judgements for creditors by default judgment on debt collection cases it filed in Cook County, Illinois).

33.     The purpose and effect of Exhibit 1 and Exhibit 2 is to falsely represent that HBLC, Inc. has attached the actual "written contract" of the consumer it has sued in order to obtain a default judgment against a consumer who fails to object to the state court complaint.

34.     The use of copies of Exhibit 1 and Exhibit 2 coupled with Defendants' false statement, "A true and correct copy of the Cardmenber Agreement is attached hereto as Exhibit '2'" amounts to a fraud being perpetrated upon the state court.

35.     Defendants violated 15 U.S.C. §§ 1692e(10).

### COUNT II – FDCPA § 1692f
### CLASS ALLEGATION

36.     Plaintiff incorporates paragraphs 1-25e above.

37.    15 U.S.C. §1692f in pertinent part, states, "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

38.    Defendants violated 15 U.S.C. § 1692f.

### CLASS ALLEGATION

39.    Plaintiff brings this action on behalf of a class consisting of (a) all natural persons with an Illinois address (b) where Fink on behalf of HBLC, Inc. filed a lawsuit against the person (c) where an exhibit in either the form of Exhibit 1 or Exhibit 2 was attached to the state court complaint (d) where the state court complaint stated that the exhibit in either the form of Exhibit 1 or Exhibit 2 was, "A true and correct copy of the Cardmenber Agreement" (e) during a period beginning 1 year from the date of the filing of this lawsuit and ending 20 days after its filing.

40.    There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members.  The predominate question is whether the use of document Exhibit 1 or Exhibit 2 coupled with the statement in the state court complaint, "A true and correct copy of the Cardmenber Agreement is attached hereto as Exhibit '2'" violates the FDCPA.

41.    Plaintiff's claims are typical of the claims of the class members in regard to the form document attached as Exhibit 1 and Exhibit 2.  All are based on the same factual and legal theories.

42.    The class is no numerous that joinder of all members is impractical.  On information and belief there are over 35 persons in Cook County, Illinois alone who fit the putative class definition above.

43.    Plaintiff will fairly and adequately represent the members of the class.

44.    Plaintiff has retained experienced counsel in FDCPA matters and class

action litigation.

45.    A class action is superior for the fair and efficient adjudication of this

matter in that:

a.    Defendants course of conduct arises out of a single transaction,

involving a form document affecting a large group of individuals;

b.    Individual actions are not economical;

c.    Congress contemplated class actions as a means of enforcing the

FDCPA; and

d.    The Class members are unaware of the fraud that has perpetrated

upon them.

## COUNT III – FDCPA § 1692e VIOLATIONS
## PLAINTIFF'S ADDITIONAL INDIVIDUAL ALLEGATION

46.    Plaintiff incorporates paragraphs 1-27 above.

47.    The statute of limitations applicable to an action on a contract that is not

wholly in writing under Illinois law is five years. 735 ILCS 5/13-205. *Parkis v. Arrow Financial*

*Services, LLC*, 07 C 410, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill., Jan. 8, 2008); *Nicolai v. Mason*,

118 Ill. App. 3d 300; 454 N.E.2d 1049 (5th Dist. 1983).

48.    Furthermore, a contract is not wholly in writing if it is subject to change

from time to time by means of one party sending terms to the other and the other continuing to

do business or failing to object. *Toth v. Mansell*, 207 Ill. App. 3d 665, 669, 566 N.E.2d 730, 733

(1st Dist. 1990); *Classified Ventures, Inc. v. Wrenchead, Inc.,* 06 C 2373, 2006 U.S. Dist. LEXIS

77359 (N.D.Ill., October 11, 2006). This is because parol evidence is necessary to show what

terms were sent from time to time and that the putative debtor accepted them by continuing to do business.

49.    Defendants conduct of filing the state court complaint against Plaintiff on a time-barred debt violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5) and 1692e(10).

**WHERFORE**, Plaintiff requests this Honorable Court to enter judgment against Defendants for:

(1)    Statutory and actual damages for Plaintiff;

(2)    Statutory damages for the class in the amount of $500,000 or 1% of Defendants' net worth which ever is lesser;

(3)    Attorney's fees, litigation expenses and costs of suit; and

(4)    Such other relief as the Court deems proper.

Respectfully submitted,

s/ Curtis C. Warner
Curtis C. Warner

Curtis C. Warner
Warner Law Firm, LLC
151 N. Michigan Avenue, Suite 3714
Chicago, Illinois 60601
(312) 238-9820 (TEL)

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted,

s/ Curtis C. Warner
Curtis C. Warner

Curtis C. Warner
Warner Law Firm, LLC
151 N. Michigan Ave. Ste. 3714
Chicago, Illinois 60601
(312) 238-9820 (TEL)

08CV2718
JUDGE GUZMAN      YM
MAGISTRATE JUDGE SCHENKIER

# EXHIBIT 1

Bose Card

# CARDMEMBER AGREEMENT

**Please read this Agreement carefully before using the Discover Card.** It contains the terms and conditions of the Discover Card Account, some of which may have been changed from earlier materials provided to you, in the event of any differences, this Agreement shall control.

1. **AGREEMENT TERMS.** The word Card means any one or more Discover Cards issued to you or to an authorized user. The word Account means your Discover Card Account. The words you, your, or yours mean you, the cardmember, and any person or persons who are also contractually liable under this Agreement. The words we, us, and our mean Greenwood Trust Company, a Delaware bank.

2. **ACCEPTANCE OF AGREEMENT.** The use of your Account or the Card by you or anyone whom you authorize or permit to use your Account or the Card means you accept this Agreement. However, only if you are a resident of North Carolina or Wisconsin it is also explainable that provided for in Section 15 will be charged to your Account regardless of whether you use your Account. This is a joint Account, unless you have cancelled your Account as provided for in Section 19 within 30 days of receipt of your Card.

3. **USE OF YOUR ACCOUNT AND THE CARD.** You agree that you will only use your Account or the Card for personal, family, household, or charitable purposes. Your Account or the Card may not be used for business or commercial purposes or to obtain loans to purchase, carry or trade in securities. Prior to its use, each Card must be signed by the person to whom it is issued. Your Account and the Card may be used for the following purposes:

   • To purchase or lease goods or services from participating establishments.

   • To obtain cash advances by means of automated teller machines or checks in accordance with such conditions and terms and conditions as may be imposed from time to time.

   • To guarantee hotel reservations in participating establishments. You will be liable for guaranteed reservations that are not cancelled prior to 6 p.m. of the date of arrival or such other time as the establishment may impose.

   We are not responsible for the refusal of anyone to accept or honor the Card. The Card is our property. You must return it to us or our agent upon request.

4. **AUTHORIZED CARD USERS.** If you want to cancel the authorized or permitted use of your Account or the Card by another person, you must notify us in writing and recover, cut in half and return to us any Card or such person's possession.

5. **LIABILITY FOR UNAUTHORIZED USE.** If the Card is lost or stolen, or if you think that someone is using your Account or the Card without your permission, notify us immediately. You can notify us by telephoning us at 1-800-DISCOVER, or by writing us at DISCOVER CARD, P.O. Box 33507-NAT'L REV. 2790

6. **LINE OF CREDIT.** We will advise you of your line of credit. We may increase or decrease your line of credit from time to time. You shall not attempt to exceed your line of credit, you will be in default.

7. **PROMISE TO PAY.** You agree to pay us in U.S. Dollars, for all purchases and cash advances, including applicable Finance Charges and other charges or fees, incurred by you or anyone you authorize or permit to use your Account or the Card. When you use your Account or the Card at establishments made in a foreign currency in U.S. Dollars, or permit cash advances made in a foreign currency to U.S. Dollars, we may refuse to accept payment which is drawn on funds in other than U.S. Dollars. We may refuse to accept the payment of charge your Account our cost to convert your Payment to U.S. Dollars. All checks must be drawn on funds on deposit in the U.S. If your Account is a joint Account, each of you agrees to be liable individually and jointly for the entire amount owed on your Account.

   We can accept late payments or partial payments or checks and money orders marked "payment in full" without losing any of our rights under this Agreement.

8. **MONTHLY BILLING STATEMENT.** We will send you a billing statement, after each monthly billing cycle in which you have a debit or credit balance in excess of $1.00. The billing statement will show all purchases, cash advances, Finance Charges and other charges or fees and all payments or other credits posted to your Account during the billing cycle. It will show your New Balance, Minimum Payment Due and Payment Due Date. Purchases will be identified by the amount and date of the transaction, the date of posting to your Account, the seller's name and the city and state of foreign country where the transaction took place. Cash advances will be identified by the amount of the transaction, the date of the transaction (either at the front of the credit documents) and the date of posting to your Account.

9. **MINIMUM MONTHLY PAYMENT.** The Minimum Payment Due each month will be either (a) the entire New Balance shown on your billing statement if the New Balance is less than $10.00, or (b) the greater of $10.00 or an amount equal to 1/36th of the New Balance rounded to the next higher whole dollar amount. You can pay ahead. The minimum payment due for each billing cycle will be reduced by the amount you have paid in excess of the Minimum Payment Due calculated in (a) above. In any of the three previous months' billing cycles, lets any portion of the excess already used to reduce payments. However, there will be no reduction if you have exceeded your line of credit or if you have paid the entire New Balance shown on your billing statement.

10. **FAILURE TO MAKE MINIMUM PAYMENT.** If you do not make at least the Minimum Payment Due by the Payment Due Date each month, you will be in default.

11. **CREDIT BALANCES.** We will refund any credit balance when seven business days from receipt of your written request. If you do not request a refund, we will automatically refund credit balances greater than $1.00 which remain in your Account after two billing cycles.

12. **FINANCE CHARGES.** We will impose Finance Charges as follows:

    **Purchases**

    A. A Finance Charge is imposed on purchases (except as referred to in paragraph C below) from the date of posting to your Account to the date of repayment.

    B. For each billing cycle:

    (1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Purchases is the sum of the daily unpaid balances of purchases on each day of the billing cycle plus any previous purchase unpaid balances divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case as of the date posted to your Account.

    (2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Purchases is the sum of the unpaid balances of purchases itemized on your last billing statement for each day of the billing cycle covered by your last billing statement. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

    (3) We add the amounts determined under (1) and (2) to arrive at the Finance Charge on purchases.

    C. A Finance Charge is not imposed on:

    (1) New purchases posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement of such New Balance was zero and (b) you pay the New Balance shown on the billing statement itemizing the new purchases by the Payment Due Date shown on that billing statement.

    (2) Old purchases previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

13.

**Cash Advances**

A. A Finance Charge is imposed on cash advances (except as referred to in paragraph (C) below) from the date of transaction to the date of repayment.

B. For each billing cycle:

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Cash Advances. The Monthly Periodic Rate is 1.65% which corresponds to an ANNUAL PERCENTAGE RATE of 19.8% unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% which corresponds to an ANNUAL PERCENTAGE RATE of 18%. The Average Daily Balance of Cash Advances is the sum of the daily unpaid balances of cash advances (carried on your last billing statement on each day of the billing cycle covered by your last billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against cash advances and by adding unpaid finance charges, in each case as of the date posted to your Account and by adding new cash advances as of the date of the transaction.

(2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Cash Advances. The Monthly Periodic Rate is 1.65% which corresponds to an ANNUAL PERCENTAGE RATE of 19.8% unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% which corresponds to an ANNUAL PERCENTAGE RATE of 18%. The Average Daily Balance of Previous Billing Cycle Cash Advances is the sum of the unpaid balances of cash advances carried on your last billing statement on each day of the billing cycle covered by your last billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against unpaid finance charge, in each case, as of the date posted to your Account and by adding new cash advances as of the date of the transaction.

(3) We also charge a one-time FINANCE CHARGE for cash advances equal to 2.5% of the amount of each new cash advance, with a minimum FINANCE CHARGE of $2.50 and a maximum FINANCE CHARGE of $10.00 (except for cash advances used in respect of guaranteed personal checks for which we become liable). This charge may result in an ANNUAL PERCENTAGE RATE for cash advances which is higher than the nominal ANNUAL PERCENTAGE RATE.

(4) We add the amounts determined under (1), (2) and (3) to obtain the Finance Charge on Cash Advances.

C. A Finance Charge (other than the one-time Finance Charge in sub-paragraph B(3) above) is not imposed on:

(1) New cash advances posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or such New Balance was zero and (b) you pay the New Balance shown on the billing statement itemizing the new cash advances by the Payment Due Date shown on that billing statement.

(2) Old cash advances previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

D. All terms of cash advances, including the use of Discover Card Checks, regardless of the purpose for which used, shall be subject to the Finance Charges as set forth above.

---

14. MINIMUM FINANCE CHARGE. We will charge you a minimum FINANCE CHARGE of $.50 for any billing cycle in which a FINANCE CHARGE of less than $.50 would otherwise be imposed.

15. ANNUAL MEMBERSHIP FEE. (ONLY NORTH CAROLINA AND WISCONSIN RESIDENTS). If you are a resident of North Carolina or Wisconsin, you agree to pay us, at the beginning of your membership year in North Carolina and at the end of your membership year in Wisconsin, a nonrefundable Annual Membership Fee of $15.00, posted to your Account for each Account. Such fee will be waived the first year you are a resident of North Carolina or Wisconsin, in which case a $1.5% fee when corresponds to an ANNUAL PERCENTAGE RATE of 18%. The Annual Membership Fee may be waived or reduced as a result of the acceptance of a special offer from us, in which case, all or a portion of the fee may be waived or reduced in accordance with the terms of such offer. You may have more than one Card per Account, but only be charged only one fee for that Account. Unless you notify us not to renew your Account, the fee will be posted to your Account annually during the billing cycle following the expiration month shown on the face of your Card.

16. RETURNED CHECK CHARGE. We will charge you a Returned Check Charge of $15.00 each time you pay us when we guarantee a check that is returned unpaid.

17. LATE CHARGE. We will charge you a Late Charge of $10.00 if you fail to make a required payment within 30 days after the Payment Due Date in any month.

