**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CARLOS PRIETO, individually and on )
behalf of a class defined herein, )
                      )   08 C 2718
        Plaintiff, )
                      )   Judge Guzman
   v. )
                      )   Magistrate Judge Schenkier
HBLC, INC.; STEVEN J. FINK; and )
STEVEN J. FINK & ASSOCIATES, P.C., )
                      )
        Defendants )

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

        Plaintiff, Carlos Prieto ("Plaintiff"), respectfully requests that this Honorable

Court enter an order determining that this action may proceed as a class against Defendants

HBLC, Inc. ("HBLC"), Steven J. Fink and Steven J. Fink & Associates, P.C., ("Fink")

collectively ("Defendants").

        Plaintiff brings this action on behalf of a class pursuant to FED. R. CIV. P. 23(a)

and 23(b)(3) of: (a) all natural persons with an Illinois address (b) where Fink on behalf of

HBLC, Inc. filed a lawsuit against the person (c) where a copy of either Exhibit 1 or Exhibit 2

was attached to the state court complaint (d) where the state court complaint stated that either

Exhibit 1 or Exhibit 2 was, "A true and correct copy of the Cardmenber Agreement" (e) during a

period beginning May 9, 2007 and ending May 29, 2008.

        Plaintiff also requests that Warner Law Firm, LLC and attorney Curtis C. Warner

be appointed counsel for the class.

        In support of this motion, Plaintiff states:

**NATURE OF THE CASE**

1.      HBLC, Inc. prior to filing suit against a consumer obtains none or virtually no documentation sustaining that the purported debtor actually owes money to anyone.  If HBLC, Inc. wanted such documentation it would have to pay more money to obtain such documentation, if any documentation supporting the purported debt exists at all.

2.      To make up for this self-created deficiency HBLC, Inc. in support of its claims against consumers when it sues as "HBLC, Inc., final transfer of Discover" used an exact copy of a two-page document Exhibit 1 and now uses Exhibit 2, which is a reduced and altered one-page copy of Exhibit 1.

3.      Plaintiff complains that Defendants' systematic practice of filing the same copy of a 1990 (nineteen hundred ninety) purported "Cardmember Agreement" as an exhibit attached to state court collection lawsuits coupled with the statement in the state court complaint that the exhibit is a, "A true and correct copy of the Cardmenber Agreement" when it is not, violates 15 U.S.C. §§ 1692e, e(10), and 1692f.

4.      Defendants' systematic practice amounts to a fraud upon the state court and is a material misrepresentation as it has been estimated that over 90% of collection suits filed against consumers where service of process is made on the consumer result in a default judgment being entered against the consumer. *Harvey v. Great Seneca Fin. Corp*., 453 F.3d 324, 327 (6th Cir. 2006); *See also Chavez v. Bowman, Heintz, Boscia & Vician*, 07 C 640, Dkt. 42-2, Affidavit of Gerald E. Bowman, pp. 7-8 ¶ 14 (N.D. Ill. Oct. 3, 2007) (law firm obtains a majority of judgments for creditors by default judgment on debt collection cases it filed in Cook County, Illinois).

## CLASS CERTIFICATION REQUIREMENTS

5.      All requirements of Rule 23 of the Federal Rules of Civil Procedure have been met.

6.      During the proposed class period beginning May 9, 2007, Fink on behalf of HBLC filed in the Circuit Court of Cook County, First Municipal Division, 42 lawsuits where the claim was based on a purported Discover Card debt.  Attached as Exhibit 3 is the first page of each of these 42 case's docket sheet.  A class of at least 42 members satisfies numerosity.

7.      There are questions of law and fact common to the class, which common question predominate over any question relating to individual class members as the class claims involve the use of a copied exhibit, Exhibit 1 or Exhibit 2 coupled with the same false statement regarding the exhibit effecting others.  In this case, the class claims are based on Defendants' standardized conduct: (1) of using a copy of the exact same 1990 (nineteen-hundred ninety) purported Discover "Cardmember Agreement"; and (2) affirmatively characterizing the document as a, "A true and correct copy of the Cardmenber Agreement" when in fact it is not. Attached hereto as Exhibit 4 is the state court complaint filed against Plaintiff with the "Cardmember Agreement" exhibit.  Attached hereto as Exhibit 5 from a random spot check of other state court complaints from the class period filed by Fink on HBLC's behalf as "HBLC, Inc., final transfer of Discover."  Each of the complaints contain a copy of Exhibit 1 or Exhibit 2 and the affirmative statement that the same exhibit is  "A true and correct copy of the Cardmenber Agreement. . . ".

8.      The only individual issue appears to be identification of the consumers

whose rights have been violated.  This information would be contained Defendants' records and

42 of the class members have been identified from public records.

9.      Plaintiff's claims involving the exhibit attached to Defendants' state court

complaints and form pleading are typical of the claims of the class members.  All are

based on the same factual and legal theories.

10.     Plaintiff will fairly and adequately represent the class members and is

aware of his claims brought on behalf of the class. Plaintiff's affidavit is attached hereto as

Exhibit 6.

11.     Plaintiff has also retained counsel experienced in class actions and FDCPA

litigation.  The declaration of Plaintiff's counsel Curtis C. Warner of Warner Law Firm, LLC is

attached hereto as Exhibit 7.

12.     A class action is superior for the fair and efficient adjudication of this

matter, in that:

> a. Individual actions are not economically feasible;
>
> b. Members of the class are likely to be unaware of their rights and the
>
> wrong that has been committed by Defendants; and
>
> c. Congress intended class actions to be the principal enforcement
>
> mechanism under the FDCPA.

13.      In further support of this motion, Plaintiff submits the accompanying

memorandum of law.

WHEREFORE, the reasons set forth in this motion and accompanying memorandum, Plaintiff requests this Honorable Court to grant Plaintiff's motion to certify the class and appoint the Warner Law Firm, LLC and Curtis C. Warner as Class Counsel.

Respectfully submitted,

s/ Curtis C. Warner
Curtis C. Warner

Curtis C. Warner          cwarner@warnerlawllc.com
WARNER LAW FIRM, LLC
Millennium Park Plaza
151 N. Michigan Ave., Ste. 3714
Chicago, Illinois 60601
(312) 238-9820 (TEL)

# EXHIBIT 1

*Bose Card* (handwritten)

# CARDMEMBER AGREEMENT

Please read this Agreement carefully before using the Discover Card. It contains the terms and conditions of the Discover Card Account, some of which may have changed from earlier materials provided to you, in the event of any differences, this Agreement shall control.

**1. AGREEMENT TERMS.** The word Card means any one or more Discover Cards issued to you or to an authorized user. The word Account means your Discover Card Account. The words you, your, or yours mean you, the cardmember, and any person or persons who are also contractually liable under this Agreement. The words we, us, and our mean Greenwood Trust Company, a Delaware bank.

**2. ACCEPTANCE OF AGREEMENT.** The use of your Account or the Card by you or anyone whom you authorize or permit to use your Account or the Card means you accept this Agreement. However, only if you are a resident of North Carolina or Wisconsin, an Acknowledgement fee is provided for in Section 15 will be charged to your Account regardless of whether you use your Account or the Card, unless you have cancelled your Account as provided for in Section 19 within 30 days of receipt of your Card.

**3. USE OF YOUR ACCOUNT AND THE CARD.** You agree that you will only use your Account or the Card for personal, family, household or comparable purposes. Your Account or the Card may not be used for business or commercial purposes or to obtain loans to purchase, carry or trade in securities. Prior to its use, each Card must be signed by the person to whom it is issued. Your Account and the Card may be used for the following purposes:

- To purchase or lease goods or services from participating establishments.

- To obtain cash advances by means of automated teller machines or checks in accordance with such conditions and terms and conditions as may be imposed from time to time.

- To guarantee personal checks at participating establishments subject to cash availability and such conditions as the participating establishments may impose. Any guaranteed personal check returned unpaid for which we become liable shall be treated as a cash advance and a returned check and shall be subject to a Returned Check Charge.

- To guarantee hotel reservations at participating establishments. You will be liable for guaranteed reservations that are not cancelled prior to 6 p.m. of the date of arrival or such other time as the establishment may impose.

We are not responsible for the refusal of anyone to accept or honor the Card. The Card is our property. You must return it to us or our agent upon request.

**4. AUTHORIZED CARD USERS.** If you want to cancel the authorized or permitted use of your Account or the Card by another person, you must notify us in writing and recover, cut in half and return to us any Card at such person's possession.

**5. LIABILITY FOR UNAUTHORIZED USE.** If the Card is lost or stolen, or if you think that someone is using your Account or the Card without your permission, notify us immediately. You can notify us by telephoning us at 1-800-DISCOVER, or by writing us at DISCOVER CARD, P.O. Box 33507-NAT'L, REV. 2/90

**6. LINE OF CREDIT.** We will advise you of your line of credit. We may increase or decrease your line of credit from time to time. If you exceed or attempt to exceed your line of credit, you will be in default.

**7. PROMISE TO PAY.** You agree to pay us in U.S. Dollars, for all purchases and cash advances, including applicable Finance Charges and other charges or fees, incurred by you or anyone you authorized or permit to use your Account or the Card, even if you do not notify us that others are using your Account or the Card. We will convert purchases and cash advances made in a foreign currency to U.S. Dollars at a rate which we or others select in our discretion, in other than U.S. Dollars, we may refuse to accept the payment or charge your Account our cost to convert your Payment to U.S. Dollars. All checks must be drawn on funds on deposit in the U.S. If your Account is a joint Account, each of you agrees to be liable individually and jointly for the entire amount owed on your Account.

We can accept late payments or partial payments or checks and money orders marked "payment in full" without losing any of our rights under this Agreement.

**8. MONTHLY BILLING STATEMENT.** We will send you a billing statement, after each monthly billing cycle in which you have a debit or credit balance in excess of $1.00. The billing statement will show all purchases, cash advances, Finance Charges and other charges or fees and all payments or other credits posted to your Account during the billing cycle. It will show your New Balance, Minimum Payment Due and Payment Due Date. Purchases will be identified by the amount and date of the transaction, the date of posting to your Account, the seller's name and the city and state or foreign country where the transaction took place. Cash advances will be identified by the amount of the transaction, the date of the advance posted to your Account and the place of posting, or the date of the credit document and the date of posting to your Account.

**9. MINIMUM PAYMENT OPTIONS.** You may at any time pay the entire New Balance shown on your billing statement, but each month you must pay at least the Minimum Payment Due. All payments must be mailed or delivered to us at the address shown on your monthly billing statement or by using the envelope enclosed with such statement. All payments will be applied in the following order: Finance Charges and other charges or fees, cash advances in the order made and purchases in the order made.

**10. MINIMUM MONTHLY PAYMENT.** The Minimum Payment Due each month will be either (a) the entire New Balance shown on your billing statement if the New Balance is less than $10.00, or (b) the greater of $10.00 or an amount equal to 1/36th of the New Balance rounded to the next higher whole dollar amount. You can pay ahead. The minimum payment due for each monthly billing cycle will be reduced by the amount you have paid in excess of the Minimum Payment Due, as calculated on a prior billing cycle, in any of the three previous monthly billing cycles, less any portion of the excess already used to reduce payments. However, there will be no reduction if you have exceeded your line of credit or if you have paid the entire New Balance shown on your billing statement.

**11. FAILURE TO MAKE MINIMUM PAYMENT.** If you do not make at least the Minimum Payment Due by the Payment Due Date each month, you will be in default.

**12. CREDIT BALANCES.** We will refund any credit balance when seven business days from receipt of your written request. If you do not request a refund, we will automatically refund credit balances greater than $1.00 which remain in your Account after two billing cycles.

**13. FINANCE CHARGES.** We will impose Finance Charges as follows:

**Purchases**

A. A Finance Charge is imposed on purchases (except as referred to in paragraph C below) from the date of posting to your Account to the date of repayment.

B. For each billing cycle:

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Purchases is the sum of the daily unpaid balances of purchases on each day of the billing cycle (excluding any current period billings divided by the number of days in the billing cycle). Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

(2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Purchases is the sum of the unpaid balances of purchases itemized on your last billing statement on each day of the billing cycle (excluding any current period billings). Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

(3) We add the amounts determined under (1) and (2) to impose the Finance Charge on purchases.

C. A Finance Charge is not imposed on:

(1) New purchases posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement of such New Balance was zero and (b) you pay the New Balance shown on the billing statement itemizing the new purchases by the Payment Due Date shown on that billing statement.

(2) Old purchases previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

**Cash Advances**

A. A Finance Charge is imposed on cash advances (except as referred to in paragraph (C) below) from the date of transaction to the date of repayment.

B. For each billing cycle:

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Cash Advances. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% when corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Cash Advances is the sum of the daily unpaid balances of cash advances on each day of the billing cycle covered by your current billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by adding new cash advances and subtracting payments and credits applied against such unpaid balances and by adding unpaid finance charge, in each case, as of the date posted to your Account and by adding new cash advances as of the date of the transaction.

(2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Cash Advances. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Cash Advances is the sum of the unpaid balances of cash advances itemized on your last billing statement on each day of the billing cycle covered by your last billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by adding new cash advances and subtracting payments and credits applied against such unpaid balances and by adding unpaid finance charge, in each case, as of the date posted to your Account and by adding new cash advances as of the date of the transaction.

(3) We also charge a one-time FINANCE CHARGE for cash advances equal to 2.5% of the amount of each new cash advance, with a minimum FINANCE CHARGE of $2.00 and a maximum FINANCE CHARGE of $10.00 (except for cash advances made in respect of guaranteed personal checks for which we have no label). This charge may result in an ANNUAL PERCENTAGE RATE for cash advances which is higher than the nominal ANNUAL PERCENTAGE RATE.

(4) We add the amounts determined under (1), (2) and (3) to obtain the Finance Charge on Cash Advances.

C. A Finance Charge (other than the one-time Finance Charge in sub-paragraph B(3) above) is not imposed on:

(1) New cash advances posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or such New Balance was zero and (b) you pay the New Balance shown on the billing statement itemizing the new cash advances by the Payment Due Date shown on that billing statement.

(2) Old cash advances previously posted but being paid during which you pay the New Balance shown on the billing cycle statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

D. All forms of cash advances, including the use of Discover Card Checks, regardless of the purpose for which used, shall be subject to the Finance Charges as set forth above.

14. **MINIMUM FINANCE CHARGE.** We will charge you a minimum FINANCE CHARGE of $.50 for any billing cycle in which a FINANCE CHARGE of less than $.50 would otherwise be imposed.

15. **ANNUAL MEMBERSHIP FEE. (ONLY NORTH CAROLINA AND WISCONSIN RESIDENTS.)** If you are a resident of North Carolina or Wisconsin, you agree to pay us, at the beginning of your membership year in North Carolina and at the end of your membership year in Wisconsin, a nonrefundable Annual Membership Fee of $15.00, posted $13 purchase. For each Account. Such fee will be waived for the first year if you become an Account member and charge a purchase at the time of acceptance of a special offer from us, in which case, all of a portion of the fee may be waived or reduced in accordance with the terms of such offer. You may have more than one card per Account, but only be charged only one fee for that Account. Unless you notify us not to renew your Account, the fee will be posted to your Account annually during the billing cycle following the expiration month shown on the face of your Card.

16. **RETURNED CHECK CHARGE.** We will charge you a Returned Check Charge of $15.00 each time you pay us when we guarantee a check that is returned unpaid.

17. **LATE CHARGE.** We will charge you a Late Charge of $10.00 if you fail to make a required payment within 30 days after the Payment Due Date in any month.

18. **COLLECTION COSTS.** If you are in default if you fail to comply with the terms of this Agreement, including failing to make a required payment when due or exceeding your line of credit, if you are in default and we refer the collection of your Account to an attorney, we may charge you reasonable attorneys' fees and court or other collection costs as permitted by law and as actually incurred by us.

19. **CANCELLATION.** You may cancel your Account by notifying us in writing and returning the Card to us cut in half. Of course, you will be responsible to pay any amount you owe us according to the terms of this Agreement. We may cancel your Account or suspend your Account at any time without notice. If we do cancel or suspend your Account, we may declare the entire balance of your Account immediately due and payable without notice if you are in default. If we have a reasonable belief that you are unable of unwilling to repay any obligation to us, if you are in default and we may...

20. **PRIVACY.** We may investigate your credit, employment and income records and verify your credit references. We also may report to credit reporting agencies and other creditors the status and payment history of your Account. We will not release this information to any other party without your prior written permission or proper legal process, unless you are in default or you file a petition in bankruptcy, in which case we may release information regarding your accounts to third parties related to us to assist us in enforcing our rights under this Agreement. However, we may include your name and address and other identifying information on lists of cardmembers furnished to companies selling products or services that may be of interest to you. Our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to our cardmembers.

21. **CREDIT AUTHORIZATIONS.** Certain purchases and cash advances will require our authorization prior to completion of the transaction. In some cases, you may be asked to provide identification. If our authorization system is not working and we may not be able to authorize a transaction even if you have available credit. We will not be liable to you if any of these events happen.

22. **CHANGE OF TERMS.** We may change any term or part of this Agreement, including finance charge rate, fee or method of computing any balance upon which the finance charge rate is assessed, by

sending you a written notice at least 30 days before the change is to become effective. We may apply any such change to the outstanding balance of your Account on the effective date of the change and to new charges made after that date. If you do not agree to the change, you must notify us in writing within 30 days of the mailing of the notice of change, in which case your Account will be closed and you must pay us the balance that you owe us under the existing terms of the unchanged Agreement. Otherwise, we will deem your use of the Card, or the Account, after the effective date of the change shall be deemed acceptance of the new terms as of such effective date, even if you previously notified us that you did not agree to the change.

23. **CHANGE OF ADDRESS.** If you change your address you must notify us of your new address within 15 days.

24. **ASSIGNMENT OF ACCOUNT.** We may sell, assign or transfer your Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account without first obtaining our prior written consent.

25. **GOVERNING LAW.** This Agreement will be governed by the laws of the State of Delaware and applicable federal laws. If any part of this Agreement becomes unenforceable, it will not make any other part unenforceable.

Greenwood Trust Company
DISCOVER CARD

Vice President

# EXHIBIT 2

# CARDMEMBER AGREEMENT

Please read this Agreement carefully before using the Discover Card. It contains the terms and conditions of the Discover Card Account, some of which may have changed from earlier materials provided to you. In the event of any differences, this Agreement shall control.

1. **AGREEMENT TERMS.** The word Card means any one or more Discover Cards issued to you or to an authorized user. The word Account means your Discover Card Account. The words you, your, or yours mean you, the cardmember, and any person or persons who are also contractually liable under this Agreement. The words we, us and our mean Greenwood Trust Company, a Delaware bank.

2. **ACCEPTANCE OF AGREEMENT.** The use of your Account or the Card by you or anyone whom you authorize or permit to use your Account or the Card means you accept this Agreement. However, only if you are a resident of North Carolina or Wisconsin, the Annual Membership Fee provided for in Section 15 will be charged to your Account regardless of whether you use your Account or the Card, unless you have cancelled your Account as provided for in Section 19 within 30 days of receipt of your Card.

3. **USE OF YOUR ACCOUNT AND THE CARD.** You agree that you will only use your Account or the Card for personal, family, household and charitable purposes. Your Account or the Card may not be used for business or commercial purposes or to obtain loans to purchase, carry or trade in securities. Prior to its use, each Card must be signed by the person to whom it is issued. Your Account and the Card may be used for the following purposes:

   • To purchase or lease goods or services from participating establishments.

   • To obtain cash advances by means of automated teller machines or checks in accordance with such additional terms and conditions as may be imposed from time to time.

   • To guarantee personal checks at participating establishments subject to cash availability and such conditions as the participating establishments may impose. Any guaranteed personal check returned unpaid for which we become liable shall be treated as a cash advance and a returned check and shall be subject to a Returned Check Charge.

   • To guarantee hotel reservations at participating establishments. You will be liable for guaranteed reservations that are not cancelled prior to 6 p.m. of the date of arrival or such other time as the establishment may impose.

   We are not responsible for the refusal of anyone to accept or honor the Card. The Card is our property. You must return it to us or our agent upon request.

4. **AUTHORIZED CARD USERS.** If you want to cancel the authorized or permitted use of your Account or the Card by another person, you must notify us in writing and recover, cut in half and return to us any Card in such person's possession.

5. **LIABILITY FOR UNAUTHORIZED USE.** If the Card is lost or stolen, or if you think that someone is using your Account or the Card without your permission, notify us immediately. You can notify us by telephoning us at 1-800-DISCOVER, or by writing us at DISCOVER CARD, P.O. Box 33507 NAT'L REV. 2/90

---

**Cash Advances**

A. A Finance Charge is imposed on cash advances (except as referred to in paragraph (C) below) from the date of transaction to the date of repayment.

B. For each billing cycle:

   (1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Cash Advances. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin. In which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Cash Advances is the sum of the daily unpaid balances of cash advances on each day of the billing cycle covered by your current billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account and by adding new cash advances as of the date of the transaction.

   (2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Cash Advances. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Cash Advances is the sum of the unpaid balances of cash advances carried on your last billing statement on each day of the billing cycle covered by your last billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding unpaid finance charges, fees and other charges, in each case, as of the date of the transaction.

   (3) We also charge a one-time FINANCE CHARGE for cash advances equal to 2.5% of the amount of each new cash advance, with a minimum FINANCE CHARGE of $2.00 and a maximum FINANCE CHARGE of $10.00 (except for cash advances which are made in respect of guaranteed personal checks for which we become liable). This charge may result in an ANNUAL PERCENTAGE RATE for cash advances which is higher than the nominal ANNUAL PERCENTAGE RATE.

   (4) We add the amounts determined under (1), (2) and (3) to obtain the Finance Charge on Cash Advances.

C. A Finance Charge (other than the one-time Finance Charge in subparagraph B(3) above) is not imposed on:

   (1) New cash advances posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or such New Balance was zero and (b) you pay the New Balance shown on the billing statement including the new cash advances by the Payment Due Date shown on that billing statement.

   (2) Old cash advances previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

D. All forms of cash advances, including the use of Discover Card Checks, regardless of the purpose for which used, shall be subject to the Finance Charges as set forth above.

---

6. **LINE OF CREDIT.** We will advise you of your line of credit. We may increase or decrease your line of credit from time to time. If you exceed or attempt to exceed your line of credit, you will be in default.

7. **PROMISE TO PAY.** You agree to pay us in U.S. Dollars for all purchases and cash advances, including applicable Finance Charges and other charges or fees, incurred by you or anyone you authorize or permit to use your Account or the Card, even if you do not notify us that others are using your Account or the Card. We will convert purchases and cash advances made in a foreign currency to U.S. Dollars at the rate existing on the date of conversion. If you pay us in other than U.S. Dollars, we may refuse to accept the payment or charge your Account our cost to convert your payment to U.S. Dollars. All checks must be drawn on funds on deposit in the U.S. If your Account is a joint Account, each of you agrees to be liable individually and jointly for the entire amount owed on your Account.