18. DEFAULT AND OTHER COSTS. You are in default if you fail to comply with the terms of this Agreement, including failing to make a required payment when due or exceeding your line of credit. If you are in default and we refer the collection of your Account to an attorney, we may charge you reasonable attorneys' fees and court or other collection costs as permitted by law and as actually incurred by us.

19. CANCELLATION. You may cancel your Account by notifying us in writing and returning the Card to us cut in half. Of course, you will still be responsible to pay any amount owing us according to the terms of this Agreement. We may cancel or suspend your Account at any time without notice. If we do cancel or suspend your Account, we may declare the entire balance of your Account immediately due and payable without notice if you are in default. If we have a reasonable belief that you are unable or unwilling to repay your obligations to us, or you are insolvent or deceased.

20. PRIVACY. We may investigate your credit, employment and income records, and verify your credit references. We also may report to credit reporting agencies and other creditors the status and payment history of your Account. We will not release this information to any other party without your written permission or as required by law, except in case we may release information regarding your account to third parties retained by us to assist us in enforcing our rights under this Agreement. However, we may include your name and address and other identifying information on lists of cardmembers furnished to companies selling products or services that may be of interest to you. Our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to our cardmembers.

21. CREDIT AUTHORIZATIONS. Certain purchases and cash advances will require our authorization prior to completion of the transaction. In some cases, you may be asked to provide identification. If our authorization system is not working, we may not be able to authorize a transaction, even if you have sufficient available credit. We will not be liable to you if any of these events happen.

22. CHANGE OF TERMS. We may change any term or part of this Agreement, including finance charges rate, fees, or method of computing any balance upon which the finance charge rate is assessed. By

---

sending you a written notice at least 30 days before the change is to become effective. We may apply any such change to the outstanding balance of your Account on the effective date. If the change and to new charges made after that date. If you do not agree to the change, you must notify us in writing within 30 days after the mailing of the notice of change at the address provided on the notice of change, in which case your Account will be closed and you must pay us the balance that you owe us under the existing terms of the unchanged Agreement. Otherwise, we will treat your use of the Card, or the Account after the effective date of the change shall be deemed acceptance of the new terms as of such effective date, even if you previously notified us that you did not agree to the change.

23. CHANGE OF ADDRESS. If you change your address you must let us know within 30 days of your new address within 15 days.

24. ASSIGNMENT OF ACCOUNT. We may sell, assign or transfer your Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account without first obtaining our prior written consent.

25. GOVERNING LAW. This Agreement will be governed by the laws of the State of Delaware and applicable federal laws. If any part of this Agreement becomes unenforceable, it will not make any other part unenforceable.

Greenwood Trust Company
DISCOVER CARD

_J B Mott_
Vice President

# EXHIBIT 2

# CARDMEMBER AGREEMENT

Please read this Agreement carefully before using the Discover Card. It contains the terms and conditions of the Discover Card Account, some of which may have changed from earlier materials provided to you. In the event of any differences, this Agreement shall control.

1. **AGREEMENT TERMS.** The word Agreement means any one or more Discover Card issued to you or to an authorized user. The word Account means your Discover Card Account. The words you, your, or yours mean you, the cardmember, and any person or persons who are also contractually liable under this Agreement. The words we, us and our mean Greenwood Trust Company, a Delaware bank.

2. **ACCEPTANCE OF AGREEMENT.** The use of your Account or the Card by you or anyone whom you authorize or permit to use your Account or the Card means you accept this Agreement. However, even if you are a resident of North Carolina or Wisconsin, the Annual Membership Fee provided for in Section 15 will be imposed to your Account regardless of whether you use your Account or the Card, unless you have cancelled your Account as provided for in Section 19 within 30 days of receipt of your Card.

3. **USE OF YOUR ACCOUNT AND THE CARD.** You agree that you will only use your Account or the Card for personal, family, household and charitable purposes. Your Account or the Card may not be used for business or commercial purposes or to obtain loans to purchase, carry or trade in securities. Prior to its use, each Card must be signed by the person to whom it is issued. You authorize your Account and the Card may be used for the following purposes:

   • To purchase or lease goods or services from participating establishments.

   • To obtain cash advances by means of automated teller machines or checks in accordance with such additional terms and conditions as may be imposed from time to time.

   • To guarantee personal checks at participating establishments subject to cash availability and such conditions as the participating establishments may impose. Any guaranteed personal check returned unpaid for which we become liable shall be treated as a cash advance and a returned check and shall be subject to a Returned Check Charge.

   • To guarantee hotel reservations at participating establishments. You will be liable for guaranteed reservations that are not cancelled prior to 6 p.m. of the date of arrival or such other time as the establishment may impose.

   We are not responsible for the refusal of anyone to accept or honor the Card. The Card is our property. You must return it to us or our agent upon request.

4. **AUTHORIZED CARD USERS.** If you want to cancel the authorized or permitted use of your Account or the Card by another person, you must notify us in writing and recover, cut in half and return to us any Card in such person's possession.

5. **LIABILITY FOR UNAUTHORIZED USE.** If the Card is lost or stolen, or if you think that someone is using your Account or the Card without your permission, notify us immediately. You can notify us by telephone at 1-800-DISCOVER, or by writing us at DISCOVER CARD, P.O. Box 33507-NAT'L. REV. 2/90

6. **LINE OF CREDIT.** We will advise you of your line of credit. We may increase or decrease your line of credit from time to time. If you exceed or attempt to exceed your line of credit, you will be in default.

7. **PROMISE TO PAY.** You agree to pay us in U.S. Dollars for all purchases and cash advances, including applicable Finance Charges and other charges or fees, incurred by you or anyone you authorize or permit to use your Account or the Card, even if you do not notify us that others are using your Account or the Card. We will convert purchases and cash advances made in a foreign currency to U.S. Dollars at the rate existing on the date of conversion. If you pay us in other than U.S. Dollars, we may refuse to accept the payment or charge your Account our cost to convert your payment to U.S. Dollars. All checks must be drawn on funds on deposit in the U.S. If your Account is a joint Account, each of you agrees to be liable individually and jointly for the entire amount owed on your Account.

   We can accept late payments or partial payments or checks and money orders marked "payment in full" without losing any of our rights under this Agreement.

8. **MONTHLY BILLING STATEMENT.** We will send you a billing statement after each monthly billing cycle in which you have a debit or credit balance in excess of $1.00. The billing statement will show all purchases, cash advances, Finance Charges and other charges or fees and all payments or other credits posted to your Account during the billing cycle. It will show your New Balance, Minimum Payment Due and Payment Due Date. Purchases will be identified by the amount and date of the transaction, the date of posting to your Account, the seller's name and the city and state or foreign country where the transaction took place. Cash advances will be identified by the amount of the transaction, the date of the transaction (either the date the cash advance is obtained or the date of the credit document) and the date of posting to your Account.

9. **MONTHLY PAYMENT OPTIONS.** You may at any time pay the entire New Balance shown on your billing statement, but each month you must pay at least the Minimum Payment Due. All payments must be mailed or delivered to us at the address shown on your monthly billing statement or by using the envelope enclosed with such statement. All payments will be applied in the following order: Finance Charges and other charges or fees, cash advances in the order made and purchases in the order made.

10. **MINIMUM MONTHLY PAYMENT.** The Minimum Payment Due each month will be either (a) the entire New Balance shown on your billing statement if the New Balance is less than $10.00, or (b) the greater of $10.00 or an amount equal to 1/36th of the New Balance (rounded to the next higher whole dollar amount). You can pay ahead. The minimum payment due for each monthly billing cycle will be reduced by the amount you have paid in excess of the Minimum Payment Due, as calculated in (a) and (b) above, in any of the three previous monthly billing cycles, less any portion of the excess already used to reduce payments. However, there will be no reduction if you have exceeded your line of credit or if you have paid the entire New Balance shown on your billing statement.

11. **FAILURE TO MAKE MINIMUM PAYMENT.** If you do not make at least the Minimum Payment Due by the Payment Due Date each month, you will be in default.

12. **CREDIT BALANCES.** We will refund any credit balance within seven business days upon receipt of your written request. If you do not request a refund, we will automatically refund credit balances greater than $1.00 which remain in your Account after two billing cycles.

13. **FINANCE CHARGES.** We will impose Finance Charges as follows:

    **Purchases**

    A. A Finance Charge is imposed on purchases (except as referred to in paragraph C below) from the date of posting to your Account to the date of repayment.

    B. For each billing cycle:

    (1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Purchases is the sum of the daily unpaid balances of purchases for each day of the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

    (2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Purchases is the sum of the unpaid balances of purchases itemized on your last billing statement on each day of the billing cycle covered by your last billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

    (3) We add the amounts determined under (1) and (2) to obtain the Finance Charge on purchases.

    C. A Finance Charge is not imposed on:

    (1) New purchases posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement and (b) you pay the New Balance shown on the billing statement demanding the new purchases by the Payment Due Date shown on that billing statement.

    (2) Old purchases previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

---

**Cash Advances**

A. A Finance Charge is imposed on cash advances (except as referred to in paragraph (C) below) from the date of transaction to the date of repayment.

B. For each billing cycle:

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Cash Advances. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Cash Advances is the sum of the daily unpaid balances of cash advances on each day of the billing cycle covered by your current billing statement. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding unpaid finance charges, in each case, as of the date posted to your Account and by adding new cash advances as of the date of the transaction.

(2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Cash Advances. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Cash Advances is the sum of the unpaid balances of cash advances itemized on your last billing statement divided by the number of days in the billing cycle covered by your last billing statement. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding unpaid finance charges, in each case, as of the date posted to your Account and by adding new cash advances as of the date of the transaction.

(3) We also charge a one-time FINANCE CHARGE for each cash advance equal to 2.5% of the amount of each new cash advance, with a minimum FINANCE CHARGE of $2.00 and a maximum FINANCE CHARGE of $10.00 (except on cash advances which are made in respect of guaranteed personal checks for which we become liable). This charge may result in an ANNUAL PERCENTAGE RATE for cash advances which is higher than the nominal ANNUAL PERCENTAGE RATE.

(4) We add the amounts determined under (1), (2) and (3) to obtain the Finance Charge on Cash Advances.

C. A Finance Charge (other than the one-time Finance Charge in subparagraph B(3) above) is not imposed on:

(1) New cash advances posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement and (b) you pay the New Balance shown on the billing statement covering the new cash advances by the Payment Due Date shown on that billing statement.

(2) Old cash advances previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

D. All forms of cash advances, including the use of Discover Card Checks, regardless of the purpose for which used, shall be subject to the Finance Charges as set forth above.

---

14. **MINIMUM FINANCE CHARGE.** We will charge you a minimum FINANCE CHARGE of $.50 for any billing cycle in which a FINANCE CHARGE of less than $.50 would otherwise be imposed.

15. **ANNUAL MEMBERSHIP FEE. (ONLY NORTH CAROLINA AND WISCONSIN RESIDENTS.)** If you are a resident of North Carolina or Wisconsin, you agree to pay us at the beginning of your membership year in North Carolina and at the end of your membership year in Wisconsin, a nonrefundable Annual Membership Fee of $18.00, posted as a purchase, for each Account. Such fee will be waived for the first year if you are a Cardmember unless you became a Cardmember through acceptance of a special offer from us, in which case, all or a portion of the fee may be waived or rebated in accordance with the terms of such offer. You may have more than one Card per Account, but only be charged only one fee for that Account. Unless you notify us not to renew your Account, the fee will be posted to your Account annually during the billing cycle following the expiration month shown on the face of your Card.

16. **RETURNED CHECK CHARGE.** We will charge you a Returned Check Charge of $15.00 each time you pay us when we will guarantee a check that is returned unpaid.

17. **LATE CHARGE.** We will charge you a Late Charge of $10.00 if you fail to make a required payment within 20 days after the Payment Due Date in any month.

18. **DEFAULT-COLLECTION COSTS.** You are in default if you fail to comply with the terms of this Agreement, including failing to make a required payment when due or exceeding your line of credit. If you are in default and we refer the collection of your Account to an attorney, we may charge you reasonable attorneys' fees and court or other collection costs as permitted by law and as actually incurred by us.

19. **CANCELLATION.** You may cancel your Account by notifying us in writing and returning the Card to us cut in half. Of course, you will be responsible to pay any amount you owe us according to the terms of this Agreement. We may cancel or suspend your Account at any time without notice. If we do cancel or suspend your Account, we may declare the entire balance of your Account immediately due and payable without notice. If you are in default, if we have a reasonable belief that you are unable or unwilling to repay your obligations to us, if you are insolvent or in bankruptcy, or if your Account...

20. **PRIVACY.** We may investigate your credit, employment and income records and verify your credit references. We also may report to credit reporting agencies and other creditors the status and payment history of your Account. We will not release this information to any other party without your prior written permission or proper legal process, unless you are in default or if you file a petition in bankruptcy, in which case we may release information regarding your account to third parties retained by us to assist us in enforcing our rights under this Agreement. However, we may include your name and address and other identifying information on lists of cardmembers furnished to companies selling products or services that may be of interest to you. Our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to our cardmembers.

21. **CREDIT AUTHORIZATIONS.** Certain purchases and cash advances will require our authorization prior to completion of the transaction. In some cases, you may be asked to provide identification. If our authorization system is not working, we may not be able to authorize a transaction, even if you have sufficient available credit. We will not be liable to you if any of these events happen.

22. **CHANGE OF TERMS.** We may change any term or part of this Agreement, including finance charge rate, fee or method of computing any balance upon which the finance charge rate is assessed, by sending you a written notice at least 30 days before the change is to become effective. We may apply any such change to the outstanding balance of your Account on the effective date of the change and to new charges made after that date. If you do not agree to the change, you must notify us in writing within 30 days after the mailing of the notice of change at the address provided in the notice of change, in which case your Account will be closed and you must pay us the balance that you owe us under the existing terms of the unchanged Agreement. Otherwise, you will have agreed to the changes in the notice. Use of the Card after the effective date of the change shall be deemed acceptance of the new terms as of such effective date, even if you previously notified us that you did not agree to the change.