   We can accept late payments or partial payments or checks and money orders marked "payment in full" without losing any of our rights under this Agreement.

8. **MONTHLY BILLING STATEMENT.** We will send you a billing statement after each monthly billing cycle in which you have a debit or credit balance in excess of $1.00. The billing statement will show all purchases, cash advances, Finance Charges and other charges or fees and all payments or other credits posted to your Account during the billing cycle. It will show your New Balance, Minimum Payment Due and Payment Due Date. Purchases will be identified by the amount and date of the transaction, the date of posting to your Account, the seller's name and the city and state or foreign country where the transaction took place. Cash advances will be identified by the amount of the transaction, the date of the transaction (either the date the cash advance is obtained or the date of the credit document) and the date of posting to your Account.

9. **MONTHLY PAYMENT OPTIONS.** You may at any time pay the entire New Balance shown on your billing statement, but each month you must pay at least the Minimum Payment Due. All payments must be mailed or delivered to us at the address shown on your monthly billing statement or by using the envelope enclosed with such statement. All payments will be applied in the following order: Finance Charges and other charges or fees, cash advances in the order made and purchases in the order made.

10. **MINIMUM MONTHLY PAYMENT.** The Minimum Payment Due each month will be either (a) the entire New Balance shown on your billing statement if the New Balance is less than $10.00, or (b) the greater of $10.00 or an amount equal to 1/36th of the New Balance (rounded to the next higher whole dollar amount). You can pay ahead. The minimum payment due for each monthly billing cycle will be reduced by the amount you have paid in excess of the Minimum Payment Due, as calculated in (a) and (b) above. In any of the three previous monthly billing cycles, less any portion of the excess already used to reduce payments. However, each new Minimum Payment Due will not be reduced for any current billing cycle in which you have exceeded your line of credit or if you have paid the entire New Balance shown on your billing statement.

11. **FAILURE TO MAKE MINIMUM PAYMENT.** If you do not make at least the Minimum Payment Due by the Payment Due Date each month, you will be in default.

---

13546, Wilmington, DE 19886-1003. You may be liable for unauthorized use of your Card. You will not be liable for unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability will not exceed $50.00.

---

12. **CREDIT BALANCES.** We will refund any credit balance within seven business days upon receipt of your written request. If you do not request a refund, we will automatically refund credit balances greater than $1.00 which remain in your Account after two billing cycles.

13. **FINANCE CHARGES.** We will impose Finance Charges as follows:

**Purchases**

A. A Finance Charge is imposed on purchases (except as referred to in paragraph C below) from the date of posting to your Account to the date of repayment.

B. For each billing cycle:

   (1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Purchases is the sum of the daily unpaid balances of purchases on each day of the billing cycle covered by your current billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

   (2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Purchases is the sum of the unpaid balances of purchases itemized on your last billing statement on each day of the billing cycle covered by your last billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

   (3) We add the amounts determined under (1) and (2) to obtain the Finance Charge on purchases.

C. A Finance Charge is not imposed on:

   (1) New purchases posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or such New Balance was zero and (b) you pay the New Balance shown on the billing statement including the new purchases by the Payment Due Date shown on that billing statement.

   (2) Old purchases previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

---

14. **MINIMUM FINANCE CHARGE.** We will charge you a minimum FINANCE CHARGE of $.50 for any billing cycle in which a FINANCE CHARGE of less than $.50 would otherwise be imposed.

15. **ANNUAL MEMBERSHIP FEE. (ONLY NORTH CAROLINA AND WISCONSIN RESIDENTS.)** If you are a resident of North Carolina or Wisconsin, you agree to pay us at the beginning of your membership year in North Carolina and at the end of your membership year in Wisconsin, a nonrefundable Annual Membership Fee of $18.00, billed as a purchase, for each Account. Such fee will be waived for the first year you are a Cardmember unless you became a Cardmember through acceptance of a special offer from us, in which case (a) a portion of the fee may be waived or related in accordance with the terms of such offer. You may have more than one Card per Account, but only be charged only one fee for that Account. Unless you notify us not to renew your Account, the fee will be posted to your Account annually during the billing cycle following the expiration month shown on the face of your Card.

16. **RETURNED CHECK CHARGE.** We will charge you a Returned Check Charge of $15.00 each time you pay us with or we guarantee a check that is returned unpaid.

17. **LATE CHARGE.** We will charge you a Late Charge of $10.00 if you fail to make a required payment within 20 days after the Payment Due Date in any month.

18. **DEFAULT-COLLECTION COSTS.** You are in default if you fail to comply with the terms of this Agreement, including failing to make a required payment when due or exceeding your line of credit. If you are in default and we refer the collection of your Account to an attorney, we may charge you reasonable attorneys' fees and court or other collection costs as permitted by law and as actually incurred by us.

19. **CANCELLATION.** You may cancel your Account by notifying us in writing and returning the Card to us cut in half. Of course, you will still be responsible to pay any amount you owe us according to the terms of this Agreement. We may cancel or suspend your Account at any time without notice. If we do cancel or suspend your Account, we may declare the entire balance of your Account immediately due and payable without notice; if you are in default, if we have a reasonable belief that you are unable or unwilling to repay your obligations to us, if you are insolvent or in bankruptcy, or if you die.

20. **PRIVACY.** We may investigate your credit, employment and income records and verify your credit references. We also may report to credit reporting agencies and other creditors the status and payment history of your Account. We will not release information to any other party without your prior written permission or proper legal process, unless you are in default or if you file a petition in bankruptcy, in which case we may release information regarding your account to third parties retained by us to assist us in enforcing our rights under this Agreement. However, we may include your name and address and other identifying information on lists of cardmembers furnished to companies selling products or services that may be of interest to you. Our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to our cardmembers.

21. **CREDIT AUTHORIZATIONS.** Certain purchases and cash advances will require our authorization prior to completion of the transaction. In some cases, you may be asked to provide identification. If our authorization system is not working, we may not be able to authorize a transaction, even if you have sufficient available credit. We will not be liable to you if any of these events happen.

22. **CHANGE OF TERMS.** We may change any term of this Agreement, including finance charge rate, fee or method of computing any balance upon which the finance charge rate is assessed, by

---

sending you a written notice at least 30 days before the change is to become effective. We may apply any such change to the outstanding balance of your Account on the effective date of the change and to new charges made after that date. If you do not agree to the change, you must notify us in writing within 30 days after the mailing of the notice of change at the address provided in the notice of change, in which case your Account will be closed and you must pay us the balance that you owe us under the existing terms of the unchanged Agreement. Otherwise, you will have agreed to the changes in the notice. Use of the Card after the effective date of the change shall be deemed acceptance of the new terms as of such effective date, even if you previously notified us that you did not agree to the change.

23. **CHANGE OF ADDRESS.** If you change your address you must notify us of your new address within 15 days.

24. **ASSIGNMENT OF ACCOUNT.** We may sell, assign or transfer your Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account without first obtaining our prior written consent.

25. **GOVERNING LAW.** This Agreement will be governed by the laws of the State of Delaware and applicable federal laws. If any part of this Agreement becomes unenforceable, it will not make any other part unenforceable.

Greenwood Trust Company
DISCOVER CARD

*J. B. Whitley* (signature)
Vice President

# EXHIBIT 3



Case Information Summary for Case Number
2007-M1-159999

Filing Date: 6/18/2007

Case Type: CONTRACT

Division: Municipal Division

District: First Municipal

Ad Damnum: $7669.36

Calendar:

### Party Information

**Plaintiff(s)**
HBLC INC

**Attorney(s)**
FINK STEVEN J

25 E WASHINGTON 1233

CHICAGO IL, 60602

(312) 696-1000

DISCOVER CARD

| **Date of Service** | **Defendant(s)** | **Attorney(s)** |
|---|---|---|
| | AGUSTIN BRIAN | |

### Case Activity

Activity Date: 6/18/2007

Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 7/27/2007

Court Time: 0930

Court Room: 1104                Attorney: FINK STEVEN J

Court Fee: 204.00

Judgment Amount: 7669.36

Activity Date: 7/31/2007

Participant: AGUSTIN BRIAN

ALIAS SUMMONS ISSUED AND RETURNABLE

Date: 8/31/2007

Court Time: 0930

Court Fee: 6.00                Attorney: FINK STEVEN J

Judgment Amount: 7669.36



*Dorothy Brown*
## Clerk *of the* CIRCUIT COURT
*Cook County*

Case Information Summary for Case Number
**2007-M1-160000**

Filing Date: 6/18/2007                          Case Type: CONTRACT
Division: Municipal Division                    District: First Municipal
Ad Damnum: $13316.30                            Calendar:

### Party Information

| **Plaintiff(s)** | **Attorney(s)** |
| --- | --- |
| HBLC INC | FINK STEVEN J |
| | 25 E WASHINGTON 1233 |
| | CHICAGO IL, 60602 |
| | (312) 696-1000 |

DISCOVER CARD

| **Date of Service** | **Defendant(s)** | **Attorney(s)** |
| --- | --- | --- |
| | AGLIATA PETER | |

### Case Activity

Activity Date: 6/18/2007                          Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 7/27/2007
Court Time: 0930
Court Room: 1104                 Attorney: FINK STEVEN J
Court Fee: 204.00
Judgment Amount: 13316.30

Activity Date: 7/31/2007                          Participant: AGLIATA PETER

ALIAS SUMMONS ISSUED AND RETURNABLE

Date: 8/31/2007
Court Time: 0930
Court Fee: 6.00                  Attorney: FINK STEVEN J
Judgment Amount: 13316.30



*Dorothy Brown*

# CLERK *of the* CIRCUIT COURT

*Cook County*

Case Information Summary for Case Number

2007-M1-160024

Filing Date: 6/18/2007                    Case Type: CONTRACT
Division: Municipal Division              District: First Municipal
Ad Damnum: $8599.49                       Calendar:

## Party Information

| **Plaintiff(s)** | **Attorney(s)** |
| --- | --- |
| HBLC INC | FINK STEVEN J |
| | 25 E WASHINGTON 1233 |
| | CHICAGO IL, 60602 |
| | (312) 696-1000 |

DISCOVER CARD

| **Date of Service** | **Defendant(s)** | **Attorney(s)** |
| --- | --- | --- |
| | GLASS JAMES | |

## Case Activity

Activity Date: 6/18/2007                                   Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 7/27/2007
Court Time: 0930
Court Room: 1106              Attorney: FINK STEVEN J
Court Fee: 204.00
Judgment Amount: 8599.49

Activity Date: 7/30/2007                                  Participant: GLASS JAMES

ALIAS SUMMONS ISSUED AND RETURNABLE

Date: 8/31/2007
Court Time: 0930
Court Fee: 6.00               Attorney: FINK STEVEN J
Judgment Amount: 8599.49



*Dorothy Brown*
# Clerk *of the*
# Circuit Court
*Cook County*

Case Information Summary for Case Number
2007-M1-160033

Filing Date: 6/18/2007

Case Type: CONTRACT

Division: Municipal Division

District: First Municipal

Ad Damnum: $8623.65

Calendar:

### Party Information

**Plaintiff(s)**

HBLC INC

**Attorney(s)**

FINK STEVEN J

25 E WASHINGTON 1233

CHICAGO IL, 60602

(312) 696-1000

DOSCPVER CARD

**Date of Service**    **Defendant(s)**    **Attorney(s)**

ZAJAC ANNA CHRISTI

### Case Activity

Activity Date: 6/18/2007

Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 7/27/2007

Court Time: 0930

Court Room: 1102    Attorney: FINK STEVEN J

Court Fee: 204.00

Judgment Amount: 8623.65

Activity Date: 7/30/2007

Participant: ZAJAC ANNA CHRISTI

ALIAS SUMMONS ISSUED AND RETURNABLE

Date: 8/31/2007

Court Time: 0930

Court Fee: 6.00    Attorney: FINK STEVEN J

Judgment Amount: 8623.65



Case Information Summary for Case Number
2007-M1-160034

Filing Date: 6/18/2007                          Case Type: CONTRACT
Division: Municipal Division                     District: First Municipal
Ad Damnum: $1730.61                              Calendar:

### Party Information

**Plaintiff(s)**                                 **Attorney(s)**
HBLC INC                                         FINK STEVEN J

                                                 25 E WASHINGTON 1233

                                                 CHICAGO IL, 60602

                                                 (312) 696-1000


DISCOVER CARD

**Date of Service**          **Defendant(s)**                    **Attorney(s)**
                             VILLASENOR JEANNET


### Case Activity

Activity Date: 6/18/2007                                         Participant: HBLC INC

                    CONTRACT COMPLAINT FILED

                Date: 7/27/2007
        Court Time: 0930
        Court Room: 1102                         Attorney: FINK STEVEN J
        Court Fee: 134.00
   Judgment Amount: 1730.61


Activity Date: 7/30/2007                                         Participant: VILLASENOR JEANNET

          ALIAS SUMMONS ISSUED AND RETURNABLE

                Date: 8/31/2007
        Court Time: 0930
        Court Fee: 6.00                          Attorney: FINK STEVEN J
   Judgment Amount: 1730.61



Case Information Summary for Case Number
2007-M1-160035

Filing Date: 6/18/2007

Division: Municipal Division

Ad Damnum: $4048.49

Case Type: CONTRACT

District: First Municipal

Calendar:

**Party Information**

**Plaintiff(s)**

HBLC INC

**Attorney(s)**

FINK STEVEN J

25 E WASHINGTON 1233

CHICAGO IL, 60602

(312) 696-1000

DISCOVER CARD

**Date of Service**

**Defendant(s)**

VALLES JAMES

**Attorney(s)**

**Case Activity**

Activity Date: 6/18/2007

Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 7/27/2007

Court Time: 0930

Court Room: 1106

Court Fee: 184.00

Judgment Amount: 4048.49

Attorney: FINK STEVEN J

Activity Date: 7/30/2007

Participant: VALLES JAMES

ALIAS SUMMONS ISSUED AND RETURNABLE

Date: 8/31/2007

Court Time: 0930

Court Fee: 6.00

Judgment Amount: 4048.49

Attorney: FINK STEVEN J



Case Information Summary for Case Number
2007-M1-160036

Filing Date: 6/18/2007                                    Case Type: CONTRACT
Division: Municipal Division                              District: First Municipal
Ad Damnum: $5051.26                                       Calendar:

## Party Information

**Plaintiff(s)**                                          **Attorney(s)**
HBLC INC                                                  FINK STEVEN J

                                                          25 E WASHINGTON 1233

                                                          CHICAGO IL, 60602

                                                          (312) 696-1000


DISCOVER CARD


**Date of Service**       **Defendant(s)**                **Attorney(s)**
                          ROWLS JOSHUA


## Case Activity

Activity Date: 6/18/2007                                  Participant: HBLC INC
                          CONTRACT COMPLAINT FILED

            Date: 7/27/2007
      Court Time: 0930
      Court Room: 1106                     Attorney: FINK STEVEN J
       Court Fee: 204.00
 Judgment Amount: 5051.26


Activity Date: 7/30/2007                                  Participant: ROWLS JOSHUA
                ALIAS SUMMONS ISSUED AND RETURNABLE

            Date: 8/31/2007
      Court Time: 0930
       Court Fee: 6.00                     Attorney: FINK STEVEN J
 Judgment Amount: 5051.26



*Dorothy Brown*

# Clerk *of the*
# Circuit Court

*Cook County*

Case Information Summary for Case Number
2007-M1-160037

Filing Date: 6/18/2007                                  Case Type: CONTRACT
Division: Municipal Division                            District: First Municipal
Ad Damnum: $11241.83                                    Calendar:

## Party Information

**Plaintiff(s)**                          **Attorney(s)**
HBLC INC                                  FINK STEVEN J

                                          25 E WASHINGTON 1233

                                          CHICAGO IL, 60602

                                          (312) 696-1000

DISCOVER CARD

**Date of Service**       **Defendant(s)**                **Attorney(s)**
                          OLSEN DOUGLAS

## Case Activity

Activity Date: 6/18/2007                                 Participant: HBLC INC
              CONTRACT COMPLAINT FILED

              Date: 7/27/2007
       Court Time: 0930
       Court Room: 1106                    Attorney: FINK STEVEN J
        Court Fee: 204.00
  Judgment Amount: 11241.83

Activity Date: 7/30/2007                                 Participant: OLSEN DOUGLAS
              ALIAS SUMMONS ISSUED AND RETURNABLE

              Date: 8/31/2007
       Court Time: 0930
        Court Fee: 6.00                     Attorney: FINK STEVEN J
  Judgment Amount: 11241.83



*Dorothy Brown*

# Clerk *of the*
# Circuit Court
*Cook County*

Case Information Summary for Case Number
2007-M1-160038

Filing Date: 6/18/2007

Division: Municipal Division

Ad Damnum: $17995.50

Case Type: CONTRACT

District: First Municipal

Calendar:

### Party Information

| Plaintiff(s) | Attorney(s) |
|---|---|
| HBLC INC | FINK STEVEN J |
| | 25 E WASHINGTON 1233 |
| | CHICAGO IL, 60602 |
| | (312) 696-1000 |

DISCOVER CARD

| Date of Service | Defendant(s) | Attorney(s) |
|---|---|---|
| | MINYO JANICE | |

### Case Activity

Activity Date: 6/18/2007                                             Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 7/27/2007

Court Time: 0930

Court Room: 1106                    Attorney: FINK STEVEN J

Court Fee: 294.00

Judgment Amount: 17995.50

Activity Date: 7/30/2007                                             Participant: MINYO JANICE

ALIAS SUMMONS ISSUED AND RETURNABLE

Date: 8/31/2007

Court Time: 0930

Court Fee: 6.00                     Attorney: FINK STEVEN J

Judgment Amount: 17995.50



Case Information Summary for Case Number
2007-M1-160039

Filing Date: 6/18/2007

Division: Municipal Division

Ad Damnum: $4289.97

Case Type: CONTRACT

District: First Municipal

Calendar:

### Party Information

| **Plaintiff(s)** | **Attorney(s)** |
| --- | --- |
| HBLC INC | FINK STEVEN J |
| | 25 E WASHINGTON 1233 |
| | CHICAGO IL, 60602 |
| | (312) 696-1000 |

DISCOVER CARD

| **Date of Service** | **Defendant(s)** | **Attorney(s)** |
| --- | --- | --- |
| | MIKSYS RITA | |

### Case Activity

Activity Date: 6/18/2007                                                             Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 7/27/2007

Court Time: 0930

Court Room: 1104                               Attorney: FINK STEVEN J

Court Fee: 184.00

Judgment Amount: 4289.97

Activity Date: 7/30/2007                                                           Participant: MIKSYS RITA

ALIAS SUMMONS ISSUED AND RETURNABLE

Date: 8/31/2007

Court Time: 0930

Court Fee: 6.00                               Attorney: FINK STEVEN J

Judgment Amount: 4289.97



Case Information Summary for Case Number
2007-M1-160040

Filing Date: 6/18/2007                                      Case Type: CONTRACT
Division: Municipal Division                               District: First Municipal
Ad Damnum: $5745.03                                        Calendar:

### Party Information

**Plaintiff(s)**                          **Attorney(s)**
HBLC INC                                  FINK STEVEN J

                                          25 E WASHINGTON 1233

                                          CHICAGO IL, 60602

                                          (312) 696-1000

DISCOVER CARD

**Date of Service**          **Defendant(s)**                **Attorney(s)**
                             MCCARTHY DIANA

### Case Activity

Activity Date: 6/18/2007                                    Participant: HBLC INC
                    CONTRACT COMPLAINT FILED

          Date: 7/27/2007
     Court Time: 0930
     Court Room: 1104                    Attorney: FINK STEVEN J
     Court Fee: 204.00
 Judgment Amount: 5745.03

Activity Date: 7/9/2007                                     Participant: MCCARTHY DIANA
          SUMMONS RETURNED - N.S. REASON: NO CONTACT

          Date: 7/5/2007

Activity Date: 7/30/2007                                    Participant: MCCARTHY DIANA
          ALIAS SUMMONS ISSUED AND RETURNABLE



*Dorothy Brown*

# Clerk *of the* Circuit Court

*Cook County*

Case Information Summary for Case Number

2007-M1-160041

Filing Date: 6/18/2007

Division: Municipal Division

Ad Damnum: $21304.02

Case Type: CONTRACT

District: First Municipal

Calendar:

### Party Information

| **Plaintiff(s)** | **Attorney(s)** |
|---|---|
| HBLC INC | FINK STEVEN J |
| | 25 E WASHINGTON 1233 |
| | CHICAGO IL, 60602 |
| | (312) 696-1000 |

DISCOVER CARD

| **Date of Service** | **Defendant(s)** | **Attorney(s)** |
|---|---|---|
| | JOVANOVIC ROSICA | |

### Case Activity

Activity Date: 6/18/2007                                             Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 7/27/2007

Court Time: 0930

Court Room: 1104                    Attorney: FINK STEVEN J

Court Fee: 294.00

Judgment Amount: 21304.02

Activity Date: 7/30/2007                                             Participant: JOVANOVIC ROSICA

ALIAS SUMMONS ISSUED AND RETURNABLE

Date: 8/31/2007

Court Time: 0930

Court Fee: 6.00                    Attorney: FINK STEVEN J

Judgment Amount: 21304.02



*Dorothy Brown*

# Clerk *of the* Circuit Court

*Cook County*

Case Information Summary for Case Number
**2007-M1-160042**

Filing Date: 6/18/2007

Division: Municipal Division

Ad Damnum: $3569.51

Case Type: CONTRACT

District: First Municipal

Calendar:

### Party Information

| **Plaintiff(s)** | **Attorney(s)** |
|---|---|
| HBLC INC | FINK STEVEN J |
| | 25 E WASHINGTON 1233 |
| | CHICAGO IL, 60602 |
| | (312) 696-1000 |

DISCOVER CARD

| **Date of Service** | **Defendant(s)** | **Attorney(s)** |
|---|---|---|
| | GREEN SHERWIN | |

### Case Activity

Activity Date: 6/18/2007                                                                 Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 7/27/2007

Court Time: 0930

Court Room: 1104                          Attorney: FINK STEVEN J

Court Fee: 184.00

Judgment Amount: 3569.51

Activity Date: 7/30/2007                                                                 Participant: GREEN SHERWIN

ALIAS SUMMONS ISSUED AND RETURNABLE

Date: 8/31/2007

Court Time: 0930

Court Fee: 6.00                          Attorney: FINK STEVEN J

Judgment Amount: 3569.51



*Dorothy Brown*

# Clerk *of the*
# Circuit Court

*Cook County*

Case Information Summary for Case Number

2007-M1-160043

Filing Date: 6/18/2007                          Case Type: CONTRACT
Division: Municipal Division                     District: First Municipal
Ad Damnum: $8978.75                             Calendar:

### Party Information

| **Plaintiff(s)** | **Attorney(s)** |
|---|---|
| HBLC INC | FINK STEVEN J |
| | 25 E WASHINGTON 1233 |
| | CHICAGO IL, 60602 |
| | (312) 696-1000 |

DISCOVER CARD

| **Date of Service** | **Defendant(s)** | **Attorney(s)** |
|---|---|---|
| | GONZALEZ FRANK | |

### Case Activity

Activity Date: 6/18/2007                                          Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 7/27/2007
Court Time: 0930
Court Room: 1102                          Attorney: FINK STEVEN J
Court Fee: 204.00
Judgment Amount: 8978.75

Activity Date: 7/30/2007                                          Participant: GONZALEZ FRANK

ALIAS SUMMONS ISSUED AND RETURNABLE

Date: 8/31/2007
Court Time: 0930
Court Fee: 6.00                          Attorney: FINK STEVEN J
Judgment Amount: 8978.75



Case Information Summary for Case Number
2007-M1-160044

Filing Date: 6/18/2007                              Case Type: CONTRACT
Division: Municipal Division                        District: First Municipal
Ad Damnum: $4405.93                                 Calendar:

### Party Information

**Plaintiff(s)**                                    **Attorney(s)**
HBLC INC                                            FINK STEVEN J

                                                    25 E WASHINGTON 1233

                                                    CHICAGO IL, 60602

                                                    (312) 696-1000


DISCOVER CARD


**Date of Service**      **Defendant(s)**           **Attorney(s)**
                         AMERICAN BANK FINA


                         GONZALEZ DANIEL


### Case Activity

Activity Date: 6/18/2007                                     Participant: HBLC INC
                    CONTRACT COMPLAINT FILED

               Date: 7/27/2007
          Court Time: 0930
          Court Room: 1102              Attorney: FINK STEVEN J
           Court Fee: 184.00
     Judgment Amount: 4405.93


Activity Date: 7/30/2007                                    Participant: GONZALEZ DANIEL
               ALIAS SUMMONS ISSUED AND RETURNABLE
               Date: 8/31/2007
          Court Time: 0930



Case Information Summary for Case Number
2007-M1-160045

Filing Date: 6/18/2007                                    Case Type: CONTRACT
Division: Municipal Division                              District: First Municipal
Ad Damnum: $4490.58                                       Calendar:

### Party Information

| **Plaintiff(s)** | **Attorney(s)** |
|---|---|
| HBLC INC | FINK STEVEN J |
| | 25 E WASHINGTON 1233 |
| | CHICAGO IL, 60602 |
| | (312) 696-1000 |

DISCOVER CARD

| **Date of Service** | **Defendant(s)** | **Attorney(s)** |
|---|---|---|
| | CONRAD KERI | |
| | COOK COUNTY | |

### Case Activity

Activity Date: 6/18/2007                                             Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 7/27/2007
Court Time: 0930
Court Room: 1102                         Attorney: FINK STEVEN J
Court Fee: 184.00
Judgment Amount: 4490.58

Activity Date: 7/30/2007                                        Participant: CONRAD KERI

ALIAS SUMMONS ISSUED AND RETURNABLE

Date: 8/31/2007
Court Time: 0930



*Dorothy Brown*

# Clerk *of the* Circuit Court

*Cook County*

Case Information Summary for Case Number
**2007-M1-160046**

Filing Date: 6/18/2007

Division: Municipal Division

Ad Damnum: $13517.40

Case Type: CONTRACT

District: First Municipal

Calendar:

### Party Information

| **Plaintiff(s)** | **Attorney(s)** |
| --- | --- |
| HBLC INC | FINK STEVEN J |
| | 25 E WASHINGTON 1233 |
| | CHICAGO IL, 60602 |
| | (312) 696-1000 |

DISCOVER CARD

| **Date of Service** | **Defendant(s)** | **Attorney(s)** |
| --- | --- | --- |
| | CELESTE TINA | |

### Case Activity

Activity Date: 6/18/2007                                                Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 7/27/2007

Court Time: 0930

Court Room: 1102                    Attorney: FINK STEVEN J

Court Fee: 204.00

Judgment Amount: 13517.40

Activity Date: 7/30/2007                                                Participant: CELESTE TINA

ALIAS SUMMONS ISSUED AND RETURNABLE

Date: 8/31/2007

Court Time: 0930

Court Fee: 6.00                    Attorney: FINK STEVEN J

Judgment Amount: 13517.40



Case Information Summary for Case Number
2007-M1-160047

Filing Date: 6/18/2007                           Case Type: CONTRACT
Division: Municipal Division                      District: First Municipal
Ad Damnum: $8133.38                               Calendar:

**Party Information**

| **Plaintiff(s)** | **Attorney(s)** |
|---|---|
| HBLC INC | FINK STEVEN J |
| | 25 E WASHINGTON 1233 |
| | CHICAGO IL, 60602 |
| | (312) 696-1000 |
| DISCOVER CARD | |

| **Date of Service** | **Defendant(s)** | **Attorney(s)** |
|---|---|---|
| | BRISLANE ERIC | PRO SE |

**Case Activity**

Activity Date: 6/18/2007                          Participant: HBLC INC
                    CONTRACT COMPLAINT FILED

Date: 7/27/2007
Court Time: 0930
Court Room: 1102                      Attorney: FINK STEVEN J
Court Fee: 204.00
Judgment Amount: 8133.38

Activity Date: 7/31/2007                          Participant: BRISLANE ERIC
          ALIAS SUMMONS ISSUED AND RETURNABLE

Date: 8/31/2007
Court Time: 0930
Court Fee: 6.00                      Attorney: FINK STEVEN J
Judgment Amount: 8133.38



Case Information Summary for Case Number
2007-M1-160048

Filing Date: 6/18/2007                                      Case Type: CONTRACT
Division: Municipal Division                                District: First Municipal
Ad Damnum: $17849.72                                        Calendar:

### Party Information

**Plaintiff(s)**                        **Attorney(s)**
HBLC INC                                FINK STEVEN J

                                        25 E WASHINGTON 1233

                                        CHICAGO IL, 60602

                                        (312) 696-1000

**Date of Service**     **Defendant(s)**                    **Attorney(s)**
                        BLANCHARD STEVEN

                        DISCOVER CARD

### Case Activity

Activity Date: 6/18/2007                                    Participant: HBLC INC
                        CONTRACT COMPLAINT FILED

            Date: 7/27/2007
        Court Time: 0930
        Court Room: 1102            Attorney: FINK STEVEN J
        Court Fee: 294.00
    Judgment Amount: 17849.72

Activity Date: 7/31/2007                                    Participant: BLANCHARD STEVEN
            ALIAS SUMMONS ISSUED AND RETURNABLE

            Date: 8/31/2007
        Court Time: 0930
        Court Fee: 6.00                Attorney: FINK STEVEN J
    Judgment Amount: 17849.72



*Dorothy Brown*

# CLERK *of the*
# CIRCUIT COURT
*Cook County*

Case Information Summary for Case Number
2008-M1-116390

Filing Date: 2/27/2008                              Case Type: CONTRACT
Division: Municipal Division                        District: First Municipal
Ad Damnum: $971.81                                  Calendar:

### Party Information

| **Plaintiff(s)** | **Attorney(s)** |
|---|---|
| HBLC INC | FINK STEVEN J |
| | 25 E WASHINGTON 1233 |
| | CHICAGO IL, 60602 |
| | (312) 696-1000 |

DISCOVER

| **Date of Service** | **Defendant(s)** | **Attorney(s)** |
|---|---|---|
| | WAGNER JO | |

### Case Activity

Activity Date: 2/27/2008                              Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 4/4/2008
Court Time: 0930
Court Room: 1106                    Attorney: FINK STEVEN J
Court Fee: 129.00
Judgment Amount: 971.81

Activity Date: 3/31/2008                              Participant: WAGNER JO

SUMMONS RETURNED - N.S. REASON: NO CONTACT

Date: 3/31/2008

Activity Date: 4/8/2008                              Participant: WAGNER JO

MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER FILED



## Dorothy Brown

# Clerk *of the* Circuit Court

## Cook County

Case Information Summary for Case Number
2008-M1-116391

Filing Date: 2/27/2008                          Case Type: CONTRACT
Division: Municipal Division                    District: First Municipal
Ad Damnum: $7392.56                             Calendar:

### Party Information

| **Plaintiff(s)** | **Attorney(s)** |
|---|---|
| HBLC INC | FINK STEVEN J |
| | 25 E WASHINGTON 1233 |
| | CHICAGO IL, 60602 |
| | (312) 696-1000 |

DISCOVER

| **Date of Service** | **Defendant(s)** | **Attorney(s)** |
|---|---|---|
| | BOSLEY KIMICOE | PRO SE |

### Case Activity

Activity Date: 2/27/2008                                    Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 4/4/2008
Court Time: 0930
Court Room: 1106                        Attorney: FINK STEVEN J
Court Fee: 204.00
Judgment Amount: 7392.56

Activity Date: 3/26/2008                                    Participant: BOSLEY KIMICOE

SUMMONS SERVED - SUBSTITUTE SERVICE

Date: 3/25/2008

Activity Date: 4/2/2008                                    Participant: BOSLEY KIMICOE

APPEARANCE FILED - FEE PAID -



*Dorothy Brown*

Case Information Summary for Case Number
2008-M1-116392

Filing Date: 2/27/2008
Division: Municipal Division
Ad Damnum: $3963.58

Case Type: CONTRACT
District: First Municipal
Calendar:

**Party Information**

| **Plaintiff(s)** | **Attorney(s)** |
| HBLC INC | FINK STEVEN J |
| | 25 E WASHINGTON 1233 |
| | CHICAGO IL, 60602 |
| | (312) 696-1000 |

DISCOVER

| **Date of Service** | **Defendant(s)** | **Attorney(s)** |
| | RODRIGUEZ NELSON | |
| | ST PAULS HOUSE & H | |

**Case Activity**

Activity Date: 2/27/2008                                              Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 4/4/2008
Court Time: 0930
Court Room: 1106                          Attorney: FINK STEVEN J
Court Fee: 184.00
Judgment Amount: 3963.58

Activity Date: 3/31/2008                                        Participant: RODRIGUEZ NELSON

SUMMONS SERVED - SUBSTITUTE SERVICE

Date: 3/31/2008



Case Information Summary for Case Number
2008-M1-116393

Filing Date: 2/27/2008

Division: Municipal Division

Ad Damnum: $5293.39

Case Type: CONTRACT

District: First Municipal

Calendar:

## Party Information

| Plaintiff(s) | Attorney(s) |
|---|---|
| HBLC INC | FINK STEVEN J |
| | 25 E WASHINGTON 1233 |
| | CHICAGO IL, 60602 |
| | (312) 696-1000 |

DISCOVER

| Date of Service | Defendant(s) | Attorney(s) |
|---|---|---|
| | CHILDS NATALIE | |

## Case Activity

Activity Date: 2/27/2008                                        Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 4/4/2008

Court Time: 0930

Court Room: 1102                    Attorney: FINK STEVEN J

Court Fee: 204.00

Judgment Amount: 5293.39

Activity Date: 3/31/2008                                        Participant: CHILDS NATALIE

SUMMONS RETURNED - N.S. REASON: NO CONTACT

Date: 3/28/2008

Activity Date: 4/8/2008                                        Participant: CHILDS NATALIE

MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER FILED



Dorothy Brown
Clerk of the
Circuit Court
Cook County

Case Information Summary for Case Number
2008-M1-116394

Filing Date: 2/27/2008                          Case Type: CONTRACT
Division: Municipal Division                    District: First Municipal
Ad Damnum: $8395.70                             Calendar:

**Party Information**

**Plaintiff(s)**                    **Attorney(s)**
HBLC INC                            FINK STEVEN J

                                    25 E WASHINGTON 1233

                                    CHICAGO IL, 60602

                                    (312) 696-1000

DISCOVER

**Date of Service**    **Defendant(s)**        **Attorney(s)**
                       HOLLEN MEGGAN

                       SMITH MEGGAN

**Case Activity**

Activity Date: 2/27/2008                              Participant: HBLC INC
                CONTRACT COMPLAINT FILED

            Date: 4/4/2008
        Court Time: 0930
        Court Room: 1102            Attorney: FINK STEVEN J
        Court Fee: 204.00
    Judgment Amount: 8395.70

Activity Date: 3/21/2008                             Participant: HOLLEN MEGGAN
            SUMMONS RETURNED - N.S. REASON: NOT LISTED

            Date: 3/20/2008



Dorothy Brown
# Clerk *of the*
# Circuit Court
*Cook County*

Case Information Summary for Case Number
2008-M1-116395

Filing Date: 2/27/2008                              Case Type: CONTRACT
Division: Municipal Division                        District: First Municipal
Ad Damnum: $4304.33                                 Calendar:

### Party Information

**Plaintiff(s)**                    **Attorney(s)**
HBLC INC                            FINK STEVEN J

                                    25 E WASHINGTON 1233

                                    CHICAGO IL, 60602

                                    (312) 696-1000


DISCOVER


**Date of Service**      **Defendant(s)**              **Attorney(s)**
                         PETERSON ANTOINETT


### Case Activity

Activity Date: 2/27/2008                              Participant: HBLC INC
            CONTRACT COMPLAINT FILED

            Date: 4/4/2008
      Court Time: 0930
      Court Room: 1102              Attorney: FINK STEVEN J
      Court Fee: 184.00
  Judgment Amount: 4304.33


Activity Date: 4/2/2008                              Participant: PETERSON ANTOINETT
         SUMMONS RETURNED - N.S. REASON: NO CONTACT

         Date: 3/31/2008


Activity Date: 4/8/2008                              Participant: PETERSON ANTOINETT
       MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER FILED



*Dorothy Brown*

# Clerk *of the*
# Circuit Court

*Cook County*

Case Information Summary for Case Number
2008-M1-116396

Filing Date: 2/27/2008                                    Case Type: CONTRACT
Division: Municipal Division                             District: First Municipal
Ad Damnum: $4715.41                                      Calendar:

## Party Information

| **Plaintiff(s)** | **Attorney(s)** |
| HBLC INC | FINK STEVEN J |
| | 25 E WASHINGTON 1233 |
| | CHICAGO IL, 60602 |
| | (312) 696-1000 |

DISCOVER

| **Date of Service** | **Defendant(s)** | **Attorney(s)** |
| | PRIETO CARLOS | WARNER LAW FIRM LLC |
| | | 151 N MICHIGAN#37THF |
| | | CHICAGO IL, 60601 |
| | | (312) 238-9820 |

## Case Activity

Activity Date: 2/27/2008                                                   Participant: HBLC INC
                        CONTRACT COMPLAINT FILED

        Date: 4/4/2008
    Court Time: 0930
    Court Room: 1102                             Attorney: FINK STEVEN J
    Court Fee: 184.00
Judgment Amount: 4715.41

Activity Date: 3/31/2008                                                   Participant: PRIETO CARLOS
              SUMMONS RETURNED - N.S. REASON: NO CONTACT

        Date: 3/31/2008



Case Information Summary for Case Number
2008-M1-116397

Filing Date: 2/27/2008                                    Case Type: CONTRACT
Division: Municipal Division                              District: First Municipal
Ad Damnum: $6931.77                                      Calendar:

### Party Information

**Plaintiff(s)**                    **Attorney(s)**
HBLC INC                            FINK STEVEN J

                                    25 E WASHINGTON 1233

                                    CHICAGO IL, 60602

                                    (312) 696-1000


DISCOVER


**Date of Service**        **Defendant(s)**              **Attorney(s)**
3/21/2008                  COHN DANIEL


### Case Activity

Activity Date: 2/27/2008                                              Participant: HBLC INC
                        CONTRACT COMPLAINT FILED

              Date: 4/4/2008
        Court Time: 0930
        Court Room: 1104                        Attorney: FINK STEVEN J
         Court Fee: 204.00
   Judgment Amount: 6931.77


Activity Date: 3/21/2008                                             Participant: COHN DANIEL
                    SUMMONS SERVED - PERSONAL SERVICE

              Date: 3/20/2008


Activity Date: 4/4/2008                                              Participant: COHN DANIEL
                        CASE SET ON DEFAULT CALL



## Dorothy Brown
# CLERK of the
# CIRCUIT Court
## Cook County

Case Information Summary for Case Number
**2008-M1-120322**

Filing Date: 3/7/2008                           Case Type: CONTRACT
Division: Municipal Division                     District: First Municipal
Ad Damnum: $10709.66                            Calendar:

### Party Information

**Plaintiff(s)**                    **Attorney(s)**
HBLC INC                            FINK STEVEN J

                                    25 E WASHINGTON 1233

                                    CHICAGO IL, 60602

                                    (312) 696-1000

DISCOVER CARD

**Date of Service**    **Defendant(s)**              **Attorney(s)**
                       YBARRA ANTONIO

### Case Activity

Activity Date: 3/7/2008                                    Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 4/18/2008
Court Time: 0930
Court Room: 1102                    Attorney: FINK STEVEN J
Court Fee: 204.00
Judgment Amount: 10709.66

Activity Date: 4/9/2008                              Participant: YBARRA ANTONIO

SUMMONS SERVED - SUBSTITUTE SERVICE

Date: 4/8/2008

Activity Date: 4/18/2008                             Participant: YBARRA ANTONIO

CASE SET ON DEFAULT CALL



*Dorothy Brown*

# Clerk *of the*
# Circuit Court

*Cook County*

Case Information Summary for Case Number

2008-M1-120325

Filing Date: 3/7/2008

Division: Municipal Division

Ad Damnum: $6662.83

Case Type: CONTRACT

District: First Municipal

Calendar:

## Party Information

**Plaintiff(s)**

HBLC INC

**Attorney(s)**

FINK STEVEN J

25 E WASHINGTON 1233

CHICAGO IL, 60602

(312) 696-1000

DISCOVER CARD

**Date of Service**

**Defendant(s)**

WRIGHT ZASHARIYA

**Attorney(s)**

## Case Activity

Activity Date: 3/7/2008                                                     Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 4/18/2008

Court Time: 0930

Court Room: 1106

Court Fee: 204.00

Judgment Amount: 6662.83

Attorney: FINK STEVEN J

Activity Date: 4/16/2008                                                     Participant: WRIGHT ZASHARIYA

SUMMONS RETURNED - N.S. REASON: NO CONTACT

Date: 4/15/2008

Activity Date: 4/25/2008                                                     Participant: WRIGHT ZASHARIYA

MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER FILED



*Dorothy Brown*

# Clerk *of the* Circuit Court

*Cook County*

Case Information Summary for Case Number
2008-M1-120328

Filing Date: 3/7/2008

Division: Municipal Division

Ad Damnum: $3164.11

Case Type: CONTRACT

District: First Municipal

Calendar:

### Party Information

| Plaintiff(s) | Attorney(s) |
|---|---|
| HBLC INC | FINK STEVEN J |
| | 25 E WASHINGTON 1233 |
| | CHICAGO IL, 60602 |
| | (312) 696-1000 |

DISCOVER CARD

| Date of Service | Defendant(s) | Attorney(s) |
|---|---|---|
| | VARGA ANSEL | |

### Case Activity

Activity Date: 3/7/2008                                                                 Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 4/18/2008

Court Time: 0930

Court Room: 1106                    Attorney: FINK STEVEN J

Court Fee: 184.00

Judgment Amount: 3164.11

Activity Date: 4/15/2008                                                                 Participant: VARGA ANSEL

SUMMONS RETURNED - N.S. REASON: NO CONTACT

Date: 4/14/2008

Activity Date: 4/25/2008                                                                 Participant: VARGA ANSEL

MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER FILED



*Dorothy Brown*

# Clerk *of the* Circuit Court

*Cook County*

Case Information Summary for Case Number

<span style="color:red">2008-M1-120331</span>

Filing Date: 3/7/2008

Division: Municipal Division

Ad Damnum: $4060.91

Case Type: CONTRACT

District: First Municipal

Calendar:

## Party Information

| Plaintiff(s) | Attorney(s) |
|---|---|
| HBLC INC | FINK STEVEN J |
| | 25 E WASHINGTON 1233 |
| | CHICAGO IL, 60602 |
| | (312) 696-1000 |

DISCOVER CARD

| Date of Service | Defendant(s) | Attorney(s) |
|---|---|---|
| | ROY SARIT | |

## Case Activity

Activity Date: 3/7/2008                                    Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 4/18/2008

Court Time: 0930

Court Room: 1102                    Attorney: FINK STEVEN J

Court Fee: 184.00

Judgment Amount: 4060.91

Activity Date: 4/14/2008                                    Participant: ROY SARIT

SUMMONS RETURNED - N.S. REASON: NO CONTACT

Date: 4/11/2008

Activity Date: 4/25/2008                                    Participant: ROY SARIT

MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER FILED



Case Information Summary for Case Number
2008-M1-120333

Filing Date: 3/7/2008                                    Case Type: CONTRACT
Division: Municipal Division                             District: First Municipal
Ad Damnum: $11576.25                                     Calendar:

### Party Information

**Plaintiff(s)**                                         **Attorney(s)**
HBLC INC                                                 FINK STEVEN J

                                                         25 E WASHINGTON 1233

                                                         CHICAGO IL, 60602

                                                         (312) 696-1000

DISCOVER CARD

**Date of Service**      **Defendant(s)**                **Attorney(s)**
                         RICO LINDA

### Case Activity

Activity Date: 3/7/2008                                  Participant: HBLC INC

                    CONTRACT COMPLAINT FILED

            Date: 4/18/2008
      Court Time: 0930
      Court Room: 1104                        Attorney: FINK STEVEN J
       Court Fee: 204.00
 Judgment Amount: 11576.25

---

Please note: Neither the Circuit Court of Cook County nor the Clerk of the
Circuit Court of Cook County warrants the accuracy, completeness, or the currency
of this data. This data is not an official record of the Court or the Clerk and may
not be represented as an official court record.

If data does not appear in a specific field, we likely do not have the responsive data
in our master database.