23. **CHANGE OF ADDRESS.** If you change your address you must notify us of your new address within 15 days.

24. **ASSIGNMENT OF ACCOUNT.** We may sell, assign or transfer your Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account without first obtaining our prior written consent.

25. **GOVERNING LAW.** This Agreement will be governed by the laws of the State of Delaware and applicable federal laws. If any part of this Agreement becomes unenforceable, it will not make any other part unenforceable.

Greenwood Trust Company
DISCOVER CARD

*J B Wirtz*
Vice President

# EXHIBIT 3

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

**'08 M 1    116396**

HBLC, Inc., final transfer
of DISCOVER

Case No. _____

          Plaintiff,

v.

Claimed: $ 4715.41 plus costs

CARLOS PRIETO,

          Defendant.

Return Date:

APR 0 4 2008

VERIFIED COMPLAINT

Now comes Plaintiff, HBLC, Inc., final transferee of DISCOVER and claims as follows:

    1.    That the Plaintiff is a corporation authorized to transact business in the State of Illinois and is the owner of this account having purchased said account in the regular course of business in good faith and for value.

    2.    That Defendant(s) opened an DISCOVER credit card account (account number 6011007480186831) and made purchases and charged same to the account but has failed to make monthly payments called for on the account.  A true and correct copy of the Cardmember Agreement is attached hereto as Exhibit "2".

    3.    That pursuant to the Affidavit attached hereto as Exhibit "1" there is due to Plaintiff from the Defendant, as of the filing date of this complaint, the sum of $4715.41 (which includes $350 as reasonable attorneys' fees as permitted by the Cardmember Agreement) plus court costs as permitted by the Cardmember Agreement and as permitted by statute plus post-judgment interest at the rate allowed by law until the debt is paid.

    4.    That Defendant(s) is in default on the account and has refused to pay the balance due after demand by Plaintiff or its Assignor.

    WHEREFORE, Plaintiff, HBLC, Inc., prays for judgment against Defendant, CARLOS PRIETO, in the amount of $4715.41 (which includes reasonable attorneys' fees of $350) plus court costs plus post-judgment interest at the rate allowed by law on the unpaid balance.

                                      Steven J. Fink & Assoc., P.C.

                                      By:

Steven J. Fink & Assoc., P.C.
Attorney for the Plaintiff
25 E. Washington Ste. 1233(a)
Chicago, IL 60602
(312) 659-2024
Attorney's No. 52383

Federal law requires me to advise you that we are attempting to collect a debt and any information obtained from you will be used for that purpose.  Unless you dispute the validity of this debt, or any portion of it, within 30 days after receipt of this notice, in writing, the debt will be assumed to valid. If you do dispute the debt's validity, we will provide verification or a copy of any Judgment taken against you and the and address of the original creditor if different from the current creditor.

AFFIDAVIT OF INDEBTEDNESS

Cynthia Rogers, after having been first duly sworn, on oath states that if called to testify in this matter she would testify to the following facts:

1.    That she is an agent of Plaintiff, HBLC, Inc.. Upon information provided to her by the transferor of the debt, she is familiar with certain facts surrounding the debt forming the basis of the herein Complaint, including but not limited to the amount due.

2.    That Plaintiff is the owner of the account forming the basis of the herein Complaint having purchased said account in the regular course of business in good faith and for value, and as such, Plaintiff is the current holder of this debt and the party to whom the Defendant, CARLOS PRIETO, is liable.

3.    That after all charges and just credits to this account have been given to the defendant, there remains due and owing to Plaintiff from Defendant, CARLOS PRIETO, the sum of $4715.41 (which includes $350 as reasonable attorney fees) plus court costs and post-judgment interest at the rate allowed by law.

_____
Cynthia Rogers

Subscribed and sworn to before me
on this the 2nd day of Jan, 2008

_____
Notary

**OFFICIAL SEAL**
**BRIAN ROGERS**
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 06/13/11

P. 3

JUN.17 '96 09:18AM NOVUS SERVICE

Bank Card

# CARDMEMBER AGREEMENT

Please read this Agreement carefully before using the Discover Card Account. It contains the terms and conditions of the Discover Card Account, some of which may have changed from earlier materials provided to you. In the event of any differences, this Agreement shall control.

1. **AGREEMENT TERMS.** The word Card means any one or more Discover Cards issued to you or to an authorized user. The word Account means your Discover Card Account. The words you, your, or yours mean you, the cardmember, and any person or persons who are also contractually liable under this Agreement. The words we, us, and our mean Greenwood Trust Company, a Delaware bank.

2. **ACCEPTANCE OF AGREEMENT.** The use of your Account or the Card by you or anyone whom you authorize or permit to use your Account or the Card means you accept this Agreement. However, only if you are a resident of North Carolina or Wisconsin, the manner in which your Account is provided for in Section 15 will be changed to your Account regardless of whether you use your Account or the Card, unless you have cancelled your Account, as provided for in Section 19 within 30 days of receipt of your Card.

3. **USE OF YOUR ACCOUNT AND THE CARD.** You agree that you will only use your Account or the Card for personal, family, household, or charitable purposes. Your Account or the Card may not be used for business or commercial purposes or to obtain loans to purchase, carry or trade in securities. Prior to its use, each Card must be signed by the person to whom it is issued. Your Account and the Card may be used for the following purposes:

   - To purchase or lease goods or services from participating establishments.

   - To obtain cash advances by means of automated teller machines or checks in accordance with and under additional terms and conditions as may be imposed from time to time.

   - To guarantee hotel reservations at participating establishments. You will be liable for guaranteed reservations that are not cancelled prior to 6 p.m. of the date of arrival or such other time as the establishment may impose.

   We are not responsible for the refusal of anyone to accept or honor the Card. The Card is our property. You must return it to us or our agent upon request.

4. **AUTHORIZED CARD USERS.** If you want to cancel the authorized or permitted use of your Account or the Card by another person, you must notify us in writing and recover, cut in half and return to us any Card at such person's possession.

5. **LIABILITY FOR UNAUTHORIZED USE.** If the Card is lost or stolen, or if you think that someone is using your Account or the Card without your permission, notify us immediately. You can notify us by telephoning us at 1-800-DISCOVER, or by writing us at DISCOVER CARD, P.O. Box 33507-NAT'L, REV. 2/90

6. **LINE OF CREDIT.** We will advise you of your line of credit. We may increase or decrease your line of credit from time to time. You must not exceed or attempt to exceed your line of credit, you will be in default.

7. **PROMISE TO PAY.** You agree to pay us in U.S. Dollars for all purchases and cash advances, including applicable Finance Charges and other charges or fees, incurred by you or anyone you authorize or permit to use your Account or the Card, even if you do not notify us that others are using your Account or the Card. We will convert purchases and cash advances made in a foreign currency to U.S. Dollars at a rate existing on the date of conversion to U.S. Dollars in other than U.S. Dollars, we may refuse to accept the payment or charge your Account our cost to convert your Payment to U.S. Dollars. All checks must be drawn on funds on deposit in the U.S. If your Account is a joint Account, each of you agrees to be liable individually and jointly for the entire amount owed on your Account.

   We can accept late payments or partial payments or checks and money orders marked "payment in full" without losing any of our rights under this Agreement.

8. **MONTHLY BILLING STATEMENT.** We will send you a billing statement after each monthly billing cycle in which you have a debit or credit balance in excess of $1.00. The billing statement will show all purchases, cash advances, Finance Charges and other charges or fees and all payments or other credits posted to your Account during the billing cycle. It will show your New Balance, Minimum Payment Due and Payment Due Date. Purchases will be identified by the amount and date of the transaction, the date of posting to your Account, the seller's name and the city and state or foreign country where the transaction took place. Cash advances will be identified by the amount of the transaction, the date of the cash advance and/or the date of posting to your Account, and the date of the credit document and the date of posting to your Account.

9. **MINIMUM PAYMENT OPTIONS.** You may at any time pay the entire New Balance shown on your billing statement, but each month you must pay at least the Minimum Payment Due. All payments must be mailed or delivered to us at the address shown on your monthly billing statement or by using the envelope enclosed with such statement. All payments will be applied in the following order: prior Finance Charges and other charges or fees, cash advances in the order made and purchases in the order made.

10. **MINIMUM MONTHLY PAYMENT.** The Minimum Payment Due each month will be either (a) the entire New Balance shown on your billing statement if the New Balance is less than $10.00, or (b) the greater of $10.00 or an amount equal to 1/36th of the New Balance rounded to the next higher whole dollar amount. You can pay ahead. The minimum payment due for each monthly billing cycle will be reduced by the amount you have paid in excess of the Minimum Payment Due, as calculated as (a) above, in any of the three previous monthly billing cycles, less any portion of the excess already used to reduce payments. However, there will be no reduction if you have exceeded your line of credit or if you have paid the entire New Balance shown on your billing statement.

11. **FAILURE TO MAKE MINIMUM PAYMENT.** If you do not make at least the Minimum Payment Due by the Payment Due Date each month, you will be in default.

12. **CREDIT BALANCES.** We will refund any credit balance when seven business days from receipt of your written request. If you do not request a refund, we will automatically refund credit balances greater than $1.00 which remain in your Account after two billing cycles.

13. **FINANCE CHARGES.** We will impose Finance Charges as follows:

   **Purchases**

   A. A Finance Charge is imposed on purchases (except as referred to in paragraph C below) from the date of posting to your Account to the date of repayment.

   B. For each billing cycle:

   (1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.54% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Purchases is the sum of the daily unpaid balances of purchases on each day of the billing cycle divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

   (2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Purchases. The Monthly Periodic Rate of Previous Billing Cycle Purchases is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Purchases is the sum of the unpaid balances of purchases itemized on your last billing statement on each day of the billing cycle covered by your last billing statement divided by the number of days in that billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

   (3) We add the amounts determined under (1) and (2) to obtain the Finance Charge on purchases.

   C. A Finance Charge is not imposed on:

   (1) New purchases posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or such New Balance was zero and (b) you pay the New Balance shown on the billing statement itemizing the new purchases by the Payment Due Date shown on that billing statement.

   (2) Old purchases previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

JUN 17 '96  09:19AM  NOVUS SERVICE

**Cash Advances**

A. A Finance Charge on cash advances (except as referred to in paragraph (C) below) from the date of transaction to the date of repayment.

B. For each billing cycle:

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Cash Advances. The Monthly Periodic Rate is 1.65% which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%, unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% which corresponds to an ANNUAL PERCENTAGE RATE of 18%. The Average Daily Balance of Cash Advances is the sum of the daily unpaid balances of cash advances itemized on your last billing statement on each day of the billing cycle covered by your last billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against unpaid finance charge, in each case, as of the date posted to your Account and by adding new cash advances as of the date of the transaction.

(2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Cash Advances. The Monthly Periodic Rate is 1.65% which corresponds to an ANNUAL PERCENTAGE RATE of 19.8% unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% which corresponds to an ANNUAL PERCENTAGE RATE of 18%. The Average Daily Balance of Previous Billing Cycle Cash Advances is the sum of the unpaid balances of cash advances itemized on your last billing statement on each day of the billing cycle covered by your last billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against unpaid finance charge, in each case, as of the date posted to your Account and by adding new cash advances as of the date of the transaction.

(3) We also charge a one-time FINANCE CHARGE for cash advances equal to 2.5% of the amount of each new cash advance, with a minimum FINANCE CHARGE of $2.00 and a maximum FINANCE CHARGE of $10.00 (except for cash advances which we make in respect of guaranteed personal checks for which we impose a ... This charge may result in an ANNUAL PERCENTAGE RATE for cash advances which is higher than the nominal ANNUAL PERCENTAGE RATE.

(4) We use the amounts determined under (1), (2) and (3) to obtain the Finance Charge on Cash Advances.

C. A Finance Charge (other than the one-time Finance Charge in subparagraph B(3) above) is not imposed on:

(1) New cash advances posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or such New Balance was zero and (b) you pay the New Balance shown on the billing statement itemizing the new cash advances by the Payment Due Date shown on that billing statement.

(2) Old cash advances previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

D. All terms of cash advances, including the use of Discover Card Checks, regardless of the purpose for which used, shall be subject to the Finance Charges as set forth above.

---

14. **MINIMUM FINANCE CHARGE.** We will charge you a minimum FINANCE CHARGE of $.50 for any billing cycle in which a FINANCE CHARGE of less than $.50 would otherwise be imposed.

15. **WISCONSIN RESIDENTS.** If you are a resident of Wisconsin, ... ANNUAL MEMBERSHIP FEE. (ONLY NORTH CAROLINA AND WISCONSIN RESIDENTS.) If you are a resident of North Carolina or Wisconsin, a nonrefundable Annual Membership Fee of $18.00, posted ... and at the end of your membership year in Wisconsin, ... for each Account. ...
... by a waiver of, or a ... to an ANNUAL PERCENTAGE RATE of 18%. The Average Daily Balance of Cash Advances is 1.5% when corresponds ... each ... of the billing cycle ... of the fee may be waived or reduced in accordance with the terms of such offer. You may have more than one Card per Account, but only be charged only one fee for that Account. Unless you notify us not to renew your Account, the fee will be posted to your Account annually during the billing cycle following the expiration month shown on the face of your Card.

16. **RETURNED CHECK CHARGE.** We will charge you a Returned Check Charge of $15.00 each time you pay us with or we guarantee a check that is returned unpaid.

17. **LATE CHARGE.** We will charge you a Late Charge of $10.00 if you fail to make a required payment within 30 days after the Payment Due Date in any month.

18. **DEFAULT AND OTHER COSTS.** If you are in default (i) you fail to comply with the terms of this Agreement, including failing to make a payment when due or exceeding your line of credit, (ii) you are in default ... and we refer the collection of your Account to an attorney, we may charge you reasonable attorneys' fees and court or other collection costs as permitted by law and as actually incurred by us.