*Dorothy Brown*

# Clerk *of the*
# Circuit Court
*Cook County*

Case Information Summary for Case Number
2008-M1-120335

Filing Date: 3/7/2008                                    Case Type: CONTRACT
Division: Municipal Division                             District: First Municipal
Ad Damnum: $14624.70                                     Calendar:

### Party Information

| **Plaintiff(s)** | | **Attorney(s)** |
| --- | --- | --- |
| HBLC INC | | FINK STEVEN J |
| | | 25 E WASHINGTON 1233 |
| | | CHICAGO IL, 60602 |
| | | (312) 696-1000 |

DISCOVER CARD

| **Date of Service** | **Defendant(s)** | **Attorney(s)** |
| --- | --- | --- |
| 4/8/2008 | MACDONALD OTTICE | |

### Case Activity

Activity Date: 3/7/2008                                    Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 4/18/2008
Court Time: 0930
Court Room: 1104                          Attorney: FINK STEVEN J
Court Fee: 204.00
Judgment Amount: 14624.70

Activity Date: 4/8/2008                                    Participant: MACDONALD OTTICE

SUMMONS SERVED - PERSONAL SERVICE

Date: 4/7/2008

Activity Date: 4/18/2008                                   Participant: MACDONALD OTTICE

CASE SET ON DEFAULT CALL



*Dorothy Brown*

# Clerk *of the* Circuit Court

*Cook County*

Case Information Summary for Case Number
2008-M1-120338

Filing Date: 3/7/2008      Case Type: CONTRACT

Division: Municipal Division      District: First Municipal

Ad Damnum: $4168.27      Calendar:

## Party Information

| **Plaintiff(s)** | **Attorney(s)** |
| --- | --- |
| HBLC INC | FINK STEVEN J |
| | 25 E WASHINGTON 1233 |
| | CHICAGO IL, 60602 |
| | (312) 696-1000 |

DISCOVER CARD

| **Date of Service** | **Defendant(s)** | **Attorney(s)** |
| --- | --- | --- |
| | LUYANDO ANA | |

## Case Activity

Activity Date: 3/7/2008      Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 4/18/2008
Court Time: 0930
Court Room: 1104      Attorney: FINK STEVEN J
Court Fee: 184.00
Judgment Amount: 4168.27

Activity Date: 4/8/2008      Participant: LUYANDO ANA

SUMMONS RETURNED - N.S. REASON: OTHER REASON

Date: 4/7/2008

Activity Date: 4/25/2008      Participant: LUYANDO ANA

MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER FILED



*Dorothy Brown*

# Clerk *of the*
# Circuit Court

*Cook County*

Case Information Summary for Case Number

2008-M1-120340

Filing Date: 3/7/2008

Division: Municipal Division

Ad Damnum: $4025.44

Case Type: CONTRACT

District: First Municipal

Calendar:

### Party Information

| **Plaintiff(s)** | **Attorney(s)** |
|---|---|
| HBLC INC | FINK STEVEN J |
| | 25 E WASHINGTON 1233 |
| | CHICAGO IL, 60602 |
| | (312) 696-1000 |

DISCOVER CARD

| **Date of Service** | **Defendant(s)** | **Attorney(s)** |
|---|---|---|
| | LEFLORE FREDERICK | |

### Case Activity

Activity Date: 3/7/2008                                   Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 4/18/2008

Court Time: 0930

Court Room: 1104                    Attorney: FINK STEVEN J

Court Fee: 184.00

Judgment Amount: 4025.44

Activity Date: 4/9/2008                                   Participant: LEFLORE FREDERICK

SUMMONS RETURNED - N.S. REASON: NO CONTACT

Date: 4/9/2008

Activity Date: 4/25/2008                                   Participant: LEFLORE FREDERICK

MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER FILED



Case Information Summary for Case Number

2008-M1-120343

Filing Date: 3/7/2008                                  Case Type: CONTRACT
Division: Municipal Division                           District: First Municipal
Ad Damnum: $1005.56                                    Calendar:

### Party Information

| Plaintiff(s) | Attorney(s) |
|---|---|
| HBLC INC | FINK STEVEN J |
| | 25 E WASHINGTON 1233 |
| | CHICAGO IL, 60602 |
| | (312) 696-1000 |

DISCOVER CARD

| Date of Service | Defendant(s) | Attorney(s) |
|---|---|---|
| | KIRK CAROL | |

### Case Activity

Activity Date: 3/7/2008                                         Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 4/18/2008
Court Time: 0930
Court Room: 1102                          Attorney: FINK STEVEN J
Court Fee: 134.00
Judgment Amount: 1005.56

Activity Date: 4/14/2008                                        Participant: KIRK CAROL

SUMMONS RETURNED - N.S. REASON: NO CONTACT

Date: 4/11/2008

Activity Date: 4/25/2008                                        Participant: KIRK CAROL

MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER FILED



*Dorothy Brown*

## Clerk *of the* Circuit Court

*Cook County*

Case Information Summary for Case Number

2008-M1-120345

Filing Date: 3/7/2008

Division: Municipal Division

Ad Damnum: $4020.16

Case Type: CONTRACT

District: First Municipal

Calendar:

### Party Information

| **Plaintiff(s)** | **Attorney(s)** |
| --- | --- |
| HBLC INC | FINK STEVEN J |
| | 25 E WASHINGTON 1233 |
| | CHICAGO IL, 60602 |
| | (312) 696-1000 |

DISCOVER CARD

| **Date of Service** | **Defendant(s)** | **Attorney(s)** |
| --- | --- | --- |
| | KEOBOWAVANH TAIPHA | |

### Case Activity

Activity Date: 3/7/2008                                                     Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 4/18/2008

Court Time: 0930

Court Room: 1106                   Attorney: FINK STEVEN J

Court Fee: 184.00

Judgment Amount: 4020.16

---

Please note: Neither the Circuit Court of Cook County nor the Clerk of the
Circuit Court of Cook County warrants the accuracy, completeness, or the currency
of this data. This data is not an official record of the Court or the Clerk and may
not be represented as an official court record.

If data does not appear in a specific field, we likely do not have the responsive data
in our master database.



*Dorothy Brown*

# Clerk *of the* Circuit Court

*Cook County*

Case Information Summary for Case Number

2008-M1-120347

Filing Date: 3/7/2008                                      Case Type: CONTRACT

Division: Municipal Division                          District: First Municipal

Ad Damnum: $2582.65                                   Calendar:

## Party Information

| **Plaintiff(s)** | **Attorney(s)** |
|---|---|
| HBLC INC | FINK STEVEN J |
| | 25 E WASHINGTON 1233 |
| | CHICAGO IL, 60602 |
| | (312) 696-1000 |

DISCOVER CARD

| **Date of Service** | **Defendant(s)** | **Attorney(s)** |
|---|---|---|
| | JASPER TAMELA | |

## Case Activity

Activity Date: 3/7/2008                                                              Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 4/18/2008

Court Time: 0930

Court Room: 1106                               Attorney: FINK STEVEN J

Court Fee: 184.00

Judgment Amount: 2582.65

Activity Date: 4/3/2008                                                              Participant: JASPER TAMELA

SUMMONS RETURNED - N.S. REASON: NO CONTACT

Date: 4/2/2008

Activity Date: 4/25/2008                                                            Participant: JASPER TAMELA

MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER FILED



Case Information Summary for Case Number

2008-M1-120349

Filing Date: 3/7/2008

Division: Municipal Division

Ad Damnum: $6275.07

Case Type: CONTRACT

District: First Municipal

Calendar:

### Party Information

**Plaintiff(s)**

HBLC INC

**Attorney(s)**

FINK STEVEN J

25 E WASHINGTON 1233

CHICAGO IL, 60602

(312) 696-1000

DISCOVER CARD

**Date of Service**

**Defendant(s)**

HATHAWAY LANA

**Attorney(s)**

### Case Activity

Activity Date: 3/7/2008

Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 4/18/2008

Court Time: 0930

Court Room: 1106

Court Fee: 204.00

Judgment Amount: 6275.07

Attorney: FINK STEVEN J

Activity Date: 4/10/2008

Participant: HATHAWAY LANA

SUMMONS RETURNED - N.S. REASON: NO CONTACT

Date: 4/9/2008

Activity Date: 4/25/2008

Participant: HATHAWAY LANA

MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER FILED



## Dorothy Brown
# Clerk of the
# Circuit Court
### Cook County

Case Information Summary for Case Number
**2008-M1-120350**

Filing Date: 3/7/2008                                    Case Type: CONTRACT
Division: Municipal Division                             District: First Municipal
Ad Damnum: $4673.51                                      Calendar:

### Party Information

**Plaintiff(s)**                                    **Attorney(s)**
HBLC INC                                            FINK STEVEN J

                                                    25 E WASHINGTON 1233

                                                    CHICAGO IL, 60602

                                                    (312) 696-1000

DISCOVER CARD

**Date of Service**      **Defendant(s)**                    **Attorney(s)**
                         HARRISON CHRISTOPH

### Case Activity

Activity Date: 3/7/2008                                      Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 4/18/2008
Court Time: 0930
Court Room: 1106                    Attorney: FINK STEVEN J
Court Fee: 184.00
Judgment Amount: 4673.51

Activity Date: 4/15/2008                                     Participant: HARRISON CHRISTOPH

SUMMONS RETURNED - N.S. REASON: OTHER REASON

Date: 4/14/2008

Activity Date: 4/25/2008                                     Participant: HARRISON CHRISTOPH

MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER FILED



Dorothy Brown

# Clerk of the
# Circuit Court

*Cook County*

Case Information Summary for Case Number
2008-M1-120352

Filing Date: 3/7/2008                              Case Type: CONTRACT
Division: Municipal Division                       District: First Municipal
Ad Damnum: $4185.47                                Calendar:

## Party Information

**Plaintiff(s)**                  **Attorney(s)**
HBLC INC                          FINK STEVEN J

                                  25 E WASHINGTON 1233

                                  CHICAGO IL, 60602

                                  (312) 696-1000

DISCOVER CARD

**Date of Service**    **Defendant(s)**              **Attorney(s)**
                       DOYLE SHAVONNE

## Case Activity

Activity Date: 3/7/2008                              Participant: HBLC INC

                       CONTRACT COMPLAINT FILED

           Date: 4/18/2008
     Court Time: 0930
     Court Room: 1106               Attorney: FINK STEVEN J
      Court Fee: 184.00
Judgment Amount: 4185.47

Activity Date: 4/11/2008                             Participant: DOYLE SHAVONNE

           SUMMONS RETURNED - N.S. REASON: OTHER REASON

           Date: 4/10/2008

Activity Date: 4/25/2008                             Participant: DOYLE SHAVONNE

    MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER FILED



*Dorothy Brown*

# Clerk *of the*
# CIRCUIT COURT
*Cook County*

Case Information Summary for Case Number
**2008-M1-120358**

Filing Date: 3/7/2008

Case Type: CONTRACT

Division: Municipal Division

District: First Municipal

Ad Damnum: $5270.75

Calendar:

## Party Information

| **Plaintiff(s)** | **Attorney(s)** |
|---|---|
| HBLC INC | FINK STEVEN J |
| | 25 E WASHINGTON 1233 |
| | CHICAGO IL, 60602 |
| | (312) 696-1000 |

DISCOVER CARD

| **Date of Service** | **Defendant(s)** | **Attorney(s)** |
|---|---|---|
| | EUL MARTIN | |

## Case Activity

Activity Date: 3/7/2008                                        Participant: HBLC INC

CONTRACT COMPLAINT FILED

Date: 4/18/2008

Court Time: 0930

Court Room: 1104                    Attorney: FINK STEVEN J

Court Fee: 204.00

Judgment Amount: 5270.75

Activity Date: 4/15/2008                                        Participant: EUL MARTIN

SUMMONS RETURNED - N.S. REASON: NO CONTACT

Date: 4/14/2008

Activity Date: 4/25/2008                                        Participant: EUL MARTIN

MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER FILED

# EXHIBIT 4

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

**'08 M1  116396**

HBLC, Inc., final transfer
of DISCOVER

Case No. _____

                    Plaintiff,

v.                                          Claimed: $ 4715.41 plus costs

CARLOS PRIETO,

                    Defendant.              Return Date:

                                            APR 0 4 2008

VERIFIED COMPLAINT

Now comes Plaintiff, HBLC, Inc., final transferee of DISCOVER and claims as follows:

    1.    That the Plaintiff is a corporation authorized to transact business in the State of
Illinois and is the owner of this account having purchased said account in the regular course of business
in good faith and for value.

    2.    That Defendant(s) opened an DISCOVER credit card account (account number
6011007480186831) and made purchases and charged same to the account but has failed to make monthly
payments called for on the account.  A true and correct copy of the Cardmember Agreement is attached
hereto as Exhibit "2".

    3.    That pursuant to the Affidavit attached hereto as Exhibit "1" there is due to Plaintiff
from the Defendant, as of the filing date of this complaint, the sum of $4715.41 (which includes $350 as
reasonable attorneys' fees as permitted by the Cardmember Agreement) plus court costs as permitted by the
Cardmember Agreement and as permitted by statute plus post-judgment interest at the rate allowed by law
until the debt is paid.

    4.    That Defendant(s) is in default on the account and has refused to pay the balance due
after demand by Plaintiff or its Assignor.

    WHEREFORE, Plaintiff, HBLC, Inc., prays for judgment against Defendant, CARLOS PRIETO, in the
amount of $4715.41 (which includes reasonable attorneys' fees of $350) plus court costs plus post-judgment
interest at the rate allowed by law on the unpaid balance.

                                        Steven J. Fink & Assoc., P.C.

                                        By: _____

Steven J. Fink & Assoc., P.C.
Attorney for the Plaintiff
25 E. Washington Ste. 1233(a)
Chicago, IL 60602
(312) 659-2024
Attorney's No. 52383

Federal law requires me to advise you that we are attempting to collect a debt and any information
obtained from you will be used for that purpose.  Unless you dispute the validity of this debt, or any
portion of it, within 30 days after receipt of this notice, in writing, the debt will be assumed to valid.
If you do dispute the debt's validity, we will provide verification or a copy of any Judgment taken
against you and the and address of the original creditor if different from the current creditor.

AFFIDAVIT OF INDEBTEDNESS


Cynthia Rogers, after having been first duly sworn, on oath states that if called to testify in this matter she would testify to the following facts:

1.   That she is an agent of Plaintiff, HBLC, Inc.. Upon information provided to her by the transferor of the debt, she is familiar with certain facts surrounding the debt forming the basis of the herein Complaint, including but not limited to the amount due.

2.   That Plaintiff is the owner of the account forming the basis of the herein Complaint having purchased said account in the regular course of business in good faith and for value, and as such, Plaintiff is the current holder of this debt and the party to whom the Defendant, CARLOS PRIETO, is liable.

3.   That after all charges and just credits to this account have been given to the defendant, there remains due and owing to Plaintiff from Defendant, CARLOS PRIETO, the sum of $4715.41 (which includes $350 as reasonable attorney fees) plus court costs and post-judgment interest at the rate allowed by law.


_____
Cynthia Rogers


Subscribed and sworn to before me
on this the 2nd day of Jan, 2008


_____
Notary

**OFFICIAL SEAL**
**BRIAN ROGERS**
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 06/13/11

Base Card

# CARDMEMBER AGREEMENT

**Please read this Agreement carefully before using the Discover Card.** It contains the terms and conditions of the Discover Card Account, some of which may have changed from earlier materials provided to you. In the event of any differences, this Agreement shall control.

**1. AGREEMENT TERMS.** The word Card means any one or more Discover Cards issued to you or to an authorized user. The word Account means your Discover Card Account. The words you, your, or yours mean you, the cardmember, and any person or persons who are also contractually liable under this Agreement. The words we, us, and our mean Greenwood Trust Company, a Delaware bank.

**2. ACCEPTANCE OF AGREEMENT.** The use of your Account or the Card by you or anyone whom you authorize or permit to use your Account or the Card means you accept this Agreement. However, only if you are a resident of North Dakota or Wisconsin, a one-time membership fee provided for in Section 15 will be charged to your Account regardless of whether you use your Account or the Card, unless you have cancelled your Account as provided for in Section 19 within 30 days of receipt of your Card.

**3. USE OF YOUR ACCOUNT AND THE CARD.** You agree that you will only use your Account or the Card for personal, family or household and non-business purposes. Your Account or the Card may not be used for business or commercial purposes or to obtain loans to purchase, carry or trade in securities. Prior to its use, each Card must be signed by the person to whom it is issued. Your Account and the Card may be used for the following purposes:

- To purchase or lease goods or services from participating establishments.

- To obtain cash advances by means of automated teller machines or checks in accordance with such additional terms and conditions as may be imposed from time to time.

- To guarantee personal checks at participating establishments subject to cash availability and such conditions as the participating establishments may impose. Any guaranteed personal check returned unpaid for which we became liable shall be treated as a cash advance and a returned check and shall be subject to a Returned Check Charge.

- To guarantee hotel reservations at participating establishments. You will be liable for guaranteed reservations that are not cancelled prior to 6 p.m. of the date of arrival or such other time as the establishment may impose.

We are not responsible for the refusal of anyone to accept or honor the Card. The Card is our property. You must return it to us or our agent upon request.

**4. AUTHORIZED CARD USERS.** If you want to cancel the authorized or permitted use of your Account or the Card by another person, you must notify us in writing and recover, cut in half and return to us any Card at such person's possession.

**5. LIABILITY FOR UNAUTHORIZED USE.** If the Card is lost or stolen, or if you think that someone is using your Account or the Card without your permission, notify us immediately. You can notify us by telephoning us at 1-800-DISCOVER, or by writing us at DISCOVER CARD, P.O. Box 33507-NAT'L, REV. 2/90

JUN 17 '96  09:18AM NOVUS SERVICE
15156. Wilmington, DE 19886-1002. You may be liable for the unauthorized use of your Account or the Card. You will not be liable for unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability will not exceed $50.00.

**6. LINE OF CREDIT.** We will advise you of your line of credit. We may increase or decrease your line of credit from time to time, if you exceed or attempt to exceed your line of credit, you will be in default.

**7. PROMISE TO PAY.** You agree to pay us in U.S. Dollars, for all purchases and cash advances, including applicable Finance Charges and other charges or fees, incurred by you or anyone you authorize or permit to use your Account or the Card, even if you do not notify us that others are using your Account or the Card. We will convert purchases and cash advances made in a foreign currency to U.S. Dollars in the same manner as when your purchase was made in other than U.S. Dollars, we may refuse to accept the payment of charge your Account our cost to convert your Payment to U.S. Dollars. All checks must be drawn on funds on deposit in the U.S. If your Account is a joint Account, each of you agrees to be liable individually and jointly for the entire amount owed on your Account.

We can accept late payments or partial payments or checks and money orders marked "payment in full" without losing any of our rights under this Agreement.

**8. MONTHLY BILLING STATEMENT.** We will send you a billing statement, after each monthly billing cycle in which you have a debit or credit balance in excess of $1.00. The billing statement will show all purchases, cash advances, Finance Charges and other charges or fees and all payments or other credits posted to your Account during the billing cycle. It will show your New Balance, Minimum Payment Due and Payment Due Date. Purchases will be identified by the amount and date of the transaction, the date of posting to your Account, the seller's name and the city and state or foreign country where the transaction took place. Cash advances will be identified by the amount of the transaction, the date of the transaction (either the date of the cash advance or the date of the credit document) and the date of posting to your Account.

**9. MINIMUM PAYMENT OPTIONS.** You may at any time pay the entire New Balance shown on your billing statement, but each month you must pay at least the Minimum Payment Due. All payments must be mailed or delivered to us at the address shown on your monthly billing statement or by using the envelope enclosed with such statement. All payments will be applied in the following order: Finance Charges and other charges or fees, cash advances in the order made and purchases in the order made.

**10. MINIMUM MONTHLY PAYMENT.** The Minimum Payment Due each month will be either (a) the entire New Balance shown on your billing statement if the New Balance is less than $10.00, or (b) the greater of $10.00 or an amount equal to 1/36th of the New Balance rounded to the next higher whole dollar amount. You can pay ahead. The minimum payment due for each monthly billing cycle will be reduced by the amount you have paid in excess of the Minimum Payment Due, as calculated in (a) and (b) above. In any of the three previous monthly billing cycles, less any portion of the excess already used to reduce payments. However, there will be no reduction if you have exceeded your line of credit or if you have paid the entire New Balance shown on your billing statement.

**11. FAILURE TO MAKE MINIMUM PAYMENT.** If you do not make at least the Minimum Payment Due by the Payment Due Date each month, you will be in default.

**12. CREDIT BALANCES.** We will refund any credit balance when seven business days from receipt of your written request. If you do not request a refund, we will automatically refund credit balances greater than $1.00 which remain in your Account after two billing cycles.

**13. FINANCE CHARGES.** We will impose Finance Charges as follows:

**Purchases**

A. A Finance Charge is imposed on purchases (except as referred to in paragraph C below) from the date of posting to your Account to the date of repayment.

B. For each billing cycle:

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Purchases is the sum of the daily unpaid balances of purchases on each day of the billing cycle divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

(2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Purchases is the sum of the unpaid balances of purchases itemized on your last billing statement on each day of the billing cycle covered by your last billing statement, divided by the number of days in that billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

(3) We add the amounts determined under (1) and (2) to arrive at the Finance Charge on purchases.

C. A Finance Charge is not imposed on:

(1) New purchases posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement of such New Balance was zero and (b) you pay the New Balance shown on the billing statement itemizing the new purchases by the Payment Due Date shown on that billing statement.

(2) Old purchases previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

Greenwood Trust Company
DISCOVER CARD

Vice President

JUN 17 '96 09:19AM NOVUS SERVICE

sending you a written notice at least 30 days before the change is to become effective. We may apply any such change to the outstanding balance of your Account on the effective date of the change and to new charges made after that date. If you do not agree to the change, you must notify us in writing within 30 days after the mailing of the notice of change at the address provided in the notice of change, in which case your Account will be closed and you must pay us the balance that you owe us under the existing terms of the unchanged Agreement. Otherwise, you will be deemed to have accepted the changes in the notice. Use of the Card after the date of the change shall be deemed acceptance of the new terms as of such effective date, even if you previously notified us that you did not agree to the change.

23. CHANGE OF ADDRESS. If you change your address you must notify us of your new address within 15 days.

24. ASSIGNMENT OF ACCOUNT. We may sell, assign or transfer your Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account without first obtaining our prior written consent.

25. GOVERNING LAW. This Agreement will be governed by the laws of the State of Delaware and applicable federal laws. If any part of this Agreement becomes unenforceable, it will not make any other part unenforceable.

JUN 17 '96 09:19AM NOVUS SERVICE
P.4

14. MINIMUM FINANCE CHARGE. We will charge you a minimum FINANCE CHARGE of $.50 for any billing cycle in which a FINANCE CHARGE of less than $.50 would otherwise be imposed.

15. ANNUAL MEMBERSHIP FEE. (ONLY NORTH CAROLINA AND WISCONSIN RESIDENTS.) If you are a resident of North Carolina or Wisconsin, you agree to pay us, at the beginning of your membership year in North Carolina and at the end of your membership year in Wisconsin, a nonrefundable Annual Membership Fee of $15.00, posted as a purchase, for each Account. Such fee will be waived for the first year if your Account has been approved as a part of a special offer acceptance of a special offer from us, in which case, all of a portion of the fee may be waived or changed only one fee for that Account, but only be changed only one fee for that Account. Unless you notify us not to renew your Account, the fee will be posted to your Account annually during the billing cycle following the expiration month shown on the face of your Card.

16. RETURNED CHECK CHARGE. We will charge you a Returned Check Charge of $15.00 each time you pay us with a check or payment check that is returned unpaid.

17. LATE CHARGE. We will charge you a Late Charge of $10.00 if you fail to make a required payment within 30 days after the Payment Due Date in any month.