19. **CANCELLATION.** You may cancel your Account by notifying us in writing and returning the Card to us cut in half. Of course, you will still be responsible to pay any amount you owe us according to the terms of this Agreement. We may cancel or suspend your Account at any time without notice. If we do cancel or suspend your Account, we may declare the entire balance of your Account immediately due and payable without notice. If you are in default, if we have a reasonable belief that you are unable or unwilling to repay your obligations to us, or if you are in default for any other reason.

20. **PRIVACY.** We may investigate your credit, employment and income records and verify your credit references. We also may report to credit reporting agencies and other creditors the status and payment history of your Account. We will not release this information to any other party without your written permission except in proper legal process, unless you are in default or for bankruptcy reporting purposes, in which case we may release information regarding your accounts to third parties related by us to assist us in enforcing our rights under this Agreement. However, we may exclude your name and address and other identifying information (or lists of cardmembers furnished to companies selling products or services that may be of interest to you. Our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to our cardmembers.

21. **CREDIT AUTHORIZATIONS.** Certain purchases and cash advances will require our authorization prior to completion of the transaction. In some cases, you may be asked to provide identification. If our authorization system is not working and you may not be able to authorize a transaction even if you have sufficient available credit. We will not be liable to you if any of these events happen.

22. **CHANGE OF TERMS.** We may change any term or part of this Agreement, including finance charge rates, at any time. We may apply any new terms to any balance upon which the finance charge rate is assessed, by ...

---

sending you a written notice at least 30 days before the change is to become effective. We may apply any such change to the outstanding balance of your Account on the effective date of the change and to new charges made after that date. If you do not agree to the change, you must notify us in writing within 30 days after the mailing of the notice of change at the address provided in the notice of change, in which case your Account will be closed and you must pay us the balance that you owe us under the existing terms of the unchanged Agreement. Otherwise, you will be deemed to have agreed to the change. Use of the Card after the effective date of the change shall be deemed acceptance of the new terms as of such effective date, even if you previously notified us that you did not agree to the change.

23. **CHANGE OF ADDRESS.** If you change your address you must tell us of your new address within 15 days.

24. **ASSIGNMENT OF ACCOUNT.** We may sell, assign or transfer your Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account without first obtaining our prior written consent.

25. **GOVERNING LAW.** This Agreement will be governed by the laws of the State of Delaware and applicable federal laws. If any part of this Agreement becomes unenforceable, it will not make any other part unenforceable.

Greenwood Trust Company
DISCOVER CARD

_(signature)_
Vice President

P.4

# EXHIBIT 4

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

HBLC, Inc., final transfer
of DISCOVER Card

                   Plaintiff,

v.

TAMELA JASPER,

                   Defendant.

Case No._____

08 M1  120347

Claimed: $ 2582.65 plus costs

Return Date:

APR 1 8 2008

VERIFIED COMPLAINT

Now comes Plaintiff, HBLC, Inc., final transferee of DISCOVER Card and states as follows:

      1.     That the Plaintiff is a corporation authorized to transact business in the State of Illinois and is the owner of this account having purchased said account in the regular course of business in good faith and for value.

      2.     That Defendant(s) opened an DISCOVER Card credit card account (account number 6011007410087174) and made purchases and charged same to the account but has failed to make monthly payments called for on the account.  A true and correct copy of the Cardmember Agreement is attached hereto as Exhibit "2".

      3.     That pursuant to the Affidavit attached hereto as Exhibit "1" there is due to Plaintiff from the Defendant, as of the filing date of this complaint, the sum of $2582.65 (which includes $350 as reasonable attorneys' fees as permitted by the Cardmember Agreement) plus court costs as permitted by the Cardmember Agreement and as permitted by statute plus post-judgment interest at the rate allowed by law until the debt is paid.

      4.     That Defendant(s) is in default on the account and has refused to pay the balance due after demand by Plaintiff or its Assignor.

      WHEREFORE, Plaintiff, HBLC, Inc., prays for judgment against Defendant, TAMELA JASPER, in the amount of $2582.65 (which includes reasonable attorneys' fees of $350) plus court costs plus post-judgment interest at the rate allowed by law on the unpaid balance.

Steven J. Fink & Assoc., P.C.

By:_____

Steven J. Fink & Assoc., P.C.
Attorney for the Plaintiff
25 E. Washington Ste. 1233(a)
Chicago, IL 60602
(312) 659-2024
Attorney's No. 52383

Federal law requires me to advise you that we are attempting to collect a debt and any information obtained from you will be used for that purpose.  Unless you dispute the validity of this debt, or any portion of it, within 30 days after receipt of this notice, in writing, the debt will be assumed to valid. If you do dispute the debt's validity, we will provide verification or a copy of any Judgment taken against you and the and address of the original creditor if different from the current creditor.

AFFIDAVIT OF INDEBTEDNESS

Cynthia Rogers, after having been first duly sworn, on oath states that if called to testify in this matter she would testify to the following facts:

1.     That she is an agent of Plaintiff, HBLC, Inc..  Upon information provided to her by the transferor of the debt, she is familiar with certain facts surrounding the debt forming the basis of the herein Complaint, including but not limited to the amount due.

2.     That Plaintiff is the owner of the account forming the basis of the herein Complaint having purchased said account in the regular course of business in good faith and for value, and as such, Plaintiff is the current holder of this debt and the party to whom the Defendant, TAMELA JASPER, is liable.

3.     That after all charges and just credits to this account have been given to the defendant, there remains due and owing to Plaintiff from Defendant, TAMELA JASPER, the sum of $2582.65 (which includes $350 as reasonable attorney fees) plus court costs and post-judgment interest at the rate allowed by law.

_____
Cynthia Rogers

Subscribed and sworn to before me
on this the 8th day of Feb, 2008

_____
Notary Public

OFFICIAL SEAL
BRIAN ROGERS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/13/11

# CARDMEMBER AGREEMENT

Please read this Agreement carefully before using the Discover Card. It contains the terms and conditions of the Discover Card Account, some of which may have changed from earlier materials provided to you. In the event of any differences, this Agreement controls.

1. **AGREEMENT TERMS.** The word Card means any one or more Discover Cards issued to you or to an authorized user. The word Account means your Discover Card Account. The words you, your, or yours mean you, the cardmember, and any person or persons who are also contractually liable under this Agreement. The words we, us and our mean Greenwood Trust Company, a Delaware bank.

2. **ACCEPTANCE OF AGREEMENT.** The use of your Account or the Card by you or anyone whom you authorize or permit to use your Account or the Card means you accept this Agreement. However, even if you are a resident of North Carolina or Wisconsin, the Annual Membership Fee provided for in Section 15 will be imposed to your Account regardless of whether you use your Account or the Card, unless you have cancelled your Account as provided for in Section 19 within 30 days of receipt of your Card.

3. **USE OF YOUR ACCOUNT AND THE CARD.** You agree that you will only use your Account or the Card for personal, family, household and charitable purposes. Your Account or the Card may not be used for business or commercial purposes or to obtain loans to purchase, carry or trade in securities. Prior to its use, each Card must be signed by the person to whom it is issued. You may use your Account and the Card may be used for the following purpose:

   - To purchase or lease goods or services from participating establishments.

   - To obtain cash advances by means of automated teller machines or checks in accordance with such additional terms and conditions as may be imposed from time to time.

   - To guarantee personal checks at participating establishments subject to cash availability and such conditions as the participating establishments may impose. Any guaranteed personal check returned unpaid for which we become liable shall be treated as a cash advance and a returned check and shall be subject to a Returned Check Charge.

   - To guarantee hotel reservations at participating establishments. You will be liable for guaranteed reservations that are not cancelled prior to 6 p.m. of the date of arrival or such other time as the establishment may impose.

   We are not responsible for the refusal of anyone to accept or honor the Card. The Card is our property. You must return it to us or our agent upon request.

4. **AUTHORIZED CARD USERS.** If you want to cancel the authorized or permitted use of your Account or the Card by another person, you must notify us in writing and recover, cut in half and return to us any Card in such person's possession.

5. **LIABILITY FOR UNAUTHORIZED USE.** If the Card is lost or stolen, or if you think that someone is using your Account or the Card without your permission, notify us immediately. You can notify us by telephoning us at 1-800-DISCOVER, or by writing us at DISCOVER CARD, P.O. Box 33507-NAT'L. REV. 2/90

---

14455, Wilmington, DE 19886-1002. You may be liable for any unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability will not exceed $50.00.

6. **LINE OF CREDIT.** We will advise you of your line of credit. We may increase or decrease your line of credit from time to time. If you exceed or attempt to exceed your line of credit, you will be in default.

7. **PROMISE TO PAY.** You agree to pay us in U.S. Dollars for all purchases and cash advances, including applicable Finance Charges and other charges or fees, incurred by you or anyone you authorize or permit to use your Account or the Card. Even if you do not notify us that others are using your Account or the Card. We will convert purchases and cash advances made in a foreign currency to U.S. Dollars at the rate existing on the date of conversion. If you pay us in other than U.S. Dollars, we may refuse to accept the payment or charge your Account our cost to convert your payment to U.S. Dollars. All checks must be drawn on funds on deposit in the U.S. If your Account is a joint Account, each of you agrees to be liable individually and jointly for the entire amount owed on your Account.

   We can accept late payments or partial payments or checks and money orders marked "payment in full" without losing any of our rights under this Agreement.

8. **MONTHLY BILLING STATEMENT.** We will send you a billing statement after each monthly billing cycle in which you have a debit or credit balance in excess of $1.00. The billing statement will show all purchases, cash advances, Finance Charges and other charges or fees and all payments or other credits posted to your Account during the billing cycle. It will show your New Balance, Minimum Payment Due and Payment Due Date. Purchases will be identified by the amount and date of the transaction, the date of posting to your Account, the seller's name and the city and state or foreign country where the transaction took place. Cash advances will be identified by the amount of the transaction, the date of the transaction (either the date the cash advance is obtained or the date of the credit document) and the date of posting to your Account.

9. **MONTHLY PAYMENT OPTIONS.** You may at any time pay the entire New Balance shown on your billing statement, but each month you must pay at least the Minimum Payment Due. All payments must be mailed or delivered to us at the address shown on your monthly billing statement or by using the envelope enclosed with such statement. All payments will be applied in the following order: Finance Charges and other charges or fees, cash advances in the order made and purchases in the order made.

10. **MINIMUM MONTHLY PAYMENT.** The Minimum Payment Due each month will be either (a) the entire New Balance shown on your billing statement if the New Balance is less than $10.00, or (b) the greater of $10.00 or an amount equal to 1/36th of the New Balance (rounded to the next higher whole dollar amount). You can pay ahead. The minimum payment due for each monthly billing cycle will be reduced by the amount you have paid in excess of the Minimum Payment Due, as calculated in (a) and (b) above, in any of the three previous monthly billing cycles, less any portion of the excess already used to reduce payments. However, there will be no reduction if you have exceeded your line of credit or if you have paid the entire New Balance shown on your billing statement.

11. **FAILURE TO MAKE MINIMUM PAYMENT.** If you do not make at least the Minimum Payment Due by the Payment Due Date each month, you will be in default.

---

12. **CREDIT BALANCES.** We will refund any credit balance within seven business days upon receipt of your written request. If you do not request a refund, we will automatically refund credit balances greater than $1.00 which remain in your Account after two billing cycles.

13. **FINANCE CHARGES.** We will impose Finance Charges as follows:

**Purchases**

A. A Finance Charge is imposed on purchases (except as referred to in paragraph C below) from the date of posting to your Account to the date of repayment.

B. For each billing cycle:

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Purchases is the sum of the daily unpaid balances of purchases for each day of the billing cycle. Such unpaid balances are determined by deducting payments and credits posted against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

(2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Purchases is the sum of the unpaid balances of purchases itemized on your last billing statement on each day of the billing cycle covered by your last billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

(3) We add the amounts determined under (1) and (2) to obtain the Finance Charge on purchases.

C. A Finance Charge is not imposed on:

(1) New purchases posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or such New Balance was zero and (b) you pay the New Balance shown on the billing statement demanding the new purchases by the Payment Due Date shown on that billing statement.

(2) Old purchases previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

---

**Cash Advances**

A. A Finance Charge is imposed on cash advances (except as referred to in paragraph (C) below) from the date of transaction to the date of repayment.

B. For each billing cycle:

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Cash Advances. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Cash Advances is the sum of the daily unpaid balances of cash advances on each day of the billing cycle covered by your current billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding unpaid finance charges, in each case, as of the date posted to your Account and by adding new cash advances as of the date of the transaction.

(2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Cash Advances. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Cash Advances is the sum of the unpaid balances of cash advances itemized on your last billing statement on each day of the billing cycle covered by your last billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new cash advances, in each case, as of the date posted to your Account and by adding new cash advances as of the date of the transaction.

(3) We add the amounts determined under (1), (2) and (3) to obtain the Finance Charge on Cash Advances.

C. A Finance Charge (other than the one-time Finance Charge in subparagraph B(3) above) is not imposed on:

(1) New cash advances posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or such New Balance was zero and (b) you pay the New Balance shown on the billing statement covering the new cash advances by the Payment Due Date shown on that billing statement.

(2) Old cash advances previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

D. All forms of cash advances, including the use of Discover Card Checks, regardless of the purpose for which used, shall be subject to the Finance Charges as set forth above.

---

14. **MINIMUM FINANCE CHARGE.** We will charge you a minimum FINANCE CHARGE of $.50 for any billing cycle in which a FINANCE CHARGE of less than $.50 would otherwise be imposed.

15. **ANNUAL MEMBERSHIP FEE. (ONLY NORTH CAROLINA AND WISCONSIN RESIDENTS.)** If you are a resident of North Carolina or Wisconsin, you agree to pay us at the beginning of your membership year in North Carolina and at the end of your membership year in Wisconsin, a nonrefundable Annual Membership Fee of $18.00, posted as a purchase, for each Account. Such fee will be waived for the first year you are a Cardmember unless you became a Cardmember through acceptance of a special offer from us, in which case, all or a portion of the fee may be waived or retained in accordance with the terms of such offer. You may have more than one Card per Account, but only be charged only one fee for that Account. However, you notify us to renew your Account, the fee will be posted to your Account annually during the billing cycle following the expiration month shown on the face of your Card.