18. DEFAULT AND COLLECTION COSTS. You are in default if you fail to comply with the terms of this Agreement, including failing to make a required payment when due or exceeding your line of credit. If you are in default and we refer the collection of your Account to an attorney, we may charge you reasonable attorneys' fees and court or other collection costs as permitted by law and as actually incurred by us.

19. CANCELLATION. You may cancel your Account by notifying us in writing and returning the Card to us cut in half. Of course, you will still be responsible to pay any amount you owe us according to the terms of this Agreement. We may cancel or suspend your Account at any time without notice. If we do cancel or suspend your Account, we may declare the entire balance of your Account immediately due and payable without notice. If you are in default, if we have a reasonable belief that you are unable or unwilling to repay your obligations to us, if you die or become incompetent.

20. PRIVACY. We may investigate your credit, employment and income records and verify your credit references. We also may report to credit reporting agencies and other creditors the status and payment history of your Account. We will not release this information to any other party without your prior written permission or as required by law. We may, in the event of your bankruptcy, or in case of default, if you file a petition in bankruptcy, in which case we may release information regarding your account to third parties related by us to assist us in enforcing our rights under this Agreement. However, we may include your name and address and other identifying information on lists of cardmembers furnished to companies selling products or services that may be of interest to you. Our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to our cardmembers.

21. CREDIT AUTHORIZATIONS. Certain purchases and cash advances will require our authorization prior to completion of the transaction. In some cases, you may be asked to provide identification. If our authorization system is not working, or we may not be able to authorize a transaction, even if you have available credit. We will not be liable to you if any of these events happen.

22. CHANGE OF TERMS. We may change any term or part of this Agreement, including finance charge rate, fee or method of computing any balance upon which the finance charge rate is assessed, by

JUN 17 '96 09:19AM NOVUS SERVICE

A. Cash Advances
A. A Finance Charge is imposed on cash advances (except as referred to in paragraph (C) below) from the date of transaction to the date of repayment.

B. For each billing cycle:
(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Cash Advances. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% when corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Cash Advances is the sum of the daily unpaid balances of cash advances during the billing cycle divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding unpaid finance charges, in each case, as of the date of the transaction.

(2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Cash Advances. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Cash Advances is the sum of the unpaid balances of cash advances during on your last billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding unpaid finance charges, in each case, as of the date posted to your Account and by adding new cash advances as of the due of the transaction.

(3) We also charge a one-time FINANCE CHARGE for cash advances equal to 2.5% of the amount of each new cash advance, with a minimum FINANCE CHARGE of $2.50 and a maximum FINANCE CHARGE of $10.00 (except for cash advances which we make in respect of guaranteed personal checks for which we honor label). This charge may result in an ANNUAL PERCENTAGE RATE for cash advances which is higher than the nominal ANNUAL PERCENTAGE RATE.

(4) We add the amounts determined under (1), (2) and (3) to obtain the Finance Charge on Cash Advances.

C. A Finance Charge (other than the one-time Finance Charge in subparagraph B(3) above) is not imposed on:
(1) New cash advances posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or such New Balance was zero and (b) you pay the New Balance shown on the billing statement itemizing the new cash advances by the Payment Due Date shown on that billing statement.

D. All forms of cash advances, including the use of Discover Card Checks, regardless of the purpose for which used, shall be subject to the Finance Charges as set forth above.

# EXHIBIT 5

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

HBLC, Inc., final transfer
of DISCOVER Card

               Plaintiff,

v.

TAMELA JASPER,

               Defendant.

Case No._____

08 M1  120347

Claimed: $ 2582.65 plus costs

Return Date:

APR 1 8 2008

VERIFIED COMPLAINT

Now comes Plaintiff, HBLC, Inc., final transferee of DISCOVER Card and states as follows:

      1.     That the Plaintiff is a corporation authorized to transact business in the State of Illinois and is the owner of this account having purchased said account in the regular course of business in good faith and for value.

      2.     That Defendant(s) opened an DISCOVER Card credit card account (account number 6011007410087174) and made purchases and charged same to the account but has failed to make monthly payments called for on the account.  A true and correct copy of the Cardmember Agreement is attached hereto as Exhibit "2".

      3.     That pursuant to the Affidavit attached hereto as Exhibit "1" there is due to Plaintiff from the Defendant, as of the filing date of this complaint, the sum of $2582.65 (which includes $350 as reasonable attorneys' fees as permitted by the Cardmember Agreement) plus court costs as permitted by the Cardmember Agreement and as permitted by statute plus post-judgment interest at the rate allowed by law until the debt is paid.

      4.     That Defendant(s) is in default on the account and has refused to pay the balance due after demand by Plaintiff or its Assignor.

      WHEREFORE, Plaintiff, HBLC, Inc., prays for judgment against Defendant, TAMELA JASPER, in the amount of $2582.65 (which includes reasonable attorneys' fees of $350) plus court costs plus post-judgment interest at the rate allowed by law on the unpaid balance.

Steven J. Fink & Assoc., P.C.

By: _____

Steven J. Fink & Assoc., P.C.
Attorney for the Plaintiff
25 E. Washington Ste. 1233(a)
Chicago, IL 60602
(312) 659-2024
Attorney's No. 52383

Federal law requires me to advise you that we are attempting to collect a debt and any information obtained from you will be used for that purpose.  Unless you dispute the validity of this debt, or any portion of it, within 30 days after receipt of this notice, in writing, the debt will be assumed to valid. If you do dispute the debt's validity, we will provide verification or a copy of any Judgment taken against you and the and address of the original creditor if different from the current creditor.

AFFIDAVIT OF INDEBTEDNESS

Cynthia Rogers, after having been first duly sworn, on oath states that if called to testify in this matter she would testify to the following facts:

1.    That she is an agent of Plaintiff, HBLC, Inc..  Upon information provided to her by the transferor of the debt, she is familiar with certain facts surrounding the debt forming the basis of the herein Complaint, including but not limited to the amount due.

2.    That Plaintiff is the owner of the account forming the basis of the herein Complaint having purchased said account in the regular course of business in good faith and for value, and as such, Plaintiff is the current holder of this debt and the party to whom the Defendant, TAMELA JASPER, is liable.

3.    That after all charges and just credits to this account have been given to the defendant, there remains due and owing to Plaintiff from Defendant, TAMELA JASPER, the sum of $2582.65 (which includes $350 as reasonable attorney fees) plus court costs and post-judgment interest at the rate allowed by law.

_____
Cynthia Rogers

Subscribed and sworn to before me
on this the 8th day of Feb, 2008

_____
Notary Public

```
OFFICIAL SEAL
BRIAN ROGERS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/13/11
```

# CARDMEMBER AGREEMENT

Please read this Agreement carefully before using the Discover Card. It contains the terms and conditions of the Discover Card Account, some of which may have changed from earlier materials provided to you. In the event of any differences, this Agreement shall control.

1. **AGREEMENT TERMS.** The word Card means any one or more Discover Cards issued to you or to an authorized user. The word Account means your Discover Card Account. The words you, your, or yours mean you, the cardmember, and any person or persons who are also contractually liable under this Agreement. The words we, us and our mean Greenwood Trust Company, a Delaware bank.

2. **ACCEPTANCE OF AGREEMENT.** The use of your Account or the Card by you or anyone whom you authorize or permit to use your Account or the Card means you accept this Agreement. However, only if you are a resident of North Carolina or Wisconsin, the Annual Membership Fee provided for in Section 15 will be charged to your Account regardless of whether you use your Account or the Card, unless you have cancelled your Account as provided for in Section 19 within 20 days of receipt of your Card.

3. **USE OF YOUR ACCOUNT AND THE CARD.** You agree that you will only use your Account or the Card for personal, family, household and charitable needs. Your Account or the Card may not be used for business or commercial purposes or to obtain loans to purchase, carry or trade in securities. Prior to its use, each Card must be signed by the person to whom it is issued. Your Account and the Card may be used for the following purposes:

   - To purchase or lease goods or services from participating establishments.

   - To obtain cash advances by means of automated teller machines or checks in accordance with such additional terms and conditions as may be imposed from time to time.

   - To guarantee personal checks at participating establishments subject to cash availability and such conditions as the participating establishments may impose. Any guaranteed personal check returned unpaid by which we become liable shall be treated as a cash advance and a returned check and shall be subject to a Returned Check Charge.

   - To guarantee hotel reservations at participating establishments. You will be liable for guaranteed reservations that are not cancelled prior to 6 p.m. of the date of arrival or such other time as the establishment may impose.

   We are not responsible for the refusal of anyone to accept or honor the Card. The Card is our property. You must return it to us or our agent upon request.

4. **AUTHORIZED CARD USERS.** If you want to cancel the authorized or permitted use of your Account or the Card by another person, you must notify us in writing and recover, cut in half and return to us any Card in such person's possession.

5. **LIABILITY FOR UNAUTHORIZED USE.** If the Card is lost or stolen, or if you think that someone is using your Account or the Card without your permission, notify us immediately. You can notify us by telephoning us at 1-800-DISCOVER, or by writing us at DISCOVER CARD, P.O. Box 33507-NAT'L. REV. 2/90

---

15466, Wilmington, DE 19886-1000. You may be liable for the unauthorized use of the Card. You will not be liable for any unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability will not exceed $50.00.

6. **LINE OF CREDIT.** We will advise you of your line of credit. We may increase or decrease your line of credit from time to time. If you exceed or attempt to exceed your line of credit, you will be in default.

7. **PROMISE TO PAY.** You agree to pay us in U.S. Dollars for all purchases and cash advances, including applicable Finance Charges and other charges or fees, incurred by you or anyone you authorize or permit to use your Account or the Card, even if you do not notify us that others are using your Account or the Card. We will convert purchases and cash advances made in a foreign currency to U.S. Dollars at the rate existing on the date of conversion. If you pay us in other than U.S. Dollars, we may refuse to accept the payment or charge your Account our cost to convert your payment to U.S. Dollars. All checks must be drawn on funds on deposit in the U.S. If your Account is a joint Account, each of you agrees to be liable individually and jointly for the entire amount owed on your Account.

   We can accept late payments or partial payments or checks and money orders marked "payment in full" without losing any of our rights under this Agreement.

8. **MONTHLY BILLING STATEMENT.** We will send you a billing statement after each monthly billing cycle in which you have a debit or credit balance in excess of $1.00. The billing statement will show all purchases, cash advances, Finance Charges and other charges or fees and all payments or other credits posted to your Account during the billing cycle. It will show your New Balance, Minimum Payment Due and Payment Due Date. Purchases will be identified by the amount and date of the transaction, the date of posting to your Account, the seller's name and the city and state or foreign country where the transaction took place. Cash advances will be identified by the amount of the transaction, the date of the transaction (either the date the cash advance is obtained or the date of the credit document) and the date of posting to your Account.

9. **MONTHLY PAYMENT OPTIONS.** You may at any time pay the entire New Balance shown on your billing statement, but each month you must pay at least the Minimum Payment Due. All payments must be mailed or delivered to us at the address shown on your monthly billing statement or by using the envelope enclosed with such statement. All payments will be applied in the following order: Finance Charges and other charges or fees, cash advances in the order made and purchases in the order made.

10. **MINIMUM MONTHLY PAYMENT.** The Minimum Payment Due each month will be either (a) the entire New Balance shown on your billing statement if the New Balance is less than $10.00, or (b) the greater of $10.00 or an amount equal to 1/36th of the New Balance rounded to the next higher whole dollar amount. You can pay ahead. The Minimum Payment Due for each monthly billing cycle will be reduced by the amount you have paid in excess of the Minimum Payment Due, as calculated in (a) and (b) above, in any of the three previous monthly billing cycles, less any portion of the excess already used to reduce payments. However, each month no reduction if you have exceeded your line of credit or if you have paid the entire New Balance shown on your billing statement.

11. **FAILURE TO MAKE MINIMUM PAYMENT.** If you do not make at least the Minimum Payment Due by the Payment Due Date each month, you will be in default.

---

**CREDIT BALANCES.** We will refund any credit balance within seven business days after receipt of your written request. If you do not request a refund, we will automatically refund credit balances greater than $1.00 which remain in your Account after two billing cycles.

13. **FINANCE CHARGES.** We will impose Finance Charges as follows:

   **Purchases**

   A. A Finance Charge is imposed on purchases (except as referred to in paragraph C below) from the date of posting to your Account to the date of repayment.

   B. For each billing cycle:

   (1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Purchases is the sum of the daily unpaid balances of purchases on each day of the billing cycle covered by your current billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case as of the date posted to your Account.

   (2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Purchases is the sum of the unpaid balances of purchases itemized on your last billing statement on each day of the billing cycle covered by your last billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

   (3) We add the amounts determined under (1) and (2) to obtain the Finance Charge on purchases.

   C. A Finance Charge is not imposed on:

   (1) New purchases posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or such New Balance was zero and (b) you pay the New Balance shown on the billing statement demanding the new purchases by the Payment Due Date shown on that billing statement.

   (2) Old purchases previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

---

**Cash Advances**

A. A Finance Charge is imposed on cash advances (except as referred to in paragraph C below) from the date of transaction to the date of repayment.

B. For each billing cycle:

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Cash Advances. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of cash advances is the sum of the daily unpaid balances of cash advances on each day of the billing cycle covered by your current billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new cash advances, in each case as of the date of the transaction.

(2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Cash Advances. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Cash Advances is the sum of the unpaid balances of cash advances itemized on your last billing statement on each day of the billing cycle covered by your last billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new cash advances, in each case, as of the date of the transaction.

(3) We also charge a one-time FINANCE CHARGE for each cash advance equal to 2.5% of the amount of each new cash advance, with a minimum FINANCE CHARGE of $2.00 and a maximum FINANCE CHARGE of $10.00 (except for cash advances which are made in respect of guaranteed personal checks for which we become liable). This charge may result in an ANNUAL PERCENTAGE RATE for cash advances which is higher than the nominal ANNUAL PERCENTAGE RATE.

(4) We add the amounts determined under (1), (2) and (3) to obtain the Finance Charge on Cash Advances.

C. A Finance Charge (other than the one-time Finance Charge in subparagraph B(3) above) is not imposed on:

(1) New cash advances posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or such New Balance was zero and (b) you pay the New Balance shown on the billing statement itemizing the new cash advances by the Payment Due Date shown on that billing statement.

(2) Old cash advances previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

D. All forms of cash advances, including the use of Discover Card Checks, regardless of the purpose for which used, shall be subject to the Finance Charges set forth above.

---

14. **MINIMUM FINANCE CHARGE.** We will charge you a minimum FINANCE CHARGE of $.50 for any billing cycle in which a FINANCE CHARGE of less than $.50 would otherwise be imposed.

15. **ANNUAL MEMBERSHIP FEE. (ONLY NORTH CAROLINA AND WISCONSIN RESIDENTS.)** If you are a resident of North Carolina or Wisconsin, you agree to pay us, at the beginning of your membership year in North Carolina and at the end of your membership year in Wisconsin, a nonrefundable Annual Membership Fee of $18.00, posted as a purchase, for each Account. Such fee will be waived for the first year you are a Cardmember unless you became a Cardmember through acceptance of a special offer from us, in which case: (a) a portion of the fee may be waived or rebated in accordance with the terms of such offer. You may have more than one Card per Account, but only be charged only one fee for that Account. Unless you notify us not to renew your Account, the fee will be posted to your Account annually during the billing cycle following the expiration month shown on the face of your Card.

16. **RETURNED CHECK CHARGE.** We will charge you a Returned Check Charge of $15.00 each time you pay us with or we guarantee a check that is returned unpaid.

17. **LATE CHARGE.** We will charge you a Late Charge of $10.00 if you fail to make a required payment within 20 days after the Payment Due Date in any month.

18. **DEFAULT-COLLECTION COSTS.** You are in default if you fail to comply with the terms of this Agreement, including failing to make a required payment when due or exceeding your line of credit. If you are in default and we refer the collection of your Account to an attorney, we may charge you reasonable attorneys' fees and court or other collection costs as permitted by law and as actually incurred by us.

19. **CANCELLATION.** You may cancel your Account by notifying us in writing and returning the Card to us cut in half. Of course, you will still be responsible to pay any amount you owe us according to the terms of this Agreement. We may cancel or suspend your Account at any time without notice. If we do cancel or suspend your Account, we may declare the entire balance of your Account immediately due and payable without notice. If you are in default, if we have a reasonable belief that you are unable or unwilling to repay your obligations to us, if you are insolvent or in bankruptcy, or if you die.

20. **PRIVACY.** We may investigate your credit, employment and income records and verify your credit references. We also may report to credit reporting agencies and other creditors the status and payment history of your Account. We will not release any information to any other party without your prior written authorization or proper legal process, unless you are in default or if you file a petition in bankruptcy, in which case we may release information regarding your Account to third parties retained by us to assist us in enforcing our rights under this Agreement. However, we may include your name and address and other identifying information on lists of cardmembers furnished to companies selling products or services that may be of interest to you. Our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to our cardmembers.

21. **CREDIT AUTHORIZATIONS.** Certain purchases and cash advances will require our authorization prior to completion of the transaction. In some cases, you may be asked to provide identification. If our authorization system is not working, we may not be able to authorize a transaction, even if you have sufficient available credit. We will not be liable to you if any of these events happen.

22. **CHANGE OF TERMS.** We may change any term of this Agreement, including finance charge rate, fee or method of computing any balance upon which the finance charge rate is assessed, by

---

sending you a written notice at least 30 days before the change is to become effective. We may apply any such change to the outstanding balance of your Account on the effective date of the change and to new charges made after that date. If you do not agree to the change, you must notify us in writing within 30 days after the mailing of the notice of change at the address provided in the notice of change, in which case your Account will be closed and you must pay us the balance that you owe us under the existing terms of the unchanged Agreement. Otherwise, you will have agreed to the changes in the notice. Use of the Card after the effective date of the change shall be deemed acceptance of the new terms as of such effective date, even if you previously notified us that you did not agree to the change.

23. **CHANGE OF ADDRESS.** If you change your address you must notify us of your new address within 15 days.

24. **ASSIGNMENT OF ACCOUNT.** We may sell, assign or transfer your Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account without first obtaining our prior written consent.

25. **GOVERNING LAW.** This Agreement will be governed by the laws of the State of Delaware and applicable federal laws. If any part of this Agreement becomes unenforceable, it will not make any other part unenforceable.

Greenwood Trust Company
DISCOVER CARD

*J B Whitz*

Vice President

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

HBLC, Inc., final transferee
of DISCOVER Card

                    Plaintiff,

v.

TAIPHACHAN KEOBOWAVANH,

                    Defendant.

Case No. _____

08 M1 120345

Claimed: $ 4020.16 plus costs

Return Date: APR 1 8 2008

VERIFIED COMPLAINT

Now comes Plaintiff, HBLC, Inc., final transferee of DISCOVER Card and states as follows:

    1.    That the Plaintiff is a corporation authorized to transact business in the State of
Illinois and is the owner of this account having purchased said account in the regular course of business
in good faith and for value.

    2.    That Defendant(s) opened an DISCOVER Card credit card account (account number
6011007670622413) and made purchases and charged same to the account but has failed to make monthly
payments called for on the account.  A true and correct copy of the Cardmember Agreement is attached
hereto as Exhibit "2".

    3.    That pursuant to the Affidavit attached hereto as Exhibit "1" there is due to Plaintiff
from the Defendant, as of the filing date of this complaint, the sum of $4020.16 (which includes $350 as
reasonable attorneys' fees as permitted by the Cardmember Agreement) plus court costs as permitted by the
Cardmember Agreement and as permitted by statute plus post-judgment interest at the rate allowed by law
until the debt is paid.

    4.    That Defendant(s) is in default on the account and has refused to pay the balance due
after demand by Plaintiff or its Assignor.

    WHEREFORE, Plaintiff, HBLC, Inc., prays for judgment against Defendant, TAIPHACHAN KEOBOWAVANH,
in the amount of $4020.16 (which includes reasonable attorneys' fees of $350) plus court costs plus
post-judgment interest at the rate allowed by law on the unpaid balance.

                                        Steven J. Fink & Assoc., P.C.


                                        By: _____

Steven J. Fink & Assoc., P.C.
Attorney for the Plaintiff
25 E. Washington Ste. 1233(a)
Chicago, IL 60602
(312) 659-2024
Attorney's No. 52383

Federal law requires me to advise you that we are attempting to collect a debt and any information
obtained from you will be used for that purpose.  Unless you dispute the validity of this debt, or any
portion of it, within 30 days after receipt of this notice, in writing, the debt will be assumed to valid.
If you do dispute the debt's validity, we will provide verification or a copy of any Judgment taken
against you and the and address of the original creditor if different from the current creditor.

AFFIDAVIT OF INDEBTEDNESS

Cynthia Rogers, after having been first duly sworn, on oath states that if called to testify in this matter she would testify to the following facts:

1.  That she is an agent of Plaintiff, HBLC, Inc..  Upon information provided to her by the transferor of the debt, she is familiar with certain facts surrounding the debt forming the basis of the herein Complaint, including but not limited to the amount due.

2.  That Plaintiff is the owner of the account forming the basis of the herein Complaint having purchased said account in the regular course of business in good faith and for value, and as such, Plaintiff is the current holder of this debt and the party to whom the Defendant, TAIPHACHAN KEOBOWAVANH, is liable.

3.  That after all charges and just credits to this account have been given to the defendant, there remains due and owing to Plaintiff from Defendant, TAIPHACHAN KEOBOWAVANH, the sum of $4020.16 (which includes $350 as reasonable attorney fees) plus court costs and post-judgment interest at the rate allowed by law.

_____
Cynthia Rogers

Subscribed and sworn to before me
on this the 8th day of Feb, 2008

_____
Notary Public

```
OFFICIAL SEAL
BRIAN ROGERS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/13/11
```

# CARDMEMBER AGREEMENT

*Please read this Agreement carefully before using the Discover Card. It contains the terms and conditions of the Discover Card Account, some of which may have changed from earlier materials provided to you. In the event of any difference, this Agreement shall control.*

1. **AGREEMENT TERMS.** The word Card means any one or more Discover Cards issued to you or to an authorized user. The word Account means your Discover Card Account. The words you, your, or yours mean you, the cardmember, and any person or persons who are also contractually liable under this Agreement. The words we, us and our mean Greenwood Trust Company, a Delaware bank.

2. **ACCEPTANCE OF AGREEMENT.** The use of your Account or the Card by you or by another person or permit to use your Account or the Card means you accept this Agreement. However, only if you are a resident of North Carolina or Wisconsin, the Annual Membership Fee provided for in Section 15 will be charged to your Account regardless of whether you use your Account or the Card, unless you have cancelled your Account as provided for in Section 18 within 30 days of receipt of your Card.

3. **USE OF YOUR ACCOUNT AND THE CARD.** You agree that you will only use your Account or the Card for personal, family, household and charitable purposes. Your Account or the Card may not be used for business or commercial purposes or to obtain loans to purchase, carry or trade in securities. Prior to its use, each Card must be signed by the person to whom it is issued. Your Account and the Card may be used for the following purposes:

   - To purchase or lease goods or services from participating establishments.