16. **RETURNED CHECK CHARGE.** We will charge you a Returned Check Charge of $15.00 each time you pay us when we will guarantee a check that is returned unpaid.

17. **LATE CHARGE.** We will charge you a Late Charge of $10.00 if you fail to make a required payment within 20 days after the Payment Due Date in any month.

18. **DEFAULT-COLLECTION COSTS.** You are in default if you fail to comply with the terms of this Agreement, including failing to make a required payment when due or exceeding your line of credit. If you are in default and we refer the collection of your Account to an attorney, we may charge you reasonable attorneys' fees and court or other collection costs as permitted by law and as actually incurred by us.

19. **CANCELLATION.** You may cancel your Account by notifying us in writing and returning the Card to us cut in half. Of course, you will be responsible to pay any amount you owe us according to the terms of this Agreement. We may cancel or suspend your Account at any time without notice. If we do cancel or suspend your Account, we may declare the entire balance of your Account immediately due and payable without notice. If you are in default, if we have a reasonable belief that you are unable or unwilling to repay your obligations to us, if you are insolvent or in bankruptcy, or if you die.

20. **PRIVACY.** We may investigate your credit, employment and income records and verify your credit references. We also may report to credit reporting agencies and other creditors the status and payment history of your Account. We will not release information to any other party without your prior written permission or proper legal process, unless you are in default or if you file a petition in bankruptcy, in which case we may release information regarding your account to third parties retained by us to assist us in enforcing our rights under this Agreement. However, we may include your name and address and other identifying information on lists of cardmembers furnished to companies selling products or services that may be of interest to you. Our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to our cardmembers.

21. **CREDIT AUTHORIZATIONS.** Certain purchases and cash advances will require our authorization prior to completion of the transaction. In some cases, you may be asked to provide identification. If our authorization system is not working, we may not be able to authorize a transaction, even if you have sufficient available credit. We will not be liable to you if any of these events happen.

22. **CHANGE OF TERMS.** We may change any term or part of this Agreement, including finance charge rate, fees or method of computing any balance upon which the finance charge rate is assessed, by

---

sending you a written notice at least 30 days before the change is to become effective. We may apply any such change to the outstanding balance of your Account on the effective date of the change and to new charges made after that date. If you do not agree to the change, you must notify us in writing within 30 days after the mailing of the notice of change at the address provided in the notice of change, in which case your Account will be closed and you must pay us the balance that you owe us under the existing terms of the unchanged Agreement. Otherwise, you will have agreed to the changes in the notice. Use of the Card after the effective date of the change shall be deemed acceptance of the new terms as of such effective date, even if you previously notified us that you did not agree to the change.

23. **CHANGE OF ADDRESS.** If you change your address you must notify us of your new address within 15 days.

24. **ASSIGNMENT OF ACCOUNT.** We may sell, assign or transfer your Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account without first obtaining our prior written consent.

25. **GOVERNING LAW.** This Agreement will be governed by the laws of the State of Delaware and applicable federal laws. If any part of this Agreement becomes unenforceable, it will not make any other part unenforceable.

Greenwood Trust Company
DISCOVER CARD

*J B Wirtz*

Vice President

# EXHIBIT 5

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

HBLC, Inc., final transferee
of DISCOVER Card

FILED A-17
2008 MAR -6 PM 2:10

Plaintiff,

v.

TAIPHACHAN KEOBOWAVANH,

Defendant.

Case No. _____

08 M1  120345

Claimed: $ 4020.16 plus costs

Return Date:
APR 1 8 2008

VERIFIED COMPLAINT

Now comes Plaintiff, HBLC, Inc., final transferee of DISCOVER Card and states as follows:

1.      That the Plaintiff is a corporation authorized to transact business in the State of
Illinois and is the owner of this account having purchased said account in the regular course of business
in good faith and for value.

2.      That Defendant(s) opened an DISCOVER Card credit card account (account number
6011007670622413) and made purchases and charged same to the account but has failed to make monthly
payments called for on the account.  A true and correct copy of the Cardmember Agreement is attached
hereto as Exhibit "2".

3.      That pursuant to the Affidavit attached hereto as Exhibit "1" there is due to Plaintiff
from the Defendant, as of the filing date of this complaint, the sum of $4020.16 (which includes $350 as
reasonable attorneys' fees as permitted by the Cardmember Agreement) plus court costs as permitted by the
Cardmember Agreement and as permitted by statute plus post-judgment interest at the rate allowed by law
until the debt is paid.

4.      That Defendant(s) is in default on the account and has refused to pay the balance due
after demand by Plaintiff or its Assignor.

WHEREFORE, Plaintiff, HBLC, Inc., prays for judgment against Defendant, TAIPHACHAN KEOBOWAVANH,
in the amount of $4020.16 (which includes reasonable attorneys' fees of $350) plus court costs plus
post-judgment interest at the rate allowed by law on the unpaid balance.

Steven J. Fink & Assoc., P.C.

By: _____

Steven J. Fink & Assoc., P.C.
Attorney for the Plaintiff
25 E. Washington Ste. 1233(a)
Chicago, IL 60602
(312) 659-2024
Attorney's No. 52383

Federal law requires me to advise you that we are attempting to collect a debt and any information
obtained from you will be used for that purpose.  Unless you dispute the validity of this debt, or any
portion of it, within 30 days after receipt of this notice, in writing, the debt will be assumed to valid.
If you do dispute the debt's validity, we will provide verification or a copy of any Judgment taken
against you and the and address of the original creditor if different from the current creditor.

AFFIDAVIT OF INDEBTEDNESS

Cynthia Rogers, after having been first duly sworn, on oath states that if called to testify in this matter she would testify to the following facts:

1.    That she is an agent of Plaintiff, HBLC, Inc..  Upon information provided to her by the transferor of the debt, she is familiar with certain facts surrounding the debt forming the basis of the herein Complaint, including but not limited to the amount due.

2.    That Plaintiff is the owner of the account forming the basis of the herein Complaint having purchased said account in the regular course of business in good faith and for value, and as such, Plaintiff is the current holder of this debt and the party to whom the Defendant, TAIPHACHAN KEOBOWAVANH, is liable.

3.    That after all charges and just credits to this account have been given to the defendant, there remains due and owing to Plaintiff from Defendant, TAIPHACHAN KEOBOWAVANH, the sum of $4020.16 (which includes $350 as reasonable attorney fees) plus court costs and post-judgment interest at the rate allowed by law.

_____
Cynthia Rogers

Subscribed and sworn to before me
on this the 8th day of Feb, 2008

_____
Notary Public

```
OFFICIAL SEAL
BRIAN ROGERS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/13/11
```

# CARDMEMBER AGREEMENT

*Please read this Agreement carefully before using the Discover Card. It contains the terms and conditions of the Discover Card Account, some of which may have changed from earlier materials provided to you. In the event of any differences, this Agreement shall control.*

1. **AGREEMENT TERMS.** The word Card means any one or more Discover Cards issued to you or to an authorized user. The word Account means your Discover Card Account. The words you, your or yours mean you, the cardmember, and any person or persons who are also contractually liable under this Agreement. The words we, us and our mean Greenwood Trust Company, a Delaware bank.

2. **ACCEPTANCE OF AGREEMENT.** The use of your Account or the Card by you or anyone whom you authorize or permit to use your Account or the Card means you accept this Agreement. However, only if you are a resident of North Carolina or Wisconsin, the Annual Membership Fee provided for in Section 15 will be charged to your Account regardless of whether you use your Account or the Card, unless you have canceled your Account as provided for in Section 18 within 30 days of receipt of your Card.

3. **USE OF YOUR ACCOUNT AND THE CARD.** You agree that you will only use your Account or the Card for personal, family, household and charitable purposes. Your Account or the Card may not be used for business or commercial purposes or to obtain loans to purchase, carry or trade in securities. Prior to its use, each Card must be signed by the person to whom it is issued. Your Account and the Card may be used for the following purposes:

   • To purchase or lease goods or services from participating establishments.

   • To obtain cash advances by means of automated teller machines or checks in accordance with such additional terms and conditions as may be imposed from time to time.

   • To guarantee personal checks at participating establishments subject to cash availability and such conditions as the participating establishments may impose. Any guaranteed personal check returned unpaid for which we become liable shall be treated as a cash advance and a returned check and shall be subject to a Returned Check Charge.

   • To guarantee hotel reservations at participating establishments. You will be liable for guaranteed reservations that are not cancelled prior to 6 p.m. of the date of arrival or such other time as the establishment may impose.

   We are not responsible for the refusal of anyone to accept or honor the Card. The Card is our property. You must return it to us or our agent upon request.

4. **AUTHORIZED CARD USERS.** If you want to cancel the authorized or permitted use of your Account or the Card by another person, you must notify us in writing and recover, cut in half and return to us any Card in such person's possession.

5. **LIABILITY FOR UNAUTHORIZED USE.** If the Card is lost or stolen, or if you think that someone is using your Account or the Card without your permission, notify us immediately. You can notify us by telephoning us at 1-800-DISCOVER, or by writing us at DISCOVER CARD, P.O. Box 33507-NAT'L REV. 2/90

15156, Wilmington, DE 19885-1002. You may be liable for the unauthorized use of the Card. If you notify us, you will not be liable for unauthorized transfers after you notify us. In any case, your liability will not exceed $50.00.

6. **LINE OF CREDIT.** We will advise you of your line of credit. We may increase or decrease your line of credit from time to time, if you exceed or attempt to exceed your line of credit, you will be in default.

7. **PROMISE TO PAY.** You agree to pay us in U.S. Dollars for all purchases and cash advances, including applicable Finance Charges and other charges or fees, incurred by you or anyone you authorize or permit to use your Account or the Card, even if you do not notify us that others are using your Account or the Card. We will convert purchases and cash advances made in a foreign currency to U.S. Dollars at the rate existing on the date of conversion. If you pay us in other than U.S. Dollars, we may refuse to accept the payment or charge your Account our cost to convert your payment to U.S. Dollars. All checks must be drawn on funds on deposit in the U.S. If your Account is a joint Account, each of you agrees to be liable individually and jointly for the entire amount owed on your Account.

   We can accept late payments or partial payments of checks and money orders marked "payment in full" without losing any of our rights under this Agreement.

8. **MONTHLY BILLING STATEMENT.** We will send you a billing statement after each monthly billing cycle in which you have a debit or credit balance in excess of $1.00. The billing statement will show all purchases, cash advances, Finance Charges and other charges or fees and all payments or other credits posted to your Account during the billing cycle. It will show your New Balance, Minimum Payment Due and Payment Due Date. Purchases will be identified by the amount and date of the transaction, the date of posting to your Account, the seller's name and the city and state or foreign country where the transaction took place. Cash advances will be identified by the amount of the transaction, the date of the transaction (either the date the cash advance is obtained or the date of the credit documents) and the date of posting to your Account.

9. **MONTHLY PAYMENT OPTIONS.** You may at any time pay the entire New Balance shown on your billing statement, but each month you must pay at least the Minimum Payment Due. All payments must be mailed or delivered to us at the address shown on your monthly billing statement or by using the envelope enclosed with such statement. All payments will be applied in the following order: Finance Charges and other charges or fees, cash advances in the order made and purchases in the order made.

10. **MINIMUM MONTHLY PAYMENT.** The Minimum Payment Due each month will be either (a) the entire New Balance shown on your billing statement if the New Balance is less than $10.00, or (b) the greater of $10.00 or an amount equal to 1/36th of the New Balance rounded to the next higher whole dollar amount. You can pay ahead. The Minimum Payment Due for each monthly billing cycle will be reduced by the amount you have paid in excess of the Minimum Payment Due, as calculated in (a) and (b) above, in any of the three previous monthly billing cycles. Any payment in excess of the amount necessary to reduce the Minimum Payment Due will, however, there will be no reduction if you have exceeded your line of credit or if you have paid the entire New Balance shown on your billing statement.

11. **FAILURE TO MAKE MINIMUM PAYMENT.** If you do not make at least the Minimum Payment Due by the Payment Due Date each month, you will be in default.

12. **CREDIT BALANCES.** We will refund any credit balance within seven business days upon receipt of your written request. If you do not request a refund of a credit balance, we will refund credit balances greater than $1.00 which remain in your Account after two billing cycles.

13. **FINANCE CHARGES.** We will impose Finance Charges as follows:

   **Purchases**

   A. A Finance Charge is imposed on purchases (except as referred to in paragraph C below) from the date of posting to your Account to the date of repayment.

   B. For each billing cycle:

      (1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Purchases is the sum of the daily unpaid balances of purchases on each day of the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding any new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account;

      (2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Purchases is the sum of the unpaid balances of purchases itemized on your last billing statement on each day of the billing cycle covered by your last billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

      (3) We add the amounts determined under (1) and (2) to obtain the Finance Charge on purchases.

   C. A Finance Charge is not imposed on:

      (1) New purchases posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or such New Balance was zero and (b) you pay the New Balance shown on the billing statement itemizing the new purchases by the Payment Due Date shown on that billing statement.

      (2) Old purchases previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

---

**Cash Advances**

A. A Finance Charge is imposed on cash advances (except as referred to in paragraph C below) from the date of transaction to the date of repayment.

B. For each billing cycle:

   (1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Cash Advances. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of cash advances on each day of the billing cycle covered by your current billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new cash advances, unpaid finance charges, in each case, as of the date of the transaction.

   (2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Cash Advances. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Cash Advances is the sum of the unpaid balances of cash advances on each day of the billing cycle covered by your last billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding unpaid finance charges, in each case, as of the date of the transaction.

   (3) We add the amounts determined under (1), (2) and (3) to obtain the Finance Charge on cash advances.

C. A Finance Charge (other than the one-time Finance Charge in subparagraph B(3) above) is not imposed on:

   (1) New cash advances posted during a billing cycle if (a) you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or such New Balance was zero and (b) you pay the New Balance shown on the billing statement itemizing the new cash advances by the Payment Due Date shown on that billing statement.