   - To obtain cash advances by means of automated teller machines or checks in accordance with such additional terms and conditions as may be imposed from time to time.

   - To guarantee personal checks at participating establishments subject to cash availability and such conditions as the participating establishments may impose. Any guaranteed personal check returned unpaid for which we become liable shall be treated as a cash advance and a returned check and shall be subject to a Returned Check Charge.

   - To guarantee hotel reservations at participating establishments. You will be liable for guaranteed reservations that are not cancelled prior to 6 p.m. of the date of arrival or such other time as the establishment may impose.

   We are not responsible for the refusal of anyone to accept or honor the Card. The Card is our property. You must return it to us or our agent upon request.

4. **AUTHORIZED CARD USERS.** If you want to cancel the authorized or permitted use of your Account or the Card by another person, you must notify us in writing and recover, cut in half and return to us any Card in such person's possession.

5. **LIABILITY FOR UNAUTHORIZED USE.** If the Card is lost or stolen, or if you think that someone is using your Account or the Card without your permission, notify us immediately. You can notify us by telephoning us at 1-800-DISCOVER, or by writing us at Discover Card, P.O. Box 33507-NAT'L REV. 2/90

---

15156, Wilmington, DE 19886-1002. You may be liable for the unauthorized use of your Account or the Card. You will not be liable for unauthorized use that occurs after you notify us orally or in writing of the loss, theft, or possible unauthorized use. In any case, your liability will not exceed $50.00.

6. **LINE OF CREDIT.** We will advise you of your line of credit. We may increase or decrease your line of credit from time to time, if you exceed or attempt to exceed your line of credit, you will be in default.

7. **PROMISE TO PAY.** You agree to pay us in U.S. Dollars for all purchases and cash advances, including applicable Finance Charges and other charges or fees, incurred by you or anyone you authorize or permit to use your Account or the Card, even if you do not notify us that others are using your Account or the Card. We will convert purchases and cash advances made in a foreign currency to U.S. Dollars at the rate existing on the date of conversion. If you pay us in other than U.S. Dollars, we may refuse to accept the payment or charge your Account our cost to convert your payment to U.S. Dollars. All checks must be drawn on funds on deposit in the U.S. If your Account is a joint Account, each of you agrees to be liable individually and jointly for the entire amount owed on your Account.

   We can accept late payments or partial payments of checks and money orders marked "payment in full" without losing any of our rights under this Agreement.

8. **MONTHLY BILLING STATEMENT.** We will send you a billing statement after each monthly billing cycle in which you have a debit or credit balance in excess of $1.00. The billing statement will show all purchases, cash advances, Finance Charges and other charges or fees and all payments or other credits posted to your Account during the billing cycle. It will show your New Balance, Minimum Payment Due and Payment Due Date. Purchases will be identified by the amount and date of the transaction, the date of posting to your Account, the seller's name and the city and state or foreign country where the transaction took place. Cash advances will be identified by the amount of the transaction, the date of the transaction (either the date the cash advance is obtained or the date of the credit document) and the date of posting to your Account.

9. **MONTHLY PAYMENT OPTIONS.** You may at any time pay the entire New Balance shown on your billing statement, but each month you must pay at least the Minimum Payment Due. All payments must be mailed or delivered to us at the address shown on your monthly billing statement or by using the envelope enclosed with such statement. All payments will be applied in the following order: Finance Charges and other charges or fees, cash advances in the order made and purchases in the order made.

10. **MINIMUM MONTHLY PAYMENT.** The Minimum Payment Due each month will be either (a) the entire New Balance shown on your billing statement if the New Balance is less than $10.00, or (b) the greater of $10.00 or an amount equal to 1/36th of the New Balance rounded to the next higher whole dollar amount. You can pay ahead. The minimum payment due for each monthly billing cycle will be reduced by the amount you have paid in excess of the Minimum Payment Due, as calculated in (a) and (b) above, in any of the three previous monthly billing cycles. If you paid ahead, any excess already used to reduce payments. However, there will be no reduction if you have exceeded your line of credit or if you have paid the entire New Balance shown on your billing statement.

11. **FAILURE TO MAKE MINIMUM PAYMENT.** If you do not make at least the Minimum Payment Due by the Payment Due Date each month, you will be in default.

12. **CREDIT BALANCES.** We will refund any credit balance within seven business days upon receipt of your written request. If you do not request a refund, we will automatically refund credit balances greater than $1.00 which remain in your Account after two billing cycles.

13. **FINANCE CHARGES.** We will impose Finance Charges as follows:

   **Purchases**

   A. A Finance Charge on purchases (except as referred to in paragraph C below) from the date of posting to your Account on the date of enrollment.

   B. For each billing cycle:

   (1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Purchases is the sum of the daily unpaid balances of purchases on each day of the billing cycle covered by your billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

   (2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Purchases is the sum of the unpaid balances of purchases itemized on your last billing statement on each day of the billing cycle covered by your last billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

   (3) We add the amounts determined under (1) and (2) to obtain the Finance Charge on purchases.

   C. A Finance Charge is not imposed on:

   (1) New purchases posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or such New Balance was zero and (b) you pay the New Balance shown on the billing statement itemizing the new purchases by the Payment Due Date shown on that billing statement.

   (2) Old purchases previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

---

**Cash Advances**

A. A Finance Charge is imposed on cash advances (except as referred to in subparagraph C below) from the date of transaction to the date of repayment.

B. For each billing cycle:

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Cash Advances. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of cash advances on each day of the billing cycle covered by your current billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new cash advances, unpaid finance charges, in each case, as of the date posted to your Account and by adding new cash advances as of the date of the transaction.

(2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Cash Advances. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Cash Advances is the sum of the unpaid balances of cash advances itemized on your last billing statement on each day of the billing cycle covered by your last billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding unpaid finance charges, in each case, as of the date posted to your Account and by adding new cash advances as of the date of the transaction.

(3) We also charge a one-time FINANCE CHARGE for cash advances equal to 2.5% of the amount of each new cash advance, with a minimum FINANCE CHARGE of $2.00 and a maximum FINANCE CHARGE of $10.00 (except for cash advances which are made in respect of guaranteed personal checks for which we become liable). This charge may result in an ANNUAL PERCENTAGE RATE for cash advances which is higher than the nominal ANNUAL PERCENTAGE RATE.

(4) We add the amounts determined under (1), (2) and (3) to obtain the Finance Charge on Cash Advances.

C. A Finance Charge (other than the one-time Finance Charge in subparagraph B(3) above) is not imposed on:

(1) New cash advances posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or such New Balance was zero and (b) you pay the New Balance shown on the billing statement itemizing the new cash advances by the Payment Due Date shown on that billing statement.

(2) Old cash advances previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

D. All forms of cash advances, including the use of Discover Card Checks, regardless of the purpose for which used, shall be subject to the Finance Charges as set forth above.

---

14. **MINIMUM FINANCE CHARGE.** We will charge you a minimum FINANCE CHARGE of $.50 for any billing cycle in which a FINANCE CHARGE of less than $.50 would otherwise be imposed.

15. **ANNUAL MEMBERSHIP FEE. (ONLY NORTH CAROLINA AND WISCONSIN.)** If you are a resident of North Carolina or Wisconsin, you agree to pay us, at the beginning of your membership year in North Carolina and at the end of your membership year in Wisconsin, a nonrefundable Annual Membership Fee of $18.00, posted as a purchase, for each Account. Such fee will be waived for the first year you are a Cardmember since you became a Cardmember through acceptance of a special offer from us, in which case, all or a portion of the fee may be waived or prorated in accordance with the terms of such offer. You may have more than one Card per Account, but will be charged only one fee for that Account. Unless you notify us not to renew your Account, the fee will be posted to your Account annually during the billing cycle following the appropriate month shown on the face of your Card.

16. **RETURNED CHECK CHARGE.** We will charge you a Returned Check Charge of $15.00 each time you pay us with or we guarantee a check that is returned unpaid.

17. **LATE CHARGE.** We will charge you a Late Charge of $10.00 if you fail to make a required payment within 20 days after the Payment Due Date in any month.

18. **DEFAULT-COLLECTION COSTS.** You are in default if you fail to comply with the terms of this Agreement, including failing to make a required payment when due or exceeding your line of credit. If you are in default and we refer the collection of your Account to an attorney, we may charge you reasonable attorneys' fees and court or other collection costs as permitted by law and as actually incurred by us.

19. **CANCELLATION.** You may cancel your Account by notifying us in writing and returning the Card to us cut in half. Of course, you will still be responsible to pay any amount you owe us according to the terms of this Agreement. We may cancel or suspend your Account at any time without notice. If we do cancel or suspend your Account, we may declare the entire balance of your Account immediately due and payable without notice. If you are in default, if we have a reasonable belief that you are unable or unwilling to repay your obligations to us, if you are insolvent or in bankruptcy, or if you die.

20. **PRIVACY.** We may investigate your credit, employment and income records, and verify your credit references. We also may report to credit reporting agencies and other creditors the status and payment history of your Account. We will not release this information to any other party without your prior written permission or proper legal process, unless you are in default or if you file a petition in bankruptcy, in which case we may release information regarding your account to third parties retained by us to assist us in enforcing our rights under this Agreement. However, we may include your name and address and other identifying information on lists of cardmembers furnished to companies selling products or services that may be of interest to you. Our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to our cardmembers.

21. **CREDIT AUTHORIZATIONS.** Certain purchases and cash advances will require our authorization prior to completion of the transaction. In some cases, you may be asked to provide identification. If our authorization system is not working, we may not be able to authorize a transaction, even if you have sufficient available credit. We will not be liable to you if any of these events happen.

22. **CHANGE OF TERMS.** We may change any term or part of this Agreement, including finance charge rate, fee or method of computing any balance upon which the finance charge rate is assessed, by

---

sending you a written notice at least 30 days before the change is to become effective. We may apply any such change to the outstanding balance of your Account on the effective date of the change and to new charges made after that date. If you do not agree to the change, you must notify us in writing within 30 days after the mailing of the notice of change at the address provided in the notice of change, in which case your Account will be closed and you must pay us the balance that you owe us under the existing terms of the unchanged Agreement. Otherwise, you will have agreed to the changes in the notice. Use of the Card after the effective date of the change shall be deemed acceptance of the new terms as of such effective date, even if you previously notified us that you did not agree to the change.

23. **CHANGE OF ADDRESS.** If you change your address you must notify us at your new address within 15 days.

24. **ASSIGNMENT OF ACCOUNT.** We may sell, assign or transfer your Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account without first obtaining our prior written consent.

25. **GOVERNING LAW.** This Agreement will be governed by the laws of the State of Delaware and applicable federal laws. If any part of this Agreement becomes unenforceable, it will not make any other part unenforceable.

Greenwood Trust Company
DISCOVER CARD

*J B Mertz*
Vice President

08 M 1   116395,

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

HBLC, Inc., final transfer                              Case No. _____
of DISCOVER

                     Plaintiff,

v.                                                      Claimed: $ 4304.33 plus costs

ANTOINETTE PETERSON,

                     Defendant.           Return Date:

VERIFIED COMPLAINT

APR 0 4 2008

Now comes Plaintiff, HBLC, Inc., final transferee of DISCOVER and claims as follows:

      1.     That the Plaintiff is a corporation authorized to transact business in the State of
Illinois and is the owner of this account having purchased said account in the regular course of business
in good faith and for value.

      2.     That Defendant(s) opened an DISCOVER credit card account (account number
6011007050206191) and made purchases and charged same to the account but has failed to make monthly
payments called for on the account.  A true and correct copy of the Cardmember Agreement is attached
hereto as Exhibit "2".

      3.     That pursuant to the Affidavit attached hereto as Exhibit "1" there is due to Plaintiff
from the Defendant, as of the filing date of this complaint, the sum of $4304.33 (which includes $350 as
reasonable attorneys' fees as permitted by the Cardmember Agreement) plus court costs as permitted by the
Cardmember Agreement and as permitted by statute plus post-judgment interest at the rate allowed by law
until the debt is paid.

      4.     That Defendant(s) is in default on the account and has refused to pay the balance due
after demand by Plaintiff or its Assignor.

      WHEREFORE, Plaintiff, HBLC, Inc., prays for judgment against Defendant, ANTOINETTE PETERSON, in
the amount of $4304.33 (which includes reasonable attorneys' fees of $350) plus court costs plus
post-judgment interest at the rate allowed by law on the unpaid balance.

                                     Steven J. Fink & Assoc., P.C.

                                   By: _____

Steven J. Fink & Assoc., P.C.
Attorney for the Plaintiff
25 E. Washington Ste. 1233(a)
Chicago, IL 60602
(312) 659-2024
Attorney's No. 52383

Federal law requires me to advise you that we are attempting to collect a debt and any information
obtained from you will be used for that purpose.  Unless you dispute the validity of this debt, or any
portion of it, within 30 days after receipt of this notice, in writing, the debt will be assumed to valid.
If you do dispute the debt's validity, we will provide verification or a copy of any Judgment taken
against you and the and address of the original creditor if different from the current creditor.

AFFIDAVIT OF INDEBTEDNESS

Cynthia Rogers, after having been first duly sworn, on oath states that if called to testify in this matter she would testify to the following facts:

1.    That she is an agent of Plaintiff, HBLC, Inc..  Upon information provided to her by the transferor of the debt, she is familiar with certain facts surrounding the debt forming the basis of the herein Complaint, including but not limited to the amount due.

2.    That Plaintiff is the owner of the account forming the basis of the herein Complaint having purchased said account in the regular course of business in good faith and for value, and as such, Plaintiff is the current holder of this debt and the party to whom the Defendant, ANTOINETTE PETERSON, is liable.

3.    That after all charges and just credits to this account have been given to the defendant, there remains due and owing to Plaintiff from Defendant, ANTOINETTE PETERSON, the sum of $4304.33 (which includes $350 as reasonable attorney fees) plus court costs and post-judgment interest at the rate allowed by law.

_____

Cynthia Rogers

Subscribed and sworn to before me
on this the 2nd day of Jan, 2008

_____

Notary Public

OFFICIAL SEAL
BRIAN ROGERS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/13/11

*Base Card*

# CARDMEMBER AGREEMENT

Please read this Agreement carefully before using the Discover Card. It contains the terms and conditions of the Card Account, some of which may have changed from earlier materials provided to you. In the event of any differences, this Agreement shall control.

**1. AGREEMENT TERMS.** The word Card means any one or more Discover Cards issued to you or an authorized user. The word Account means your Discover Card Account. The words you, your, or yours mean you, the cardmember, and any person who is contractually liable under this Agreement. The words we, us and our mean Greenwood Trust Company, a Delaware bank.

**2. ACCEPTANCE OF AGREEMENT.** If you or an authorized user, or anyone whom you authorize or permit to use your Account or Card, uses your Discover Card Account, the word Account means you accept this Agreement. However, only if you are a resident of North Carolina or Wisconsin, the Annual Membership Fee provided for in Section 15 will be charged to your Account when provided for in this Agreement. The words we, us and our contractually liable under this Agreement. Your Account is provided for in Section 15 unless you have cancelled your Account, if provided for in Section 18 within 30 days of receipt of your Card.

**3. USE OF YOUR ACCOUNT AND THE CARD.** You agree that you will only use your Account or the Card for personal, family, household and charitable purposes. You may not use your Account or the Card for business or commercial purposes. You may not use the Card for business or commercial purposes. Prior to its use, each Card must be signed by the person to whom it is issued. Your Account and the Card may be used for the following purposes:

• To purchase or lease goods or services from participating establishments.

• To obtain cash advances by means of automated teller machines or checks in accordance with such additional terms and conditions as may be imposed from time to time.

To guarantee personal checks at participating establishments subject to availability and such conditions as the participating establishment may impose. Any guaranteed personal check returned unpaid for which you become liable shall be treated as a cash advance; and a returned check and shall be subject to a Returned Check Charge.

To guarantee hotel reservations at participating establishments. You will be liable for guaranteed reservations that are not cancelled prior to 6 p.m. of the date of arrival at such other time as the establishment may impose.

We are not responsible for the refusal of anyone to accept or honor the Card. The Card is our property. You must return it to us or our agent upon request.

**4. AUTHORIZED CARD USERS.** If you want to cancel the authorized or permitted use of your Account or the Card by another person, you must notify us in writing and recover, cut in half and return to us any Card on such person's possession.

**5. LIABILITY FOR UNAUTHORIZED USE.** If the Card is lost or stolen, or if you think that someone is using your Account or the Card without your permission, notify us immediately. You can notify us by telephoning us at 1-800-DISCOVER, or by writing us at 3850T-AA/TL REV., 2/90

JUN 17 '96  09:19AM  NOVUS SERVICE                    P.3

15156, Wilmington, DE 19886-1002. You may be liable for the unauthorized use of your Account or the Card. You will not be liable for unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability will not exceed $50.00.

**6. LINE OF CREDIT.** We will advise you of your line of credit. We may increase or decrease your line of credit from time to time. If you exceed or attempt to exceed your line of credit, you will be in default.

**7. PROMISE TO PAY.** You agree to pay us in U.S. Dollars for all purchases and cash advances, including applicable Finance Charges and other charges or fees, incurred by you or anyone you authorize or permit to use the Card, even if you do not notify us that others are using your Account or the Card. We will convert into U.S. Dollars any transaction made in a foreign currency to U.S. Dollars. If you pay us in other than U.S. Dollars, we may elect to refuse payment or charge your Account our cost to convert your payment to U.S. Dollars. All checks must be drawn on funds on deposit in the U.S. If your payment on your Account is made by check, you agree to be liable individually and jointly for the entire amount owed on your Account.

We can accept late payments or partial payments or checks and money orders marked "payment in full" without losing any of our rights under this Agreement.

**8. MONTHLY BILLING STATEMENT.** We will send you a billing statement after each monthly billing cycle in which you have a debit or credit balance in excess of $1.00. The billing statement will show all purchases, cash advances, Finance Charges and other charges or fees and payments and other credits posted during the billing cycle. It will show your New Balance, Minimum Payment Due and Payment Due Date. Purchases will be identified by the amount and date of the transaction, the day of posting to your Account, the seller's name and the city and state of foreign country where the transaction took place. Cash advances will be identified by the amount and date of the transaction, the date of posting to your Account, and the date of the credit document and the date of posting to your Account.

**9. MONTHLY PAYMENT OPTIONS.** You may at any time pay the entire New Balance shown on your billing statement, or you may pay your Account in monthly installments. The Minimum Payment Due will be equal to the Minimum Payment Due as described herein, but you must pay us at least the Minimum Payment Due. All payments must be mailed or delivered to us at the address shown on your monthly billing statement or by using the envelope enclosed with such statement. All other charges or fees, cash advances and purchases will be applied in the following order - Finance Charges and other charges or fees, cash advances in the order made and purchases in the order made.

**10. MINIMUM MONTHLY PAYMENT.** The Minimum Payment Due each month will be either (a) the entire New Balance shown on your billing statement if that amount is less than $10.00, or (b) the greater of $10.00 or an amount equal to 1/36th of the New Balance rounded to the next higher whole dollar amount. You can pay more. Your minimum payment due for any billing cycle will be reduced by the amount you have paid in excess of the Minimum Payment Due as calculated in (a) and (b) above. In any of the three previous monthly billing cycles. Any portion of the excess already used to reduce previous monthly payments. However, there will be no reduction if you have not exceeded your line of credit or if you have paid the entire New Balance shown on your billing statement.

**11. FAILURE TO MAKE MINIMUM PAYMENT.** If you do not make at least the Minimum Payment Due by the Payment Due Date each month, you will be in default.

**12. CREDIT BALANCES.** We will refund any credit balance within seven business days from receipt of your written request, or if you do not request a refund, we will automatically refund credit balances greater than $1.00 which remain in your Account after two billing cycles.

**13. FINANCE CHARGES.** We will impose Finance Charges as follows:

**B. For each billing cycle:**

**A. Purchases**

A Finance Charge is imposed on purchases (except as referred to in paragraph C below) from the date of posting to your Account to the date of repayment.

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Purchases. The Monthly Periodic Rate (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Purchases is the sum of the daily unpaid balances of purchases during the billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by your current billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by adding to the outstanding unpaid balances of purchases at the beginning of each day any new purchases, fees and other charges, and by deducting payments and credits applied against such unpaid balances and by adding unpaid Finance Charges. In each case, at the date posted to your Account.

(2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Purchases is the sum of the unpaid balances of purchases on your last billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, at the date posted to your Account.

**C. A Finance Charge is not imposed on:**

(1) New purchases posted during a billing cycle if you pay the New Balance shown on your last billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or such New Balance was zero; and (b) you pay the New Balance shown on the billing statement itemized by the Payment Due Date shown on that billing statement.

(2) Old purchases previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

JUN 17 '96  09:19PM NOVUS SERVICE                                   P.4

14. **MINIMUM FINANCE CHARGE.** We will charge you a minimum FINANCE CHARGE of $.50 for any billing cycle in which a FINANCE CHARGE of less than $.50 would otherwise be imposed.

15. **ANNUAL MEMBERSHIP FEE. ONLY NORTH CAROLINA AND WISCONSIN RESIDENTS.)** If you are a resident of North Carolina or Wisconsin, you agree to pay us at the end of your membership year in which case an Annual Membership Fee of $19.00 will be waived for the first year in North Carolina and $19.00 for each Account. Such fee will be waived for the first year you are a Cardmember. Unless you terminate your membership within 30 days of the date of the mailing of your Account statement reflecting acceptance of a special offer from us, in which case your annual fee will be waived as set forth in such offer. You may avoid the fee for that Account, unless you notify us not to renew your Account, by notifying us to cancel your Account annually during the billing cycle following the expiration month shown on the face of your Card.

16. **RETURNED CHECK CHARGE.** We will charge you a Returned Check Charge of $10.00 for each payment check you give us that is returned unpaid.

17. **LATE CHARGE.** We will charge you a Late Charge of $10.00 if you fail to make a required payment within 30 days after the Payment Due Date in any month.

18. **DEFAULT-COLLECTION COSTS.** You are in default if you fail to comply with the terms of this Agreement, including failing to make a required payment when due or exceeding your credit limit. If you are in default, we may suspend your Account or require you to pay us the entire amount you owe us at once. If we have to use an attorney, we may charge you reasonable attorneys' fees and court or other collection costs as permitted by law as well as are actually incurred by us.

19. **CANCELLATION.** You may cancel your Account by notifying us in writing and returning the Card to us (cut in half). Of course, you will still be responsible to pay any amount you owe us according to the terms of this Agreement. We may cancel or suspend your Account at any time without notice to the extent permitted by law. If we cancel your Account, you must destroy the Card and return it to us. We may declare the entire balance of your Account immediately due and payable without notice. If you are in default, if we have a reasonable belief that you are unable or unwilling to repay your obligations to us, if you are insolvent or in bankruptcy, or if you die.