   (2) Old cash advances previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

We also charge a one-time FINANCE CHARGE for cash advances equal to 2.5% of the amount of each new cash advance, with a minimum FINANCE CHARGE of $2.00 and a maximum FINANCE CHARGE of $10.00 (except for cash advances which are made in respect of guaranteed personal checks for which we become liable). This charge may result in an ANNUAL PERCENTAGE RATE for cash advances which is higher than the nominal ANNUAL PERCENTAGE RATE.

D. All forms of cash advances, including the use of Discover Card Checks, regardless of the purpose for which used, shall be subject to the Finance Charges as set forth above.

14. **MINIMUM FINANCE CHARGE.** We will charge you a minimum FINANCE CHARGE of $.50 for any billing cycle in which a FINANCE CHARGE of less than $.50 would otherwise be imposed.

15. **ANNUAL MEMBERSHIP FEE. (ONLY NORTH CAROLINA AND WISCONSIN RESIDENTS.)** If you are a resident of North Carolina or Wisconsin, you agree to pay us, at the beginning of your membership year in North Carolina and at the end of your membership year in Wisconsin, a nonrefundable Annual Membership Fee of $18.00, posted as a purchase, for each Account. Such fee will be waived for the first year you are a Cardmember unless you became a Cardmember through acceptance of a special offer from us, in which case, all or a portion of the fee may be waived or treated in accordance with the terms of such offer. You may have more than one Card per Account, but can be charged only one fee for that Account. Unless you notify us not to renew your Account, the fee will be applied to your Account annually during the billing cycle following the expiration month shown on the face of your Card.

16. **RETURNED CHECK CHARGE.** We will charge you a Returned Check Charge of $15.00 each time you pay us with or we guarantee a check that is returned unpaid.

17. **LATE CHARGE.** We will charge you a Late Charge of $10.00 if you fail to make a required payment within 35 days after the Payment Due Date in any month.

18. **DEFAULT-COLLECTION COSTS.** Your are in default if you fail to comply with the terms of this Agreement, including failing to make a required payment when due or exceeding your line of credit. If you are in default and we refer the collection of your Account to an attorney, we may charge you reasonable attorneys' fees and court or other collection costs as permitted by law and as actually incurred by us.

19. **CANCELLATION.** You may cancel your Account by notifying us in writing and returning the Card to us cut in half. Of course, you will still be responsible to pay any amount you owe us according to the terms of this Agreement. We may cancel or suspend your Account at any time without notice. If we do cancel or suspend your Account, we may declare the entire balance of your Account immediately due and payable without notice. If you are in default, if we have a reasonable belief that you are unable to repay your obligations to us, if you are insolvent or in bankruptcy, or if you die.

20. **PRIVACY.** We may investigate your credit, employment and income records and verify your credit references. We also may report as credit reporting agencies and other creditors the status and payment history of your Account. We will not release this information to any other party without your prior written permission or proper legal process, unless you are in default or if you file a petition in bankruptcy, in which case we may release information regarding your account to third parties retained by us to assist us in enforcing our rights under this Agreement. However, we may exclude your name and address and other identifying information on lists of cardmembers furnished to companies selling products or services that may be of interest to you. Our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to our cardmembers.

21. **CREDIT AUTHORIZATIONS.** Certain purchases and cash advances will require our authorization prior to the transaction. In some cases, you may be asked to provide identification. If our authorization system is not working, we may not be able to authorize a transaction, even if you have sufficient available credit. We will not be liable to you if any of these events happen.

22. **CHANGE OF TERMS.** We may change any term or part of this Agreement, including finance charge rate, fee, or method of computing any balance upon which the finance charge rate is assessed, by

sending you a written notice at least 30 days before the change is to become effective. We may apply any such change to the outstanding balance of your Account on the effective date of the change and to new charges made after that date. If you do not agree to the change, you must notify us in writing within 30 days after the mailing of the notice of change at the address provided in the notice of change, in which case your Account will be closed and you must pay us the balance that you owe us under the existing terms of the unchanged Agreement. Otherwise, you will have agreed to the changes in the notice. Use of the Card after the effective date of the change shall be deemed acceptance of the new terms as of such effective date, even if you previously notified us that you did not agree to the change.

23. **CHANGE OF ADDRESS.** If you change your address you must notify us of your new address within 15 days.

24. **ASSIGNMENT OF ACCOUNT.** We may sell, assign or transfer your Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account without first obtaining our prior written consent.

25. **GOVERNING LAW.** This Agreement will be governed by the laws of the State of Delaware and applicable federal laws. If any part of this Agreement becomes unenforceable, it will not make any other part unenforceable.

Greenwood Trust Company
DISCOVER CARD

*[signature]*
Vice President

# EXHIBIT 6

08 M 1  116395

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

HBLC, Inc., final transfer
of DISCOVER

Case No. _____

                    Plaintiff,

v.                                              Claimed: $ 4304.33 plus costs

ANTOINETTE PETERSON,

                    Defendant.                  Return Date:

VERIFIED COMPLAINT                              APR 0 4 2008

Now comes Plaintiff, HBLC, Inc., final transferee of DISCOVER and claims as follows:

    1.    That the Plaintiff is a corporation authorized to transact business in the State of
Illinois and is the owner of this account having purchased said account in the regular course of business
in good faith and for value.

    2.    That Defendant(s) opened an DISCOVER credit card account (account number
6011007050206191) and made purchases and charged same to the account but has failed to make monthly
payments called for on the account.  A true and correct copy of the Cardmember Agreement is attached
hereto as Exhibit "2".

    3.    That pursuant to the Affidavit attached hereto as Exhibit "1" there is due to Plaintiff
from the Defendant, as of the filing date of this complaint, the sum of $4304.33 (which includes $350 as
reasonable attorneys' fees as permitted by the Cardmember Agreement) plus court costs as permitted by the
Cardmember Agreement and as permitted by statute plus post-judgment interest at the rate allowed by law
until the debt is paid.

    4.    That Defendant(s) is in default on the account and has refused to pay the balance due
after demand by Plaintiff or its Assignor.

    WHEREFORE, Plaintiff, HBLC, Inc., prays for judgment against Defendant, ANTOINETTE PETERSON, in
the amount of $4304.33 (which includes reasonable attorneys' fees of $350) plus court costs plus
post-judgment interest at the rate allowed by law on the unpaid balance.

                                    Steven J. Fink & Assoc., P.C.

                                    By: _____

Steven J. Fink & Assoc., P.C.
Attorney for the Plaintiff
25 E. Washington Ste. 1233(a)
Chicago, IL 60602
(312) 659-2024
Attorney's No. 52383

Federal law requires me to advise you that we are attempting to collect a debt and any information
obtained from you will be used for that purpose.  Unless you dispute the validity of this debt, or any
portion of it, within 30 days after receipt of this notice, in writing, the debt will be assumed to valid.
If you do dispute the debt's validity, we will provide verification or a copy of any Judgment taken
against you and the and address of the original creditor if different from the current creditor.

AFFIDAVIT OF INDEBTEDNESS

Cynthia Rogers, after having been first duly sworn, on oath states that if called to testify in this matter she would testify to the following facts:

1.   That she is an agent of Plaintiff, HBLC, Inc.. Upon information provided to her by the transferor of the debt, she is familiar with certain facts surrounding the debt forming the basis of the herein Complaint, including but not limited to the amount due.

2.   That Plaintiff is the owner of the account forming the basis of the herein Complaint having purchased said account in the regular course of business in good faith and for value, and as such, Plaintiff is the current holder of this debt and the party to whom the Defendant, ANTOINETTE PETERSON, is liable.

3.   That after all charges and just credits to this account have been given to the defendant, there remains due and owing to Plaintiff from Defendant, ANTOINETTE PETERSON, the sum of $4304.33 (which includes $350 as reasonable attorney fees) plus court costs and post-judgment interest at the rate allowed by law.

_____
Cynthia Rogers

Subscribed and sworn to before me
on this the 2nd day of Jan, 2008

_____
Notary Public

OFFICIAL SEAL
BRIAN ROGERS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/13/11

Base Card

# CARDMEMBER AGREEMENT

JUN 17 '96  09:18AM  NOVUS SERVICE  P.3

Please read this Agreement carefully before using the Discover Card. It contains the terms and conditions that apply to the Card Account, some of which may have changed from earlier material provided to you. In the event of any differences, this Agreement shall control.

**1. AGREEMENT TERMS.** The word Card means any one or more Discover Cards issued to you or to an authorized user. The word Account means your Discover Card Account. The words you, your, or yours mean you, the cardmember, and any person contractually liable with this Agreement. The words we, us and our mean Greenwood Trust Company, a Delaware bank.

**2. ACCEPTANCE OF AGREEMENT.** The use of your Account or the Card by you or anyone whom you authorize or permit to use your Account or the Card for personal, family, household and charitable purposes. Your Account or the Card may not be used for business or commercial purposes. You agree that you will only use your Account or the Card to obtain loans to purchase, carry or hold persons or securities. Prior to its use your Account or the Card and the signature of the person to whom it is issued. Your Account and the Card may not be used for the following purposes:

- To purchase or lease goods or services from participating establishments.
- To obtain cash advances by means of automated teller machines or checks in accordance with such additional terms and conditions as may be imposed from time to time.
- To guarantee personal checks at participating establishments subject to availability and such conditions as the participating establishment may impose. Any guaranteed personal check returned unpaid for which we become liable shall be treated as a cash advance and shall be subject to a Returned Check Charge.
- To guarantee hotel reservations at participating establishments. You will be liable for guaranteed reservations that are not cancelled prior to 6 p.m. of the date of arrival at such other time as the establishment may impose.

We are not responsible for the refusal of anyone to accept or honor the Card. The Card is our property. You must return it to us or our agent upon request.

**3. USE OF YOUR ACCOUNT AND THE CARD.** You agree that you will only use your Account or the Card for personal, family, household and charitable purposes.

**4. AUTHORIZED CARD USERS.** If you want to cancel the authorized use of your Account or the Card by another person, you must notify us in writing and recover, cut in half and return to us any Card on such person's possession.

**5. LIABILITY FOR UNAUTHORIZED USE.** If the Card is lost or stolen, or if you think that someone is using your Account or the Card without your permission, notify us immediately. You can notify us by telephoning us at 1-800-DISCOVER, or by writing us at 3500 FAAT'L REV., P.O. Box 35607-FAAT'L REV./ 2/90

**6. LINE OF CREDIT.** We will advise you of your line of credit. We may increase or decrease your line of credit from time to time. You may not exceed or attempt to exceed your line of credit, you will be in default.

**7. PROMISE TO PAY.** You agree to pay us in U.S. Dollars for all purchases and cash advances, including applicable Finance Charges and other charges or fees, incurred by you or any authorized user or permit to use your Account or the Card. All checks must be drawn on funds on deposit in the U.S. If your Account is a joint Account, each of you agrees to be liable individually and jointly for the entire amount owed on your Account.

We can accept late payments or partial payments or checks and money orders marked "payment in full" without losing any of our rights under this Agreement.

**8. MONTHLY BILLING STATEMENT.** We will send you a billing statement after each monthly billing cycle in which you have a debit or credit balance in excess of $1.00. The billing statement will show all purchases, cash advances, Finance Charges and other charges or fees and payments to your Account during the billing cycle. It will show your New Balance, Minimum Payment Due and Due Date. Purchases will be itemized by the amount and date of the transaction, the day of posting to your Account, the seller's name and the city and state of foreign country where the transaction took place. Cash advances will be identified by the amount of the cash advance, the date of the cash advance is obtained or the date of the credit document and the date of posting to your Account.

**9. MONTHLY PAYMENT OPTIONS.** You may at any time pay the entire New Balance shown on your billing statement. If your New Balance is less than $10.00, or (b) the greater of $10.00 or an amount equal to 1/36th of the New Balance rounded to the next higher whole dollar amount. You can pay ahead. The minimum payment due for each monthly billing cycle will be reduced by the amount you have paid in excess of the Minimum Payment Due, as calculated in (a) and (b) above, in any of the three previous monthly billing cycles. However, there will be no reduction in such excess already used to reduce payments. However, if you have exceeded your line of credit or if you have past due amounts, the Minimum Payment Due will be increased by any portion of the New Balance shown on your billing statement.

**10. MINIMUM MONTHLY PAYMENT.** The Minimum Payment Due each month will be either (a) the entire New Balance shown on your billing statement...

**11. FAILURE TO MAKE MINIMUM PAYMENT.** If you do not make at least the Minimum Payment Due by the Payment Due Date each month, you will be in default.

**12. CREDIT BALANCES.** We will refund any credit balance when seven business days from receipt of your written request, or we will automatically refund credit balances greater than $1.00 which remain in your Account for more than six months, if you request a refund, we will automatically refund credit balances greater than $1.00 which remain in your Account.

**13. FINANCE CHARGES.** We will impose Finance Charges as follows:

**A. Purchases**

A Finance Charge is imposed on purchases (except as referred to in paragraph C below) from the date of posting to your Account to the date of repayment.

**B. For each billing cycle:**

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.54% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%), or 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Purchases is the sum of the daily unpaid balances of purchases divided by the number of days in the billing cycle. Such unpaid balances are determined by beginning each day with the unpaid balance of purchases and by adding new purchases and credits applied against such unpaid balances and by adding any unpaid Finance Charges, fees and other charges; in each case.

(2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Purchases. The Monthly Periodic Rate corresponds to an ANNUAL PERCENTAGE RATE of 19.8% unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.54% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Purchases is the sum of the daily unpaid balances of purchases divided by the number of days in the billing cycle. Such unpaid balances are determined by beginning each day with the unpaid balance of purchases and by adding new purchases, fees and other charges; in each case.

**C. A Finance Charge is not imposed on:**

(1) New purchases posted during a billing cycle if (a) you paid the entire New Balance shown on your billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or such New Balance was zero and (b) you pay the New Balance shown on the billing statement itemized the new purchases by the Payment Due Date shown on that billing statement.