20. **PRIVACY.** We may investigate your credit, employment and income records and verify your credit references, with others for current and future credit and other applications. You agree that we may release this information to any other party without your consent. We will not release this information to any other case we may release information regarding your account to a third party for solicitation purposes under this Agreement, which verifying or gathering information on lists of Cardmembers furnished to you by us and our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to our cardmembers.

21. **CREDIT AUTHORIZATIONS.** Certain purchases and cash advances will require our authorization prior to completion of the transaction. In some cases, you may be asked to provide identification. If our authorization system is not working, we may not be able to authorize a transaction, even if you have sufficient available credit. We will not be liable to you if any of these events happen.

22. **CHANGE OF TERMS.** We may change any term or part of this Agreement, including finance charges and other fees and method of computing any balance upon which the finance charge rate is assessed, by

(text continues in left column, rotated)

1. **Cash Advances**
   For each billing cycle:

   (1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Cash Advances. The Average Daily Balance of Cash Advances corresponds to an ANNUAL PERCENTAGE RATE of 19.8% unless you are a resident of Maine, North Carolina or Wisconsin in which case the Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine in which case the Monthly Periodic Rate is 1.54% (which corresponds to an ANNUAL PERCENTAGE RATE of 18.5%). The Average Daily Balance of Cash Advances is the sum of the unpaid balances of cash advances in the billing cycle covered by your last billing statement on each day of the billing cycle. To get the Average Daily Balance of Previous Billing Cycle Cash Advances we take the beginning balance of cash advances each day, add any new cash advances and subtract any payments and credits applied against such unpaid balances and unpaid finance charges. This gives us the daily balances. Then we add up all the daily balances for the billing cycle and divide by the number of days in the billing cycle. This gives us the Average Daily Balance of Previous Billing Cycle Cash Advances.

   (2) We multiply the Monthly Periodic Rate times the Average Daily Balance of New Cash Advances. The Average Daily Balance of New Cash Advances corresponds to an ANNUAL PERCENTAGE RATE of 19.8%. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%). The Average Daily Balance of New Cash Advances is determined by deducting from each day's balance of cash advances any payments and credits applied against such unpaid balances and unpaid finance charges. In each case, add to the balance of the cash advances as of the date posted to your Account any new cash advances as of that date.

   (3) We also charge a one-time FINANCE CHARGE for cash advances equal to 2.5% of the amount of each new cash advance, but not less than $2.50 nor more than $10.00 with respect to guaranteed personal checks for which we become liable. The charge may result in an ANNUAL PERCENTAGE RATE for cash advances which is higher than the nominal ANNUAL PERCENTAGE RATE.

   (4) We add the amounts determined under (1), (2) and (3) to obtain the Finance Charge on Cash Advances.

   A Finance Charge (other than the one-time Finance Charge in subparagraph (3) above) is not imposed on:
   (1) New cash advances posted during the billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that preceding billing statement or such New Balance was zero and (b) you pay the New Balance shown on the billing statement covering the new cash advances shown by the Payment Due Date shown on that billing statement.
   (2) Old cash advances previously posted for billing cycle during which you pay the New Balance shown on the preceding billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

D. All forms of cash advances, including the use of Discover Card Checks, regardless of the purpose for which used, shall be subject to the Finance Charges as set forth above.

(right column, rotated)

JUN 17 '96  09:19PM NOVUS SERVICE

sending you a written notice at least 30 days before the change is to become effective. We may apply any such change to the outstanding balance of your Account on the effective date of the change and to new charges we make after that date. If you do not agree to the change, you must notify us in writing within 30 days after the mailing of the notice or change in the address provided in the notice of change, in which case your Account will be closed and you must pay us the unpaid balance under the existing terms of the Agreement. Otherwise, you will have agreed to the change as set forth in the notice. Use of the Card after the effective date of the change shall be deemed acceptance of the new terms.

23. **CHANGE OF ADDRESS.** If you change your address you must notify us of your new address within 15 days.

24. **ASSIGNMENT OF ACCOUNT.** We may sell, assign or transfer your Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account without first obtaining our prior written consent.

25. **GOVERNING LAW.** This Agreement will be governed by the laws of the State of Delaware and applicable federal laws. If any part of this Agreement becomes unenforceable, it will not make any other part unenforceable.

Greenwood Trust Company
DISCOVER CARD

Vice President

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

07M1-160045

HBLC, Inc., final transfer                           Case No. _____
of Discover Card

                    Plaintiff,

v.                                                   Claimed: $ 4490.58 plus costs

KERI CONRAD,
                    Defendant.                       Return Date:  July 27, 2007


                         VERIFIED COMPLAINT

Now comes Plaintiff, HBLC, Inc., final transferee of Discover Card and claims as follows:

       1.     That the Plaintiff is a corporation authorized to transact business in the State of
Illinois and is the owner of this account having purchased said account in the regular course of business
in good faith and for value.

       2.     That Defendant(s) opened an Disocver Card credit card account (account number
6011007180600081) and made purchases and charged same to the account but has failed to make monthly
payments called for on the account.  A true and correct copy of the Cardmember Agreement is attached
hereto as Exhibit "2".

       3.     That pursuant to the Affidavit attached hereto as Exhibit "1" there is due to Plaintiff
from the Defendant, as of the filing date of this complaint, the sum of $4490.58 (which includes $350 as
reasonable attorneys' fees as permitted by the Cardmember Agreement) plus court costs as permitted by the
Cardmember Agreement and as permitted by statute plus post-judgment interest at the rate allowed by law
until the debt is paid.

       4.     That Defendant(s) is in default on the account and has refused to pay the balance due
after demand by Plaintiff or its Assignor.

       WHEREFORE, Plaintiff, HBLC, Inc., prays for judgment against Defendant, KERI CONRAD, in the
amount of $4490.58 (which includes reasonable attorneys' fees of $350) plus court costs plus post-judgment
interest at the rate allowed by law on the unpaid balance.

                                         Steven J. Fink & Assoc., P.C.


                                         By: _____


Steven J. Fink & Assoc., P.C.
Attorney for the Plaintiff
25 E. Washington Ste. 1233(a)
Chicago, IL 60602
(312) 659-2024
Attorney's No. 52383


Federal law requires me to advise you that we are attempting to collect a debt and any information
obtained from you will be used for that purpose.  Unless you dispute the validity of this debt, or any
portion of it, within 30 days after receipt of this notice, in writing, the debt will be assumed to valid.
If you do dispute the debt's validity, we will provide verification or a copy of any Judgment taken
against you and the and address of the original creditor if different from the current creditor.

AFFIDAVIT OF INDEBTEDNESS

Cynthia Rogers, after having been first duly sworn, on oath states that if called to testify in this matter she would testify to the following facts:

1.    That she is an agent of Plaintiff, HBLC, Inc..  Upon information provided to her by the transferor of the debt, she is familiar with certain facts surrounding the debt forming the basis of the herein Complaint, including but not limited to the amount due.

2.    That Plaintiff is the owner of the account forming the basis of the herein Complaint having purchased said account in the regular course of business in good faith and for value, and as such, Plaintiff is the current holder of this debt and the party to whom the Defendant, KERI CONRAD, is liable.

3.    That after all charges and just credits to this account have been given to the defendant, there remains due and owing to Plaintiff from Defendant, KERI CONRAD, the sum of $4490.58 (which includes $350 as reasonable attorney fees) plus court costs and post-judgment interest at the rate allowed by law.

_____
Cynthia Rogers

Subscribed and sworn to before me
on this the 8th day of June, 2007

_____
Notary Public

OFFICIAL SEAL
BRIAN ROGERS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/13/11

*Base Card*

# CARDMEMBER AGREEMENT

Please read this Agreement carefully before using the Discover Card. It contains the terms and conditions of the Discover Card Account, some of which may have changed from earlier materials provided to you. In the event of any differences, this Agreement shall control.

**1. AGREEMENT TERMS.** The word Card means any one or more Discover Cards issued to you or to an authorized user. The word Account means your Discover Card Account. The words you, your, or yours mean you, the cardmember, and any person or persons who are also contractually liable under this Agreement. The words we, us, and our mean Greenwood Trust Company, a Delaware bank.

**2. ACCEPTANCE OF AGREEMENT.** The use of your Account or the Card by you or anyone whom you authorize or permit to use your Account or the Card means you accept this Agreement. However, only if you are a resident of North Carolina or Wisconsin, the Annual Membership Fee provided for in this Agreement will be charged to your Account regardless of whether you use your Account or the Card, unless you have cancelled your Account as provided for in Section 19 within 30 days of receipt of your Card.

**3. USE OF YOUR ACCOUNT AND THE CARD.** You agree that you will only use your Account or the Card for personal, family, household and charitable purposes. Your Account or the Card may not be used for business or commercial purposes, or to purchase a quote or contract for trade in securities. Prior to its use, each Card must be signed by the person to whom it is issued. Your Account and the Card may be used for the following purposes:

- To purchase or lease goods or services from participating establishments.

- To obtain cash advances by means of automated teller machines or checks in accordance with such additional terms and conditions as may be imposed from time to time.

- To guarantee personal checks at participating establishments subject to cash availability and such conditions as the participating establishments may impose. Any guaranteed personal check returned unpaid for which we have made payment shall be treated as a cash advance and a returned check shall be subject to a Returned Check Charge.

- To guarantee hotel reservations at participating establishments. You will be liable for guaranteed reservations that are not cancelled prior to 6 p.m. of the date of arrival or such other time as the establishment may impose.

We are not responsible for the refusal of anyone to accept or honor the Card. The Card is our property. You must return it to us or our agent upon request.

**4. AUTHORIZED CARD USERS.** If you want to cancel the authorized or permitted use of your Account or the Card by another person, you must notify us in writing and recover, cut in half and return to us any Card in such person's possession.

**5. LIABILITY FOR UNAUTHORIZED USE.** If the Card is lost or stolen, or if someone is using your Account or the Card without your permission, notify us immediately. You can notify us by telephoning us at 1-800-DISCOVER, or by writing us at DISCOVER Card, P.O. Box 15019, Wilmington, DE 19850-5019. 3350°-NAT'L. REV. 2/90

JUN 17 '95 09:19AM NOVUS SERVICE
15156. Wilmington, DE 19886-002. You may be liable for the unauthorized use of your Account or the Card. You will not be liable for unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability will not exceed $50.00.

**6. LINE OF CREDIT.** We will advise you of your line of credit. We may increase or decrease your line of credit from time to time. If you exceed or attempt to exceed your line of credit, you will be in default.

**7. PROMISE TO PAY.** You agree to pay us in U.S. Dollars (or all purchases and cash advances, including applicable Finance Charges and other charges or fees, incurred by you or anyone you authorize or permit to use your Account or the Card. Even if you do not notify us that others are using your Account or the Card, you will be notified. Purchases and cash advances made in a foreign currency to U.S. Dollars at the rate applying on the date of conversion. If you pay us in other than U.S. Dollars, we may refuse to accept the payment or charge your Account our cost to convert your payment to U.S. Dollars. All credits must be drawn on funds on deposit in the U.S. If your Account is ever in arrears except possibly by federal, individually and jointly for the entire amount owed on your Account.

We can accept late payments or partial payments or checks and money orders marked "payment in full" without losing any of our rights under this Agreement.

**8. MONTHLY BILLING STATEMENT.** We will send you a billing statement after each monthly billing cycle in which you have a debit or credit balance in excess of $1.00. The billing statement will show all payments, cash advances, Finance Charges and other charges or fees and all payments or other credits posted to your Account during the billing cycle. It will show your New Balance, Minimum Payment Due and Payment Due Date. Purchases will be identified by the amount and date of the transaction, the date of posting to your Account, the seller's name and the city and state of foreign country where the transaction took place. Cash advances will be identified by the amount of the transaction, the date of the transaction (either the date the cash advance is obtained or the date of the credit document) and the date of posting to your Account.

**9. MONTHLY PAYMENT OPTIONS.** You may at any time pay the entire New Balance shown on your billing statement, but each month you must pay at least the Minimum Payment Due. All payments must be mailed or delivered to us at the address shown on your monthly billing statement or by using the envelope enclosed with such statement. All payments will be applied in the following order: Finance Charges and other charges or fees, cash advances in the order made and purchases in the order made.

**10. MINIMUM MONTHLY PAYMENT.** The Minimum Payment Due each month will be either (a) the entire New Balance shown on your billing statement if the New Balance is less than $10.00, or (b) the greater of $10.00 or an amount equal to 1/25th of the New Balance rounded to the next higher whole dollar amount. You can pay ahead. The minimum payment due for each monthly billing cycle will be reduced by the amount you have paid in excess of the Minimum Payment Due, as calculated in (a) and (b) above. In any of the three previous monthly billing cycles, less any portion of the excess already used to reduce payments. However, there will be no reduction if you have exceeded your line of credit or if you have paid the entire New Balance shown on your billing statement.

**11. FAILURE TO MAKE MINIMUM PAYMENT.** If you do not make at least the Minimum Payment Due by the Payment Due Date each month, you will be in default.

**12. CREDIT BALANCES.** We will refund any credit balance within seven business days from receipt of your written request. If you do request a refund, we will automatically refund credit balances greater than $1.00 which remain in your Account after two billing cycles.

**13. FINANCE CHARGES.** We will impose Finance Charges as follows:

**Purchases**

A. A Finance Charge is imposed on purchases (except as referred to in paragraph C below) from the date of posting to your Account until the date of repayment.

B. For each billing cycle:

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance is taken by taking the beginning balance of Purchases for each day of the billing cycle covered by your current billing statement, divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases and unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

(2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Purchases is the sum of the unpaid balances of purchases itemized on your last billing statement each day of the billing cycle covered by that billing statement divided by the number of days in that billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

(3) We add the amounts determined under (1) and (2) to obtain the Finance Charge on purchases.

C. A Finance Charge is not imposed on:

(1) New purchases posted during a billing cycle if (a) you paid the preceding billing cycle's New Balance statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement of such New Balance was zero and (b) you pay the New Balance shown on the billing statement itemizing the new purchases by the Payment Due Date shown on that billing statement.

(2) Old purchases posted for a billing cycle during the period in which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

**For each billing cycle:**

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Cash Advances. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case it is to an ANNUAL PERCENTAGE RATE of 19.8%). The Average Daily Balance of Cash Advances is the sum of the unpaid balances of cash advances on each day of the billing cycle (including current billing statement covered by the number of days in this current billing statement divided by the number of days in the billing statement and adding unpaid finance charges. In each case, as of the date posted to your Account and by adding new cash advances as of the date of the transaction.

(2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Cash Advances. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case it is to an ANNUAL PERCENTAGE RATE of 18.9%). The Average Daily Balance of Previous Billing Cycle of Cash Advances is the sum of the unpaid balances of cash advances on each day of the billing cycle (including current billing statement covered by your current billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and finance charges. In each case, as of the date posted to your Account and by adding new cash advances as of the date of the transaction.

(3) We also charge a one-time FINANCE CHARGE for cash advances equal to 2.5% of the amount of each Cash Advance with a minimum FINANCE CHARGE of $2.00 and a maximum FINANCE CHARGE of $10.00 (except for cash advances which have an ANNUAL PERCENTAGE RATE for cash advances which is higher than the nominal ANNUAL PERCENTAGE RATE).

(4) We add the amounts determined under (1), (2) and (3) to obtain the Finance Charge on Cash Advances.

A Finance Charge (other than the one-time Finance Charge in sub-paragraph (3) above) is not imposed on:

(1) New cash advances posted during a billing cycle if you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement, regardless of whether the New Balance shown on that preceding billing statement was paid and (ii) the new cash advances by the Payment Due Date shown on that billing statement.

(2) Old cash advances previously posted during a billing cycle which you pay the New Balance shown on the billing statement covering that billing cycle by the Payment Due Date shown on that billing statement.

**9.** All forms of cash advances, including the use of Discover Card Checks, regardless of the purpose for which used, shall be subject to the Finance Charges as set forth above.

---

**14. MINIMUM FINANCE CHARGE.** We will charge you a minimum FINANCE CHARGE of $.50 for any billing cycle in which a FINANCE CHARGE of less than $.50 would otherwise be imposed.

**15. MEMBERSHIP FEE.** If you are a resident of NORTH CAROLINA AND WISCONSIN RESIDENTS: If you are a resident of North Carolina or Wisconsin, you agree to pay us, at the beginning of your membership year in North Carolina and at the end of your membership year in North Carolina, a nonrefundable Annual Membership Fee of $15.00, posted as a cash advance. Such Annual Membership Fee is not imposed if you are a member through acceptance of a special offer from us in which case a Cardmember acceptance of a special offer from us in which case a Cardmember of the fee may be waived or remitted in accordance with the terms of such offer. You may never more than one Card per Account, but will be charged only one fee for that Account. Unless you notify us not to renew your Account, we will automatically renew your membership during each yearly cycle following the expiration month shown on the face of your Card.

**16. RETURNED CHECK CHARGE.** We will charge you a Returned Check Charge of $15.00 each time you pay us with or we guarantee a check that is returned unpaid.

**17. LATE CHARGE.** We will charge you a Late Charge of $10.00 if you fail to make a required payment within 30 days after the Payment Due Date in any month.

**18. NON-COLLECTIBILITY.** You are in default if you fail to comply with any agreement, including the failure to make a required payment when due or exceeding your line of credit. If you are in default and we refer the collection of your Account to an attorney who is not our salaried employee, you are liable for the reasonable attorney's fees and court or other collection charge you reasonable attorney's fees and court or other collection charge as is permitted by law and as are actually incurred by us.

**19. CANCELLATION.** You may cancel your Account by notifying us in writing and returning the Card to us cut in half. Of course, you will still be responsible to pay any amount you owe us according to the terms of this Agreement. We may cancel or suspend your Account at any time without notice. If we do cancel or suspend your Account, we may declare the entire balance of your Account immediately due and payable without notice. If you are in default, we have a reasonable belief that you are unable or unwilling to repay your obligations to us, we may cancel your Account.

**20. PRIVACY.** You authorize us to investigate your creditworthiness and request and verify your credit references. We also may report to credit reporting agencies and other creditors the status and payment history of your Account. We will not release this information to any other party without your prior written permission or proper legal process, unless you are in default or if you file a petition for bankruptcy, in which case we may release such information as may be required. If you ask us to assist us in enforcing our rights under this Agreement, we may include your name and address and other identifying information on lists of Cardmembers furnished to companies selling products or services that may be of interest to you. Our Supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to our cardmembers.

**21. CREDIT AUTHORIZATIONS.** Certain purchases and cash advances will require our authorization prior to completion of the transaction. In some cases, you may be asked to provide identification. If our authorization system is not working, we may not be able to authorize a transaction, even if you have sufficient available credit. We will not be liable to you if any of these events happen.

**22. CHANGE OF TERMS.** We may change any term or part of this Agreement, including finance charge rates, the finance charge rate in assessed, by any balance to which the finance charge rate is assessed, by

---

sending you a written notice at least 30 days before the change is to become effective. Any such change will apply to any outstanding balance of your Account in effect on the effective date of the change and to any new charges made after that date. If you do not agree to the change, you must notify us in writing within 30 days after the mailing of the notice of change in the address provided in the notice of change, in which case your Account will be closed and you must pay us the balance you owe us under the existing terms of the Agreement. Otherwise, you will have agreed to the changes in the notice. Use of the Card after the effective date of the change shall be deemed acceptance of the new terms as of such effective date, even if you previously notified us that you did not agree to the change.

**23. CHANGE OF ADDRESS.** If you tell us your address you must notify us of your new address within 15 days.

**24. ASSIGNMENT OF ACCOUNT.** We may sell, assign or transfer your Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account without first obtaining our prior written consent.

**25. GOVERNING LAW.** This Agreement will be governed by the laws of the State of Delaware and applicable federal laws. If any part of this Agreement becomes unenforceable, it will not make any other part unenforceable.

Greenwood Trust Company
DISCOVER CARD

_signature_
Vice President

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT    07M1-160046

HBLC, Inc., final transfer
of Discover Card                                    Case No._____

                        Plaintiff,

v.                                                  Claimed: $ 13517.40 plus costs

TINA CELESTE,

                        Defendant.                  Return Date: July 27, 2007

VERIFIED COMPLAINT

Now comes Plaintiff, HBLC, Inc., final transferee of Discover Card and claims as follows:

    1.    That the Plaintiff is a corporation authorized to transact business in the State of
Illinois and is the owner of this account having purchased said account in the regular course of business
in good faith and for value.

    2.    That Defendant(s) opened an Disocver Card credit card account (account number
601100742520082) and made purchases and charged same to the account but has failed to make monthly
payments called for on the account.  A true and correct copy of the Cardmember Agreement is attached
hereto as Exhibit "2".

    3.    That pursuant to the Affidavit attached hereto as Exhibit "1" there is due to Plaintiff
from the Defendant, as of the filing date of this complaint, the sum of $13517.40 (which includes $350 as
reasonable attorneys' fees as permitted by the Cardmember Agreement) plus court costs as permitted by the
Cardmember Agreement and as permitted by statute plus post-judgment interest at the rate allowed by law
until the debt is paid.

    4.    That Defendant(s) is in default on the account and has refused to pay the balance due
after demand by Plaintiff or its Assignor.

    WHEREFORE, Plaintiff, HBLC, Inc., prays for judgment against Defendant, TINA CELESTE, in the
amount of $13517.40 (which includes reasonable attorneys' fees of $350) plus court costs plus
post-judgment interest at the rate allowed by law on the unpaid balance.

                                    Steven J. Fink & Assoc., P.C.


                                    By:_____


Steven J. Fink & Assoc., P.C.
Attorney for the Plaintiff
25 E. Washington Ste. 1233(a)
Chicago, IL 60602
(312) 659-2024
Attorney's No. 52383


Federal law requires me to advise you that we are attempting to collect a debt and any information
obtained from you will be used for that purpose.  Unless you dispute the validity of this debt, or any
portion of it, within 30 days after receipt of this notice, in writing, the debt will be assumed to valid.
If you do dispute the debt's validity, we will provide verification or a copy of any Judgment taken
against you and the and address of the original creditor if different from the current creditor.

AFFIDAVIT OF INDEBTEDNESS

Cynthia Rogers, after having been first duly sworn, on oath states that if called to testify in this matter she would testify to the following facts:

1.   That she is an agent of Plaintiff, HBLC, Inc.. Upon information provided to her by the transferor of the debt, she is familiar with certain facts surrounding the debt forming the basis of the herein Complaint, including but not limited to the amount due.

2.   That Plaintiff is the owner of the account forming the basis of the herein Complaint having purchased said account in the regular course of business in good faith and for value, and as such, Plaintiff is the current holder of this debt and the party to whom the Defendant, TINA CELESTE, is liable.