(2) Old purchases previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle shown on the Payment Due Date shown on that billing statement.

JUN 17 '96   09:19AM NOVUS SERVICE

P.4

**14. MINIMUM FINANCE CHARGE.** We will charge you a minimum FINANCE CHARGE of $.50 for any billing cycle in which a FINANCE CHARGE is due. If an effective rate is to be imposed.

**15. ANNUAL MEMBERSHIP FEE. ONLY NORTH CAROLINA AND WISCONSIN RESIDENTS.** If you are a resident of North Carolina or Wisconsin, you agree to pay us, at the end of your membership year in which you are a Cardmember unless you became a Cardmember through its purchase, for each Account. Such fee will be waived for the first year you are a Cardmember through a purchase. The Annual Membership fee of $15.00, posted acceptance of a special offer from us, in which case your Account will be posted on the less than one (1) year for that Account, and will be posted during the billing cycle following the anniversary month shown on the face of your Card.

**16. RETURNED CHECK CHARGE.** We will charge you a Returned Check Charge of $15.00 where you make a payment to your Account annually renew your Card. Unless you notify us not to at such offer. You can either pay us or not renew your card.

**17. LATE CHARGE.** We will charge you a Late Charge of $10.00 if you fail to make a required payment within 30 days after the Payment Due Date in any month.

**18. DEFAULT-COLLECTION COSTS.** You are in default if you fail to comply with the terms of this Agreement, including failing to make a required payment when due or exceeding your line of credit. If you are in default, and we refer the collection of your Account to an attorney, we may charge you reasonable attorneys' fees and court or other collection costs as permitted by law.

**19. CANCELLATION.** You may cancel your Account by notifying us in writing and returning the Card to us (cut in half). Of course, you will still be responsible to pay any amount you owe us according to this Agreement. We may cancel or suspend your Account at any time, with or without notice. If you are in default, we have a reasonable and payable without notice. If you are in default, we have a reasonable belief that you are unable or unwilling to repay your obligations to us, if you are insolvent or in bankruptcy, or if you die.

**20. PRIVACY.** We may investigate your credit, employment and income records and verify your credit references, including any application or payment history party without your prior written permission. We do not release this information to any other unless you are in default or if you file a petition in bankruptcy, in which case this may release information regarding your Account to credit reporting agencies and other creditors. We may exchange your name and address and other identifying information on lists of cardmembers furnished to companies selling products or services that may be of interest to you. Our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to our cardmembers.

**21. CREDIT AUTHORIZATIONS.** Certain purchases and cash advances will require our authorization prior to completion of the transaction. In some cases, you may be asked to provide identification. If our authorization system is not working, we may not be able to authorize a transaction, even if you have sufficient available credit. We will not be liable to you if any of these events happen.

**22. CHANGE OF TERMS.** We may change any term of any part of this Agreement, including finance charges and the billing cycle, by any balance upon which this limited charge rate is assessed, by

**23. CHANGE OF ADDRESS.** If you change your address you must notify us of your new address within 15 days.

**24. ASSIGNMENT OF ACCOUNT.** We may at any time, and without notice to you, sell, assign or transfer your Account or any portion thereof without first obtaining our prior written consent.

**25. GOVERNING LAW.** This Agreement will be governed by the laws of the State of Delaware and applicable federal laws. If any part of this Agreement becomes unenforceable, it will not make any other part unenforceable.

Greenwood Trust Company
DISCOVER CARD

Vice President

# EXHIBIT 7

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

07M1-160045

HBLC, Inc., final transfer
of Discover Card

              Plaintiff,

v.

KERI CONRAD,

              Defendant.

Case No. _____

Claimed: $ 4490.58 plus costs

Return Date:  July 27, 2007

VERIFIED COMPLAINT

Now comes Plaintiff, HBLC, Inc., final transferee of Discover Card and claims as follows:

    1.     That the Plaintiff is a corporation authorized to transact business in the State of Illinois and is the owner of this account having purchased said account in the regular course of business in good faith and for value.

    2.     That Defendant(s) opened an Disocver Card credit card account (account number 6011007180600081) and made purchases and charged same to the account but has failed to make monthly payments called for on the account.  A true and correct copy of the Cardmember Agreement is attached hereto as Exhibit "2".

    3.     That pursuant to the Affidavit attached hereto as Exhibit "1" there is due to Plaintiff from the Defendant, as of the filing date of this complaint, the sum of $4490.58 (which includes $350 as reasonable attorneys' fees as permitted by the Cardmember Agreement) plus court costs as permitted by the Cardmember Agreement and as permitted by statute plus post-judgment interest at the rate allowed by law until the debt is paid.

    4.     That Defendant(s) is in default on the account and has refused to pay the balance due after demand by Plaintiff or its Assignor.

    WHEREFORE, Plaintiff, HBLC, Inc., prays for judgment against Defendant, KERI CONRAD, in the amount of $4490.58 (which includes reasonable attorneys' fees of $350) plus court costs plus post-judgment interest at the rate allowed by law on the unpaid balance.

                         Steven J. Fink & Assoc., P.C.

                         By: _____

Steven J. Fink & Assoc., P.C.
Attorney for the Plaintiff
25 E. Washington Ste. 1233(a)
Chicago, IL 60602
(312) 659-2024
Attorney's No. 52383

Federal law requires me to advise you that we are attempting to collect a debt and any information obtained from you will be used for that purpose.  Unless you dispute the validity of this debt, or any portion of it, within 30 days after receipt of this notice, in writing, the debt will be assumed to valid. If you do dispute the debt's validity, we will provide verification or a copy of any Judgment taken against you and the and address of the original creditor if different from the current creditor.

AFFIDAVIT OF INDEBTEDNESS

Cynthia Rogers, after having been first duly sworn, on oath states that if called to testify in this matter she would testify to the following facts:

1.    That she is an agent of Plaintiff, HBLC, Inc..  Upon information provided to her by the transferor of the debt, she is familiar with certain facts surrounding the debt forming the basis of the herein Complaint, including but not limited to the amount due.

2.    That Plaintiff is the owner of the account forming the basis of the herein Complaint having purchased said account in the regular course of business in good faith and for value, and as such, Plaintiff is the current holder of this debt and the party to whom the Defendant, KERI CONRAD, is liable.

3.    That after all charges and just credits to this account have been given to the defendant, there remains due and owing to Plaintiff from Defendant, KERI CONRAD, the sum of $4490.58 (which includes $350 as reasonable attorney fees) plus court costs and post-judgment interest at the rate allowed by law.


_____
Cynthia Rogers


Subscribed and sworn to before me
on this the 8th day of June, 2007


_____
Notary Public

OFFICIAL SEAL
BRIAN ROGERS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/13/11

*Base Card*

# CARDMEMBER AGREEMENT

**Please read this Agreement carefully before using the Discover Card. It contains the terms and conditions of the Discover Card Account, some of which may have changed from earlier materials provided to you. In the event of any differences, this Agreement shall control.**

**1. AGREEMENT TERMS.** The word Card means any one or more Discover Cards issued to you or to an authorized user. The word Account means your Discover Card Account. The words you, your, of yours mean you, the cardmember, and any person or persons who are also contractually liable under this Agreement. The words we, us and our mean Greenwood Trust Company, a Delaware bank.

**2. ACCEPTANCE OF AGREEMENT.** The use of your Account or the Card by you or anyone whom you authorize or permit to use your Account or the Card means you accept this Agreement. However, only if you are a resident of North Carolina or Wisconsin, the Annual Membership Fee provided for in this Agreement is the basis for your Account regardless of whether you use your Account or the Card. This fee cancelled your Account as provided for in Section 19 within 30 days of receipt of your Card.

**3. USE OF YOUR ACCOUNT AND THE CARD.** You agree that you will only use your Account or the Card for personal, family, household and charitable purposes. Your Account or the Card may not be used for business or commercial purposes or to purchase a debit or credit balance or trade in securities. Prior to its use, each Card must be signed by the person to whom it is issued. Your Account and the Card may be used for the following purposes:

- To purchase or lease goods or services from participating establishments.

- To obtain cash advances by means of automated teller machines or checks in accordance with such additional terms and conditions as may be imposed from time to time.

- To guarantee personal checks at participating establishments subject to cash availability and such conditions as the participating establishment may impose. Any guaranteed personal check returned unpaid for whatever reason will be treated as a cash advance and a returned check and shall be subject to a Returned Check Charge.

- To guarantee hotel reservations at participating establishments. You will be liable for guaranteed reservations that are not cancelled prior to 6 p.m. of the date of arrival or such other time as the establishment may impose.

We are not responsible for the refusal of anyone to accept or honor the Card. The Card is our property. You must return it to us or our agent upon request.

**4. AUTHORIZED CARD USERS.** If you want to cancel the authorized or permitted use of your Account or the Card by another person, you must notify us in writing and, if possible, recover, cut in half and return to us any Card in such person's possession.

**5. LIABILITY FOR UNAUTHORIZED USE.** If the Card is lost or stolen, or if you think that someone is using your Account or the Card without your permission, notify us immediately. You can notify us by telephoning us at 1-800-DISCOVER, or by writing us at DISCOVER CARD, P.O. BOX 30937, SALT LAKE CITY, UT 84130. 33567-NAT'L REV. 2/90

JUN 17 '96    09:19AM NOVUS SERVICE

15156. Wilmington, DE 19886-1002. You may be liable for the unauthorized use of your Account or the Card. You will not be liable for unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability will not exceed $50.00.

**6. LINE OF CREDIT.** We will advise you of your line of credit. We may increase or decrease your line of credit from time to time. If you exceed your line of credit, you will be in default.

**7. PROMISE TO PAY.** You agree to pay us in U.S. Dollars for all purchases and cash advances, including amounts owing Finance Charges and other charges or fees, incurred by you or anyone you authorize or permit to use your Account or the Card, even if you do not notify us that others are using your Account or the Card. If you make all of your purchases and cash advances made in a foreign currency to U.S. Dollars at the rate existing on the date of conversion. If you pay us in other than U.S. Dollars, we may refuse to accept the payment or charge your Account our cost to convert your payment to U.S. Dollars. All payments drawn on funds on deposit in the U.S. If your Account is a joint Account you are each liable, individually and jointly for the entire amount owed on your Account.

We can accept late payments or partial payments or checks and money orders marked "payment in full" without losing any of our rights under this Agreement.

**8. MONTHLY BILLING STATEMENT.** We will send you a billing statement after each monthly billing cycle in which you have a debit or credit balance in excess of $1.00. The billing statement will show all purchases, cash advances, Finance Charges and other charges or fees and all payments or other credits posted to your Account during the billing cycle. It will show your New Balance, Minimum Payment Due and Payment Due Date. Purchases will be identified by the amount and date of the purchase, the date of posting to your Account, the seller's name and the city and state of foreign country where the transaction took place. Cash advances will be identified by the amount of the transaction, the date of the transaction (either the date the cash advance is obtained or the date of the credit document) and the date of posting to your Account.

**9. MONTHLY PAYMENT OPTIONS.** You may at any time pay the entire New Balance shown on your billing statement, but each month you must pay at least the Minimum Payment Due. All payments must be mailed or delivered to us at the address shown on your monthly billing statement or by using the envelope enclosed with your statement. All payments will be applied in the following order: Finance Charges and other charges or fees, cash advances in the order made and purchases in the order made.

**10. MINIMUM MONTHLY PAYMENT.** The Minimum Payment Due each month will be either (a) the entire New Balance shown on your billing statement if the New Balance is less than $10.00, or (b) the greater of $10.00 or an amount equal to 1/25th of the New Balance shown on your statement, rounded to the next higher whole dollar amount. You can pay ahead. The Minimum Payment Due for each monthly billing cycle will be reduced by the amount you have paid in excess of the Minimum Payment Due, as calculated in (a) and (b) above. In any of the three previous monthly billing cycles, less any portion of the excess already used to reduce payments. However, there will be no reduction if you have exceeded your line of credit or if you have paid the entire New Balance shown on your billing statement.

**11. FAILURE TO MAKE MINIMUM PAYMENT.** If you do not make at least the Minimum Payment Due by the Payment Due Date each month, you will be in default.

**12. CREDIT BALANCES.** We will refund any credit balance within seven business days from receipt of your written request. If you do not request a refund, we will automatically refund credit balances greater than $1.00 which remain in your Account after two billing cycles.

**13. FINANCE CHARGES.** We will impose Finance Charges as follows:

### Purchases

**A.** A Finance Charge is imposed on purchases (except as referred to in paragraph C below) from the date of posting to your Account until the date of repayment.

**B.** For each billing cycle:

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Purchases is the sum of the daily balances of purchases during the billing cycle divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case as of the date posted to your Account.

(2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Purchases is the sum of the unpaid balances of purchases itemized on your last billing statement each day during the billing cycle. To determine the daily balances of purchases we take the beginning balance each day, add any new purchases posted that day and subtract any unpaid balances of purchases. The sum of the unpaid balances during the billing cycle is then divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

(3) We add the amounts determined under (1) and (2) to obtain the Finance Charge on purchases.

**C.** A Finance Charge is not imposed on:

(1) New purchases posted during a billing cycle if (a) you paid the entire New Balance shown on your billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or such New Balance was zero and (b) you pay the New Balance shown on the billing statement itemizing the new purchases by the Payment Due Date shown on that billing statement.

(2) Old purchases previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

JUN 17 '96  09:19AM NOVUS SERVICE

P.4

JUN 17 '96  09:19AM NOVUS SERVICE

14. **MINIMUM FINANCE CHARGE.** We will charge you a minimum FINANCE CHARGE of $.50 for any billing cycle in which a FINANCE CHARGE of less than $.50 would otherwise be imposed.

17. **LATE CHARGE.** We will charge you a Late Charge of $10.00 if you fail to make a required payment within 20 days after the Payment Due Date in any month.

18. **RETURNED CHECK CHARGE.** We will charge you a Returned Check Charge of $15.00 each time you pay us with or we guarantee a check that is returned unpaid.