3.   That after all charges and just credits to this account have been given to the defendant, there remains due and owing to Plaintiff from Defendant, TINA CELESTE, the sum of $13517.40 (which includes $350 as reasonable attorney fees) plus court costs and post-judgment interest at the rate allowed by law.

_____
Cynthia Rogers

Subscribed and sworn to before me
on this the 8th day of June, 2007

_____
Notary Public

OFFICIAL SEAL
BRIAN ROGERS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/13/11

Base Card

# CARDMEMBER AGREEMENT

Please read this Agreement carefully before using the Discover Card. It contains the terms and conditions of the Discover Card Account, some of which may have been changed from earlier materials provided to you. In the event of any differences, this Agreement shall control.

1. **AGREEMENT TERMS.** The word Card means any one or more Discover Cards issued to you or to an authorized user. The word Account means your Discover Card Account. The words you, your, or yours mean you, the cardmember, and any person or persons who are also contractually liable under this Agreement. The words we, us and our mean Greenwood Trust Company, a Delaware bank.

2. **ACCEPTANCE OF AGREEMENT.** The use of your Account or the Card by you or anyone whom you authorize or permit to use your Account or the Card means you accept this Agreement. However, only if you are a resident of North Carolina or Wisconsin, the retention of the Card provided for in Section 15 will be charged to your Account regardless of whether you use your Account or the Card, unless you have cancelled your Account as provided for in Section 15 within 30 days of receipt of your Card.

3. **USE OF YOUR ACCOUNT AND THE CARD.** You agree that you will only use your Account or the Card for personal, family, household and non-variable purposes. Your Account or the Card may not be used for business or commercial purposes or to obtain loans to purchase, carry or trade in securities. Prior to its use, each Card must be signed by the person to whom it is issued. Your Account and the Card may be used for the following purposes:

   • To purchase or lease goods or services from participating establishments.

   • To obtain cash advances by means of automated teller machines or checks in accordance with such additional terms and conditions as may be imposed from time to time.

   • To guarantee personal checks at participating establishments subject to cash availability and such conditions as the participating establishments may impose. Any guaranteed personal check returned unpaid for which we become liable shall be treated as a cash advance and a returned check and shall be subject to a Returned Check Charge.

   • To guarantee hotel reservations at participating establishments. You will be liable for guaranteed reservations that are not cancelled prior to 6 p.m. of the date of arrival of such other time as the establishment may impose.

   We are not responsible for the refusal of anyone to accept or honor the Card. The Card is our property. You must return it to us or our agent upon request.

4. **AUTHORIZED CARD USERS.** If you want to cancel the authorized or permitted use of your Account or the Card by another person, you must notify us in writing and recover, cut in half and return to us any Card on such person's possession.

5. **LIABILITY FOR UNAUTHORIZED USE.** If the Card is lost or stolen, or if you think that someone is using your Account or the Card without your permission, notify us immediately. You can notify us by telephoning us at 1-800-DISCOVER, or by writing us at DISCOVER CARD, P.O. Box 33507-NAT'L REV. 2/90

JUN 17 '96 09:18PM NOVUS SERVICE

15156, Wilmington, DE 19886-002. You may be liable for the unauthorized use of your Account or the Card. You will not be liable for unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability will not exceed $50.00.

6. **LINE OF CREDIT.** We will advise you of your line of credit. We may increase or decrease your line of credit from time to time. If you exceed or attempt to exceed your line of credit, you will be in default.

7. **PROMISE TO PAY.** You agree to pay us in U.S. Dollars for all purchases and cash advances, including applicable Finance Charges and other charges or fees, incurred by you or anyone you authorize or permit to use your Account or the Card, even if you do not notify us that others are using your Account or the Card. We will convert purchases and cash advances made in a foreign currency to U.S. Dollars at the rate existing as described below. We pay you or charge your Account our cost to convert your payment to U.S. Dollars. All checks must be drawn on funds on deposit in the U.S. If your Account is a joint Account, each of you agrees to be liable individually and jointly for the entire amount owed on your Account.

   We can accept late payments or partial payments or checks and money orders marked "payment in full" without losing any of our rights under this Agreement.

8. **MONTHLY BILLING STATEMENT.** We will send you a billing statement after each monthly billing cycle in which you have a debit or credit balance in excess of $1.00. The billing statement will show all purchases, cash advances, Finance Charges and other charges or fees and all payments or other credits posted to your Account during the billing cycle. It will show your New Balance, Minimum Payment Due and Payment Due Date. Purchases will be identified by the amount and date of the transaction, the date of posting to your Account, the seller's name and the city and state of foreign country where the transaction took place. Cash advances will be identified by the amount of the transaction, the date of the transaction (either the date the cash advance is obtained or the date of the credit document) and the date of posting to your Account.

9. **MONTHLY PAYMENT OPTIONS.** You may, at any time pay the entire New Balance shown on the billing statement, but each month you must pay at least the Minimum Payment Due. All payments must be mailed or delivered to us at the address shown on your monthly billing statement or by using the envelope enclosed with such statement. All payments will be applied in the following order: Finance Charges and other charges and fees, cash advances in the order made and purchases in the order made.

10. **MINIMUM MONTHLY PAYMENT.** The Minimum Payment Due each month will be either (a) the entire New Balance shown on your billing statement if the New Balance is less than $10.00, or (b) the greater of $10.00 or an amount equal to 1/36th of the New Balance rounded to the next higher whole dollar amount. You can pay ahead. The minimum payment due for each monthly billing cycle will be reduced by the amount you have paid in excess of the Minimum Payment Due, as calculated in (a) and (b) above, in any of the three previous monthly billing cycles, less any portion of that excess already used to reduce payments. However, there will be no reduction if you have exceeded your line of credit or if you have paid the entire New Balance shown on your billing statement.

11. **FAILURE TO MAKE MINIMUM PAYMENT.** If you do not make at least the Minimum Payment Due by the Payment Due Date each month, you will be in default.

12. **CREDIT BALANCES.** We will refund any credit balance within seven business days from receipt of your written request. If you do not request a refund, we will automatically refund credit balances greater than $1.00 which will remain in your Account after two billing cycles.

13. **FINANCE CHARGES.** We will impose Finance Charges as follows:

    A. A Finance Charge is imposed on purchases (except as referred to in paragraph C below) from the date of posting to your Account to the date of repayment.

    B. **For each billing cycle:**

    **Purchases**

    (1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Purchases is the sum of the daily unpaid balances of purchases on each day of the billing cycle covered by your current billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting from the sum of unpaid purchases applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case.

    (2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Purchases is the sum of the unpaid balances of purchases on each day of the billing cycle covered by your last billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

    (3) We add the amounts determined under (1) and (2) to obtain the Finance Charge on purchases.

    C. A Finance Charge is not imposed on:

    (1) New purchases posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or such New Balance was zero and (b) you pay the New Balance shown on the billing statement covering the new purchases by the Payment Due Date shown on that billing statement.

    (2) Old purchases previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

Case 1:08-cv-02718    Document 9-3    Filed 05/20/2008    Page 23 of 24

P. 3

8. For each billing cycle:

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Cash Advances. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.58% (which corresponds to an ANNUAL PERCENTAGE RATE of 19%). The Average Daily Balance of Cash Advances is the sum of the daily unpaid balances of Cash Advances on each day of this billing cycle covered by your statement divided by the number of days in the billing cycle. Unpaid balances are determined by deducting payments and credits applied against unpaid balances and adding any unpaid finance charges. In each case, as of the date posted to your Account by adding new cash advances as of the date of the transaction.

(2) We also charge a one-time FINANCE CHARGE for cash advances equal to 2.5% of the amount of each new cash advance, with a minimum FINANCE CHARGE of $2.00 and a maximum FINANCE CHARGE of $10.00 (except for residents of Maine, where the charge for each cash advance will be 2.5% of each cash advance with a maximum FINANCE CHARGE of $10.00). This charge may result in an ANNUAL PERCENTAGE RATE for cash advances which is higher than the nominal ANNUAL PERCENTAGE RATE.

We add the amounts determined under (1), (2) and (3) to obtain the Finance Charge on Cash Advances.

C. A Finance Charge (other than the one-time Finance Charge in subparagraph B(2) above) is not imposed on:
   (1) New cash advances posted during a billing cycle if you pay the New Balance shown on the billing statement, covering the preceding billing cycle in full by the Payment Due Date on that billing statement or such New Balance was zero; and (b) you pay cash advances by the Payment Due Date, and (b) you pay the New Balance shown on the billing statement itemizing the new cash advances by the Payment Due Date shown on that statement.

D. At times of cash advances, including the one-time Finance Charge, regardless of the purpose for which used, shall be subject to the Finance Charges as set forth above.

14. MINIMUM FINANCE CHARGE. We will charge you a minimum FINANCE CHARGE of $.50 on any billing cycle in which we impose a FINANCE CHARGE of less than $.50.

15. ANNUAL MEMBERSHIP FEE. ONLY NORTH CAROLINA AND WISCONSIN RESIDENTS. If you are a resident of the membership year in North Carolina and you are, at the beginning of your membership year in North Carolina and you are a resident of North Carolina or Wisconsin, a homeowner about membership fee we will not bill you unless you become a Cardmember through acceptance of a special offer from us, in which case, all or a portion of the fee may be waived or retained in accordance with the terms of such offer. You may notify us within 30 days after it is charged only on the fee for that Account. Unless you notify us not to renew your Account during the time period following the time the fee is charged during the billing cycle following the month shown on the face of your Card.

16. RETURNED CHECK CHARGE. We will charge you a Returned Check Charge of $15.00 each time you pay us with or we guarantee a check that is returned unpaid.

17. LATE CHARGE. We will charge you a Late Charge of $10.00 if you fail to make a required payment within 25 days after the Payment Due Date.

18. DEFAULT-COLLECTION COSTS. You are in default if you fail to comply with the terms of this Agreement, including failing to make a required payment when due or exceeding your line of credit. If you are in default and we refer the collection of your Account to an attorney, we may charge you reasonable attorneys' fees and court of collection as is permitted by law and as actually incurred by us.

19. CANCELLATION. You may cancel your Account by notifying us in writing and returning the Card to us cut in half. Of course, you will be responsible for any amount you owe us according to the terms of this Agreement. We may cancel or suspend your Account at any time without notice. If we do cancel or suspend your Account, we may declare the entire balance of your Account immediately due and payable without notice. If you are in default, we have a reasonable belief that you are unable or unwilling to pay your obligations to us, or if you are deceased or bankrupt, you owe everything you owe us.

20. PRIVACY. We may investigate your credit, employment and income records and verify your credit references. We also may report to credit reporting agencies and other creditors the status and payment history of your Account. We will not release this information to any other party without your prior written permission. In addition, if you are in default or if you file a petition in bankruptcy, of which case we may release information regarding your account to third parties related to us to assist us in enforcing our rights under this Agreement. However, we may include your name and address and other identifying information concerning our Cardmembers to companies that provide products or services that may be of interest to you. Our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to our cardmembers.

21. CREDIT AUTHORIZATIONS. Certain purchases and cash advances will require our authorization prior to completion of the transaction. In some cases, you may be asked to provide identification. If our authorization system is not working, we may not be able to authorize a transaction, even if you have sufficient available credit. We will not be liable to you if any of these events happen.

22. CHANGE OF TERMS. We may change any term or part of this Agreement, including finance charge rates, or the finance charge rate or any balance upon which this finance charge is assessed, by

sending you a written notice at least 30 days before the time to take effect. We may apply any such change to the outstanding balance of your Account on the effective date and to new charges made after that date. If you do not agree to the change, you must notify us in writing within 30 days after the mailing of the notice of change in which case your Account will be closed and you must pay us the balance that you owe us under the existing terms at the end of your membership year. Otherwise, you will have agreed to the changes in the notice. Use of the Card after the effective date of the change shall be deemed acceptance of the new terms, even if you previously notified us that you did not agree to the change.

23. CHANGE OF ADDRESS. If you change your address you must notify us of your new address within 15 days.

24. ASSIGNMENT OF ACCOUNT. We may sell, assign or transfer your Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account without first obtaining our prior written consent.

25. GOVERNING LAW. This Agreement will be governed by the laws of the State of Delaware and applicable federal laws. If any part of this Agreement becomes unenforceable, it will not make any other part unenforceable.

Greenwood Trust Company
DISCOVER CARD

Vice President

# EXHIBIT 6

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CARLOS PRIETO, individually and on )
behalf of a class defined herein, )
                                 )
                          )     08 C 2718
               Plaintiff, )
                          )     Judge Guzman
       v. )
                          )     Magistrate Judge Schenkier
HBLC, INC.; STEVEN J. FINK; and )
STEVEN J. FINK & ASSOCIATES, P.C., )
                                   )
           Defendants )

### AFFIDAVIT OF CARLOS PRIETO

COUNTY OF COOK           )
                            )   SS
STATE OF ILLINOIS         )

I, Carlos Prieto, being duly sworn, deposes and states as follows:

1.      I am over the age of 18, and a resident of the United States of America, State of Illinois, County of Cook.

2.      I have personal knowledge of all of the facts set forth in this Affidavit and am competent to testify to the matters set forth in this Affidavit.

3.      I reviewed the Complaint in this matter with my attorney, Curtis Warner, and approved of its filing.

4.      I am aware that I have brought this case on behalf of a class of other persons in Illinois where Defendants sued them in state court filing a copy of the same purported Discover Cardmember Agreement stating that it was a true and correct copy of the Cardmember Agreement, when in fact the statement is not true.

5.    I am aware that I am seeking statutory damages under the Fair Debt Collection Practices Act on behalf of a class of other persons in Illinois.

6.    I have been in contact with my attorney Curtis Warner regarding this matter and have received and reviewed documents he has sent me related to this case.

FURTHER AFFIANT SAYETH NOT.

_____
Carlos Prieto

Subscribed and sworn before me this
20th day of May 2008.

_____
Notary Public

OFFICIAL SEAL
MARIA MERCEDES BADIA-TAVAS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/21/09

My commission expires on    7/21/2009

**EXHIBIT 7**

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CARLOS PRIETO, individually and on behalf of a class defined herein, | ) ) ) | |
| | ) | 08 C 2718 |
| Plaintiff, | ) ) | |
| | ) | Judge Guzman |
| v. | ) ) | |
| | ) | Magistrate Judge Schenkier |
| HBLC, INC.; STEVEN J. FINK; and STEVEN J. FINK & ASSOCIATES, P.C., | ) ) ) | |
| Defendants | ) ) | |

**DECLARATION OF CURTIS C. WARNER**

I, Curtis C. Warner declare that the following statements are true:

1.      I received my undergraduate degree from Grand Valley State University in 1993, my Masters Degree in Education from Wayne State University in 1998, and my Juris Doctorate from Michigan State University – Detroit College of Law (now Michigan State University – College of Law), *cum laude*, in 2002.  During law school I was the Editor-in-Chief for the Michigan State University – Detroit College of Law *Journal of Medicine and Law* and interned with the United States Army Judge Advocate General's Office at Fort Carson in Colorado.

2.      After taking the Michigan bar, I began working as an associate attorney at Collins & Blaha, P.C., an employment boutique law firm that represents various school districts in Michigan.

3.      Beginning in 2003, I worked as a staff attorney at Michigan Migrant Legal Assistance Project, Inc., representing migrant farm workers in various labor and consumer disputes before administrative agencies and federal and state courts.  During that time I

represented a client before the Michigan Supreme Court. *Lopez v. Hardy's Holsteins LLC,* 2005

MIWCLR (LRP) LEXIS 151 (Mich. WCAC, June 24, 2005) *sub nom. Lopez v. Worker's*

*Compensation Appellate Comm'n.,* No. 263842, 2005 Mich. App. LEXIS 3312 (Mich. App.,

Sept. 23, 2005); 704 N.W. 2d 709, 474 Mich. 893 (Mich. 2005).

4.      While working at Michigan Migrant Legal Assistance Project, Inc., I

served as an associate member on the State Bar's Committee on Legal Aid, was a member of the

Michigan Pesticide Action Committee, and participated in committee meetings with state

legislators and other members of the state bar focusing on passing legislation to end the

unlicensed practice of law by "notarios."

5.      In 2005, I joined the consumer class action law firm of Edelman Combs

Latturner & Goodwin LLC in Chicago, Illinois ("Edelman Combs"). While at Edelman Combs,

I worked as an associate attorney primarily responsible for the prosecution of consumer class

actions brought under the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, the

Illinois Consumer Fraud Act and the Illinois Security Deposit Act.

6.      In 2006, I started Warner Law Firm, LLC, and am the principal member of

the firm which represents consumers primarily in the federal courts of Illinois and Michigan and

in the Circuit Court for Cook County, Illinois.

7.      I am a member of both the Michigan and Illinois bars and am admitted to

practice before the following Courts: Seventh Circuit Court of Appeals, Sixth Circuit Court of

Appeals, Northern District of Illinois, Central District of Illinois, Southern District of Illinois,

Eastern District of Michigan, Western District of Michigan, Northern District of Indiana and the

Southern District of Indiana. I have also been permitted to practice *pro hac vice* in the Eastern

District of Virginia and Monterey County, California.

8.    I am a member of the Trial Bar of the Northern District of Illinois, have served the Court as appointed counsel and have performed *pro bono* work the Legal Aid Foundation of Metropolitan Chicago.  I am a member of the National Association of Consumer Advocates and the Chicago Bar Association.

9.    I have experience as the primary attorney prosecuting, or was materially involved at some point in the litigation of the following matters that were certified as a class action or were settled on a class basis while at Edelman Combs:  *Cavin v. Home Loan Center, Inc.*, 236 F.R.D. 387 (N.D. Ill. 2006); *Larson v. Capital One Auto Finance*, Inc. 06 C 1174, 2007 U.S. Dist. LEXIS 15620 (N.D. Ill. March 5, 2007);  *Thomas v. Capital One Auto Finance, Inc.*, 06 C 643, 2006 U.S. Dist. LEXIS 81358 (N.D. Ill. Oct. 24, 2006);  *Kudlicki v. Capital One Auto Finance, Inc.*, 06 C 1918, 2006 U.S. Dist. LEXIS 81103 (N.D. Ill. Nov. 2, 2006);  *Pavone v. Aegis Lending Corp.,* 05 C 5129, 2006 U.S. Dist. LEXIS 62157 (N.D. Ill. Aug. 31, 2006); *Thomas v. Arrow Financial Services, LLC*, 05 C 5699, (N.D. Ill.) ($500 or 20% of the outstanding debt, whichever is less, to his or her outstanding debt; $100 or a *pro rata* share of $50,000 whichever is less class settlement established.  Settled in principal on class basis prior to my departure from Edelman Combs);  *Holt v. Wells Fargo Financial Acceptance America, Inc.*, 06 C 1949 (N.D. Ill) combined with *Perez v. Z Frank LLC,* 06 C 45 (N.D. Ill.) ($438,200 class settlement fund established. Settled in principal on class basis prior to my departure from Edelman Combs); *Smith v. Rockenbach Chevrolet Sales, Inc*. 05 C 5454 (N.D. Ill.) ($116,841.24 settlement fund established); *Cavin v. Bill Jacobs Joliet, L.L.C.,* 05 C 5025 (N.D. Ill.) ($96,658.72 class settlement fund established.  Settled in principal with Defendant Consumer Portfolio Services on a class basis prior to my departure from Edelman Combs);  *Miller v. Ocwen Federal Bank FSB*, 05 C 308 (N.D. Ill.) ($100,000 class settlement fund established);

3

*Asher v. Van Ru Credit Corp.,* 04 C 5947 (N.D. Ill) ($40,000 class settlement fund established)*;*

*Thruman v. National Financial Systems, Inc.* 1:05-cv-00315-WLT-JDT (S.D. Ind.) ($6,400 class

settlement fund established); *Hale v. East Lake Development & Mgt.*, 2000 CH 16139 (Cook

County, Illinois) ($436,875 settlement fund established for two classes);  *Fox v. Marquette*

*Management, Inc.* 2002 CH 12449 (Cook County, Illinois) ($150,000 class settlement fund

established.  Settled in principal on class basis prior to my departure from Edelman Combs);

*Dickson v. West Koke Mills Village Partnership*, 98 L 57 (Sangamon County, Illinois) ($3,625

class settlement fund established).

        10.       Additionally, I was the primary brief writer on behalf of the plaintiff in the

following cases: *Phinn v. Capital One Finance, Inc.*, 502 F. Supp. 2d 625 (E.D. Mich. 2007);

*Cavin v. Home Loan Center, Inc.,* 236 F.R.D. 387 (N.D. Ill. 2006); *Hendricks v. DSW Shoe*

*Warehouse, Inc.,* 444 F. Supp. 2d 775 (W.D. Mich. 2006); *Glover v. Mary Jane M. Elliot, P.C.*,

Case No. 1:07-cv-648, 2007 U.S. Dist. LEXIS 73605 (W.D. Mich. Oct. 2, 2007); *Chavez v.*

*Bowman, Heintz, Bocia & Vician*, 07 C 670, 2007 U.S. Dist. LEXIS 61936 (N.D. Ill. Aug. 22,

2007); *Cunningham v. Van Ru Credit Corp.*, 06 C 1042, 2006 WL 3289775 (E.D Mich. Nov. 12,

2006);  *Kudlicki v. Capital One Auto Finance,* 06 C 1918, 2006 WL 3210492 (N.D. Ill. Nov. 2,

2006);  *Johnston v. Arrow Financial Services, LLC.,* 06 C 13, 2006 WL 2710662 (N.D. Ill. Sept.

15, 2006);  *Pavone v. Aegis Lending Corp.,* 05 C 5129, 2006 WL 2536632 (N.D. Ill. Aug. 31,

2006);  *Cunningham v. Van Ru Credit Corp.,* 06 C 1042, 2006 WL 2056576 (E.D. Mich. July 21,

2006);  *Richardson v. DSW Inc.,* 05 C 4599, 2006 WL 163167 (N.D. Ill. Jan. 18, 2006);

*Richardson v. DSW Inc.*, 05 C 4599, 2005 WL 2978755 (N.D. Ill. Nov. 3, 2005);  *Lopez v.*

*Hardy's Holsteins LLC,* 2005 MIWCLR (LRP) LEXIS 151 (Mich. WCAC, June 24, 2005) *sub*

*nom. Lopez v. Worker's Compensation Appellate Comm'n.,* No. 263842, 2005 Mich. App.

LEXIS 3312 (Mich. App. Sept. 23, 2005); 704 N.W. 2d 709, 474 Mich. 893 (Mich. 2005).

           11.     The Warner Law Firm, LLC has recently been approved as class counsel

in *Horton v. IQ Telecom*, 07 C 2478, Dkt. 29, Final Approval Order, (N.D. Ill. May 5, 2008).

           I, Curtis C. Warner declare under penalty of perjury that the foregoing is true and

correct.

Executed on <u>May 19, 2008</u>      <u>s/ Curtis C. Warner</u>
                                     Curtis C. Warner