19. **CANCELLATION.** You may cancel your Account by notifying us in writing and returning the Card to us cut in half.

20. **PRIVACY.**

21. **CREDIT AUTHORIZATIONS.**

22. **CHANGE OF TERMS.**

23. **CHANGE OF ADDRESS.** If you change your address you must notify us of your new address within 15 days.

24. **ASSIGNMENT OF ACCOUNT.**

25. **GOVERNING LAW.** This Agreement will be governed by the laws of the State of Delaware and applicable federal laws. If any part of this Agreement becomes unenforceable, it will not make any other part unenforceable.

Greenwood Trust Company
DISCOVER CARD

Vice President

# EXHIBIT 8

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT    07M1-160046

HBLC, Inc., final transfer
of Discover Card

                    Plaintiff,                          Case No._____

v.                                                      Claimed: $ 13517.40 plus costs

TINA CELESTE,

                    Defendant.                          Return Date:  July 27, 2007

                          VERIFIED COMPLAINT

Now comes Plaintiff, HBLC, Inc., final transferee of Discover Card and claims as follows:

        1.      That the Plaintiff is a corporation authorized to transact business in the State of
Illinois and is the owner of this account having purchased said account in the regular course of business
in good faith and for value.

        2.      That Defendant(s) opened an Disocver Card credit card account (account number
6011007742520082) and made purchases and charged same to the account but has failed to make monthly
payments called for on the account.  A true and correct copy of the Cardmember Agreement is attached
hereto as Exhibit "2".

        3.      That pursuant to the Affidavit attached hereto as Exhibit "1" there is due to Plaintiff
from the Defendant, as of the filing date of this complaint, the sum of $13517.40 (which includes $350 as
reasonable attorneys' fees as permitted by the Cardmember Agreement) plus court costs as permitted by the
Cardmember Agreement and as permitted by statute plus post-judgment interest at the rate allowed by law
until the debt is paid.

        4.      That Defendant(s) is in default on the account and has refused to pay the balance due
after demand by Plaintiff or its Assignor.

        WHEREFORE, Plaintiff, HBLC, Inc., prays for judgment against Defendant, TINA CELESTE, in the
amount of $13517.40 (which includes reasonable attorneys' fees of $350) plus court costs plus
post-judgment interest at the rate allowed by law on the unpaid balance.

                                                Steven J. Fink & Assoc., P.C.


                                                By:_____

Steven J. Fink & Assoc., P.C.
Attorney for the Plaintiff
25 E. Washington Ste. 1233(a)
Chicago, IL 60602
(312) 659-2024
Attorney's No. 52383



Federal law requires me to advise you that we are attempting to collect a debt and any information
obtained from you will be used for that purpose.  Unless you dispute the validity of this debt, or any
portion of it, within 30 days after receipt of this notice, in writing, the debt will be assumed to valid.
If you do dispute the debt's validity, we will provide verification or a copy of any Judgment taken
against you and the and address of the original creditor if different from the current creditor.

AFFIDAVIT OF INDEBTEDNESS

Cynthia Rogers, after having been first duly sworn, on oath states that if called to testify in this matter she would testify to the following facts:

1.    That she is an agent of Plaintiff, HBLC, Inc.. Upon information provided to her by the transferor of the debt, she is familiar with certain facts surrounding the debt forming the basis of the herein Complaint, including but not limited to the amount due.

2.    That Plaintiff is the owner of the account forming the basis of the herein Complaint having purchased said account in the regular course of business in good faith and for value, and as such, Plaintiff is the current holder of this debt and the party to whom the Defendant, TINA CELESTE, is liable.

3.    That after all charges and just credits to this account have been given to the defendant, there remains due and owing to Plaintiff from Defendant, TINA CELESTE, the sum of $13517.40 (which includes $350 as reasonable attorney fees) plus court costs and post-judgment interest at the rate allowed by law.

_____
Cynthia Rogers

Subscribed and sworn to before me
on this the 8th day of June, 2007

_____
Notary Public

OFFICIAL SEAL
BRIAN ROGERS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/13/11

Base Card

# CARDMEMBER AGREEMENT

Please read this Agreement carefully before using the Discover Card. It contains the terms and conditions of the Discover Card Account, some of which may have been changed from earlier materials provided to you. In the event of any differences, this Agreement shall control.

1. **AGREEMENT TERMS.** The word Card means any one or more Discover Cards issued to you or to an authorized user. The word Account means your Discover Card Account. The words you, your, or yours mean you, the cardmember, and any person or persons who are also contractually liable under this Agreement. The words we, us and our mean Greenwood Trust Company, a Delaware bank.

2. **ACCEPTANCE OF AGREEMENT.** The use of your Account or the Card by you or anyone you authorize or permit to use your Account or the Card means you accept this Agreement. However, only if you are a resident of North Carolina or Wisconsin, the acceptance procedure provided for in Section 15 will be changed to your Account regardless of whether you use your Account or the Card, unless you have cancelled your Account as provided for in Section 15 within 30 days of receipt of your Card.

3. **USE OF YOUR ACCOUNT AND THE CARD.** You agree that you will only use your Account or the Card for personal, family, household or non-business purposes. Your Account or the Card may not be used for business or commercial purchases or to obtain loans to purchase, carry or trade in securities. Prior to its use, each Card must be signed by the person to whom it is issued. Your Account and the Card may be used for the following purposes:

- To purchase or lease goods or services from participating establishments.

- To obtain cash advances by means of automated teller machines or checks in accordance with such additional terms and conditions as may be imposed from time to time.

- To guarantee personal checks at participating establishments subject to cash availability and such limitations, but each month, you establishments may impose. Any guaranteed personal check returned unpaid for which we become liable shall be treated as a cash advance and a returned check and shall be subject to a Returned Check Charge.

- To guarantee hotel reservations at participating establishments. You will be liable for guaranteed reservations that are not cancelled prior to 6 p.m. of the date of arrival or such other time as the establishment may impose.

We are not responsible for the refusal of anyone to accept or honor the Card. The Card is our property. You must return it to us or our agent upon request.

4. **AUTHORIZED CARD USERS.** If you want to cancel the authorized or permitted use of your Account or the Card by another person, you must notify us in writing and recover, cut in half and return to us any Card in such person's possession.

5. **LIABILITY FOR UNAUTHORIZED USE.** If the Card is lost or stolen, or if you think that someone is using your Account or the Card without your permission, notify us immediately. You can notify us by telephoning us at 1-800-DISCOVER, or by writing us at DISCOVER CARD, P.O. Box 30501, Salt Lake City, UT 84130-0501. You will not be liable for the unauthorized use of your Account or the Card. You will not be liable for unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability will not exceed $50.00.

6. **LINE OF CREDIT.** We will advise you of your line of credit. We may increase or decrease your line of credit from time to time. If you exceed or attempt to exceed your line of credit, you will be in default.

7. **PROMISE TO PAY.** You agree to pay us in U.S. Dollars for all purchases and cash advances, including applicable Finance Charges and other charges or fees, incurred by you or anyone you authorize or permit to use your Account or the Card, even if you do not notify us that others are using your Account or the Card. We will convert purchases and cash advances made in a foreign currency to U.S. Dollars at the exchange rate in effect on the date we process the charge to your Account. If your payment to U.S. Dollars. All checks must be drawn on funds on deposit in the U.S. If your Account is a joint Account, each of you agrees to be liable individually and jointly for the entire amount owed on your Account.

We can accept late payments or partial payments or checks and money orders marked "payment in full" without losing any of our rights under this Agreement.

8. **MONTHLY BILLING STATEMENT.** We will send you a billing statement after each monthly billing cycle in which you have a debit or credit balance in excess of $1.00. The billing statement will show all purchases, cash advances, Finance Charges and other charges or fees and all payments or other credits posted to your Account during the billing cycle. It will show your New Balance, and Payment Due and Payment Due Date. Purchases will be identified by the amount and date of the transaction, the date of posting to your Account, the seller's name and the city and state of foreign country where the transaction took place. Cash advances will be identified by the amount of the transaction, the date of posting to your Account (either the date an advance is obtained or the date of the credit document) and the date of posting to your Account.

9. **MONTHLY PAYMENT OPTIONS.** You may at any time pay the entire New Balance shown on your billing statement, but each month, you must pay at least the Minimum Payment Due. All payments must be mailed or delivered to us at the address shown on your monthly billing statement or by using the envelope enclosed with such statement. All payments will be applied in the following order: Finance Charges and other charges or fees, cash advances in the order made and purchases in the order made.

10. **MINIMUM MONTHLY PAYMENT.** The Minimum Payment Due each month will be either (a) the entire New Balance shown on your billing statement if the New Balance is less than $10.00, or (b) the greater of $10.00 or an amount equal to 1/36th of the New Balance rounded to the next higher whole dollar amount. You can pay ahead. The minimum payment due for each monthly billing cycle will be reduced by the amount you have paid in excess of the Minimum Payment Due, as calculated in (a) and (b) above. In any of all the three previous monthly billing cycles, but any portion of the excess already used to reduce payments. However, there will be no reduction if you have exceeded your line of credit or if you have paid the entire New Balance shown on your billing statement.

11. **FAILURE TO MAKE MINIMUM PAYMENT.** If you do not make at least the Minimum Payment Due by the Payment Due Date each month, you will be in default.

JUN 17 '96  09:18AM NOVUS SERVICE   P. 3
15156, Wilmington, DE 19886-1002.

12. **CREDIT BALANCES.** We will refund any credit balance within seven business days from receipt of your written request. If you do not request a refund, we will automatically refund credit balances greater than $1.00 which remain in your Account after six billing cycles.

13. **FINANCE CHARGES.** We will impose Finance Charges as follows:

**Purchases**

A. A Finance Charge is imposed on purchases (except as referred to in paragraph C below) from the date of posting to your Account to the date of repayment.

B. For each billing cycle:

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Purchases is the sum of the daily unpaid balances of purchases on each day of the billing cycle (which excludes any current billing statement purchases) divided by the number of days in the billing cycle. Such daily unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case.
in each case of the data posted to your Account.

(2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Purchases is the sum of the unpaid balances of purchases (itemized on your last billing statement on each day of the billing cycle) covered by your last billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

(3) We add the amounts determined under (1) and (2) to obtain the Finance Charge on purchases.

C. A Finance Charge is not imposed on:

(1) New purchases posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or such New Balance was zero and (b) you pay the New Balance shown on the billing statement itemizing the new purchases by the Payment Due Date shown on that billing statement.

(2) Did purchases previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

33507-NAT'L REV. 2/90

JUN 17 '96 09:19PM NOVUS SERVICE

P.4

**8. For each billing cycle:**

A. **Cash Agreement**
A. A Finance Charge is imposed on cash advances (except as referred to in paragraph (c) below) from the date of transaction to the date of repayment.

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Cash Advances. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Cash Advances is the sum of the daily unpaid balances of cash advances on each day of the billing cycle covered by your current billing statement (as determined by deducting payments and credits applied against such unpaid balances and by adding unpaid finance charges, in each case, as of the date passed to your Account and by adding new cash advances as of the date of the transaction.

B. We multiply the Monthly Periodic Rate times the Average Daily Balance of Cash Advances. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the ANNUAL PERCENTAGE RATE is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Cash Advances is the sum of the daily unpaid balances of cash advances...

C. A Finance Charge (other than the one-time Finance Charge in sub-paragraph B(3) above) is not imposed on:
(1) New cash advances posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle in the Payment Due Date (shown on that billing statement) or such New Balance was zero and (b) you pay the New Balance shown on this billing statement (including the new cash advance) by the Payment Due Date shown on that billing statement.

D. All forms of cash advances, including the sum of all of this Agreement regardless of the purpose for which was used, shall be subject to the Finance Charges as set forth above.

---

**14. MINIMUM FINANCE CHARGE.** We will charge you a minimum FINANCE CHARGE of $.50 for any billing cycle in which we impose a FINANCE CHARGE of less than $.50.

**15. MEMBERSHIP FEE (ONLY NORTH CAROLINA AND WISCONSIN RESIDENTS).** If you are a resident of North Carolina or Wisconsin, a nonrefundable Annual Membership Fee will be billed each year in North Carolina and at the end of your membership year in Wisconsin...

**16. RETURNED CHECK CHARGE.** We will charge you a Returned Check Charge of $15.00 each time you pay us with or we guarantee a check that is returned unpaid.

**17. LATE CHARGE.** We will charge you a Late Charge of $10.00 if you fail to make a required payment within 20 days after the Payment Due Date.

**18. DEFAULT/COLLECTION COSTS.** You are in default if you fail to comply with the terms of this Agreement, including failing to make a required payment when due or exceeding your line of credit. If you are in default and we refer the collection of your Account to an attorney, we may charge you reasonable attorneys' fees and court or other collection costs to the extent permitted by law and as actually incurred by us.

**19. CANCELLATION.** You may cancel your Account by notifying us in writing and returning the Card to us cut in half. Of course, you will still be responsible to pay any amount owed us. If accepted by us, terms of this Agreement, we may cancel or suspend your Account at any time without notice...

**20. PRIVACY.** We may investigate your credit, employment and income records and verify your credit references. We also may report to credit reporting agencies and other creditors the status and payment history of your Account...

**21. CREDIT AUTHORIZATIONS.** Certain purchases and cash advances will require our authorization prior to completion of the transaction. In some cases, you may be asked to provide identification...

**22. CHANGE OF TERMS.** We may change any term or part of this Agreement, including interest charge rate, the finance charge rate is increased, by...

---

**23. CHANGE OF ADDRESS.** If you change your address you must notify us. Use of the Card after the effective date of the change shall constitute acceptance of all new terms...

**24. ASSIGNMENT OF ACCOUNT.** We may sell, assign or transfer your Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account without first obtaining our prior written consent.

**25. GOVERNING LAW.** This Agreement will be governed by the laws of the State of Delaware and applicable federal laws. If any part of this Agreement becomes unenforceable, it will not make any other part unenforceable.

Greenwood Trust Company
DISCOVER CARD

Vice President

JUN 17 '96 09:19PM NOVUS SERVICE