**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CARLOS PRIETO, individually and on behalf of a class defined herein, | ) ) ) | 08 C 2718 |
| Plaintiff, | ) ) | Judge Guzman |
| v. | ) ) | Magistrate Judge Schenkier |
| HBLC, INC.; STEVEN J. FINK; and STEVEN J. FINK & ASSOCIATES, P.C., | ) ) ) | |
| Defendants | ) | |

NOW COMES, Plaintiff Carlos Prieto ("Plaintiff"), by and though his counsel, and moves this Honorable Court for leave to file an Amended Complaint, attached hereto as Appendix 1, adding additional Plaintiffs Natalie Childs and James Glass (proposed "additional Plaintiffs"), and additional claims for Defendants' malicious prosecution of time barred debts against Plaintiff and the proposed additional Plaintiffs.

In support of this motion, Plaintiff states as follows:

1.      Rule 15(a) provides that after a responsive pleading is filed, a party may amend his pleading, "only by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires." FED. R CIV. P. 15(a); *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 01 C 4366, 2003 U.S. Dist. LEXIS 2278 (N.D. Ill. Feb. 12, 2003).

2.      Rule 15(a) provides that leave to amend shall be freely given when justice so requires after a responsive pleading has been filed. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

3.      On June 19, 2008, the Fink Defendants filed their Answer to Plaintiff's Complaint.

4.     On June 27, 2008, Defendant HLBC, Inc. filed its Answer to Plaintiff's Complaint.

5.     Plaintiff seeks leave to add the additional Plaintiffs who are persons within the putative class definition.

6.     Plaintiff and the proposed additional Plaintiffs in the proposed Amended Complaint add a malicious prosecution claim against Defendants for their continued baseless prosecution of time barred debts in state court.

7.     Defendants will not be prejudiced by the addition of the additional Plaintiffs and the malicious prosecution claim at this early stage of litigation.

WHEREFORE, Plaintiff requests this Honorable Court to grant Plaintiff's motion for leave to file the Amended Complaint attached hereto as Appendix 1.

Respectfully submitted,

s/ Curtis C. Warner
    Curtis C. Warner

Curtis C. Warner
Warner Law Firm, LLC
155 N. Michigan Avenue, Suite 737
Chicago, Illinois 60601
(312) 238-9820 (TEL)

# APPENDIX 1

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CARLOS PRIETO, NATALIE CHILDS, | ) | |
| and JAMES GLASS individually and on | ) | |
| behalf of a class defined herein, | ) | |
| | ) | 08 C 2718 |
| Plaintiff, | ) | |
| | ) | Judge Guzman |
| v. | ) | |
| | ) | Magistrate Judge Schenkier |
| HBLC, INC.; STEVEN J. FINK; and | ) | |
| STEVEN J. FINK & ASSOCIATES, P.C., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants | ) | |

**CLASS ACTION - AMENDED COMPLAINT**

**INTRODUCTION**

1.      Plaintiffs Carlos Prieto ("Prieto"), Natalie Childs ("Childs") and James Glass ("Glass") collectively ("Plaintiffs"), bring this class action to secure redress against an unlawful credit and collection practice engaged in by Defendant HBLC, Inc. and Defendants Steven J. Fink and Steven J. Fink & Associates, P.C. ("Fink") collectively ("Defendants") that violates the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*., ("FDCPA") and state law.

2.      The FDCPA was enacted, "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e)**.**

**JURISDICTION AND VENUE**

3.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, 15 U.S.C. §1692k (FDCPA).

1

4.    This Court also has supplemental jurisdiction over Plaintiffs' state law claim for malicious prosecution under 28 U.S.C. § 1367 as the conduct complained of arises out of a common nucleus of operative facts, *See United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), and having only one jury decide the same factual issues, "'best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine.'" *See City of Chicago v. International College of Surgeons* 522 U.S. 156, 172-73 (1997) (*quoting Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)).

5.    Venue and personal jurisdiction over Defendants in this District is proper because:

  a.    Plaintiffs are residents of Cook County, Illinois which is within in the District;

  b.    HBLC, Inc. transacts business in the District through litigation against consumers who are located within the District;

  c.    Fink maintains an office and transacts business in the District; and

  d.    Defendants' collection activities occurred within the District.

## PARTIES

6.    Plaintiffs are individuals who reside in Cook County, Illinois.

7.    HBLC, Inc. is an Illinois Corporation.  Its registered agent and offices are Jennifer L. McAllister, 421 N. Northwest Hwy., Suite 201, Barrington, Illinois 60010.  Lawrence Splig ("Splig") is the President and Secretary of HBLC, Inc., has an equity interest in the company and lists his address with the Illinois Secretary of State as being that of Jennifer L. McAllister ("McAlister"), 421 N. Northwest Hwy., Suite 201, Barrington, Illinois 60010. According to the Illinois Attorney Registration & Disciplinary Commission's website Jennifer L.

McAllister is an attorney at Jennifer L. McAllister, P.C.  Splig and McAllister are husband and wife.

8.      HBLC, Inc.'s business activities include the acquisition of assets which are consumer debt that are in default at the time of HBLC Inc.'s acquisition.

9.      HBLC, Inc. is a debt collector as defined in 15 U.S.C. § 1692a(6) in regard to its conduct complained of herein.

10.     Defendant Steven J. Fink & Associates, P.C. is an Illinois Corporation.  Its office and registered agent is Steven J Fink, 25 E. Washington, Suite 1233, Chicago, Illinois 60602.

11.     Defendant Steven J. Fink & Associates, P.C.'s practice involves the regular collection of debts owed to others.

12.     Defendant Steven J. Fink & Associates, P.C. is a debt collector as defined in 15 U.S.C. § 1692a(6) in regard to its conduct complained of herein.

13.     Defendant Steven J. Fink is an individual attorney whose practice involves the regular collection of debts owed to others.

14.     Defendant Steven J. Fink is a debt collector as defined in 15 U.S.C. § 1692a(6) in regard to its conduct complained of herein.

15.     Under Illinois law, Steven J. Fink is personally responsible for the acts and omissions of his professional corporation that he directs or in which he participates.

### FACTS RELATED TO CLASS MATTERS

16.     When HLBC, Inc. sues as "HBLC, Inc., final transfer of Discover", HBLC, Inc. during a period beginning May 9, 2007 and ending May 29, 2008, it does not obtain

any credit card agreement that was signed by the consumer prior to the suit being filed against a consumer.

17. During a period beginning May 9, 2007 and ending May 29, 2008, a copy of a copy of Exhibit 1 or Exhibit 2, attached hereto, is attached to each state court complaint where HBLC, Inc. sues as "HBLC, Inc., final transfer of Discover".

18. On information and belief, during a period beginning May 9, 2007 and ending May 29, 2008, if a consumer or consumer's attorney appeared in state court to defend the lawsuit where HLBC, Inc. filed suit as "HBLC, Inc., final transfer of Discover", HLBC, Inc. authorized Fink to use at least one subpoena in an attempt to obtain documents that relate to the debt HBLC, Inc. filed suit upon.

19. In each and every complaint when HBLC, Inc. sues as "HBLC, Inc., final transfer of Discover" during a period beginning May 9, 2007 and ending May 29, 2008 in Cook County, Illinois, is attached a copy of the same "Cardmember Agreement", Exhibit 1 or Exhibit 2, as an exhibit to the state court complaint.

20. Exhibit 1, or Exhibit 2 respectively, is alleged to be, "A true copy of the Cardmember Agreement" in each and every state court complaint when HBLC, Inc. sues as "HBLC, Inc., final transfer of Discover" during a period beginning May 9, 2007 and ending May 29, 2008 in Cook County, Illinois,.

21. The document Exhibit 1 is a copy of a document that on its face was revised on "2/90" (nineteen-hundred ninety).

22. The document Exhibit 1 is a copy of a document that on its face has a nineteen-hundred ninety-six fax header "JAN 17 '96 09:18AM NOVUS SERVICE".

23.     On or about the end of February 2008, the fax header "JAN 17 '96 09:18AM NOVUS SERVICE" was cut off and the two-page "Cardmember Agreement" was reduced into a one-page exhibit and has been used when HBLC, Inc. sues as the purported, "final transfer of Discover".  A copy of the one-page "Cardmember Agreement" that has been attached to some of HLBC's state court complaints is attached hereto as Exhibit 2.

24.     Fink filed suit in HBLC Inc.'s name against Prieto, HBLC, Inc., final transfer of Discover v. Carlos Prieto, 08 M1 116396, Circuit Court of Cook County, Illinois, Municipal Division, First District.  Attached hereto as Exhibit 3 is a copy of the state court complaint filed against Prieto.

25.     The exhibit attached to the state court complaint in HBLC, Inc., final transfer of Discover v. Carlos Prieto, 08 M1 116396, Circuit Court of Cook County, Illinois, Municipal Division, First District is not Prieto's credit card agreement.

26.     Fink filed suit in HBLC Inc.'s name against Childs, HBLC, Inc., final transfer of Discover v. Natalie Childs, 08 M1 116393, Circuit Court of Cook County, Illinois, Municipal Division, First District.  Attached hereto as Exhibit 4 is a copy of the state court complaint with the affidavit and exhibit filed against Childs.

27.     The exhibit attached to the state court complaint in HBLC, Inc., final transfer of Discover v. Natalie Childs, 08 M1 116393, Circuit Court of Cook County, Illinois, Municipal Division, First District is not Child's credit card agreement.

28.     Fink filed suit in HBLC Inc.'s name against Glass, HBLC, Inc., final transfer of Discover v. James Glass, 07 M1 160024, Circuit Court of Cook County, Illinois, Municipal Division, First District.  Attached hereto as Exhibit 5 is a copy of the state court complaint with the affidavit and exhibit filed against Glass.

29.     The exhibit attached to the state court complaint in <u>HBLC, Inc., final transfer of Discover v. James Glass</u>, 07 M1 160024, Circuit Court of Cook County, Illinois, Municipal Division, First District is not Glass' credit card agreement.

30.     Each of HLBC, Inc.'s state court complaint against Plaintiffs alleged, "That Defendant(s) opened a DISCOVER credit card . . . . A true and correct copy of the Cardmember Agreement is attached hereto . . . ."

31.     On information and belief, when HBLC, Inc., filed suit as the "final transfer of Discover" the state court complaints during a period beginning May 9, 2007 and ending May 29, 2008, contain a copy of the same copy of the purported, "Cardmember Agreement", <u>Exhibit 1</u>or <u>Exhibit 2</u>.

32.     On information and belief, when HBLC, Inc., filed suit as the "final transfer of Discover" the state court complaints during a period beginning May 9, 2007 and ending May 29, 2008, each state court complaint contains the allegation, "That Defendant(s) opened a DISCOVER credit card . . . . A true and correct copy of the Cardmember Agreement is attached hereto . . . ."

33.     From a time period during a period beginning May 9, 2007 and ending May 29, 2008, Fink on behalf of HBLC, Inc., as the "final transfer of Discover" filed the following cases in Circuit Court of Cook County, Illinois, Municipal Division, First District:

a.     2007 M1 159999
b.     2007 M1 160000
c.     2007 M1 160024
d.     2007 M1 160033
e.     2007 M1 160034
f.     2007 M1 160035
g.     2007 M1 160036
h.     2007 M1 160037
i.     2007 M1 160038
j.     2007 M1 160039

k.    2007 M1 160040
l.    2007 M1 160041
m.    2007 M1 160042
n.    2007 M1 160043
o.    2007 M1 160044
p.    2007 M1 160045
q.    2007 M1 160046
r.    2007 M1 160047
s.    2007 M1 160048
t.    2008 M1 116390
u.    2008 M1 116391
v.    2008 M1 116392
w.    2008 M1 116393
x.    2008 M1 116394
y.    2008 M1 116395
z.    2008 M1 116396
aa.   2008 M1 116397
bb.   2008 M1 120322
cc.   2008 M1 120325
dd.   2008 M1 120328
ee.   2008 M1 120331
ff.   2008 M1 120333
gg.   2008 M1 120335
hh.   2008 M1 120338
ii.   2008 M1 120340
jj.   2008 M1 120343
kk.   2008 M1 120345
ll.   2008 M1 120347
mm.   2008 M1 120349
nn.   2008 M1 120350
oo.   2008 M1 120352
pp.   2008 M1 120358

34.    On information and belief all of the state court complaints stated in the paragraph above contain the signature of Steven J. Fink.

## FACTS RELATED TO PLAINTIFFS' INDIVIDUAL CLAIMS

35.    The debt sought to be collected from Prieto was purportedly incurred primarily for personal, family or household purposes and therefore is a "debt" within the definition set forth in 15 U.S.C. § 1692a(5).

36.    The debt sought to be collected from Childs was purportedly incurred primarily for personal, family or household purposes and therefore is a "debt" within the definition set forth in 15 U.S.C. § 1692a(5).

37.    The debt sought to be collected from Glass was purportedly incurred primarily for personal, family or household purposes and therefore is a "debt" within the definition set forth in 15 U.S.C. § 1692a(5).

38.    Prieto's charge off date on the credit card Defendants filed suit against him on occurred more than 5 years prior to the date Defendants filed suit against him.

39.    Prieto's last date of payment on the credit card Defendants filed suit against him on occurred more than 5 years prior to the date Defendants filed suit against him.

40.    Childs' charge off date on the credit card Defendants filed suit against her on occurred more than 5 years prior to the date Defendants filed suit against her.

41.    Childs' last date of payment on the credit card Defendants filed suit against him on occurred more than 5 years prior to the date Defendants filed suit against her.

42.    Glass' charge off date on the credit card Defendants filed suit against him on occurred more than 10 years prior to the date Defendants filed suit against him.

43.    Glass' last date of payment on the credit card Defendants filed suit against him on occurred more than 10 years prior to the date Defendants filed suit against him.

44.    Prieto's attorney provided notice to Defendants that Defendants had sued plaintiff on a debt that had been in default for more than five years by filing suit in federal court.

45.    Subsequent to Fink being served with the complaint in the federal court matter, Fink on behalf of HBLC, Inc. obtained a trial date in the Prieto state court matter.

46.    Childs, in a pro se motion, provided notice to Defendants that Defendants had sued Childs on a debt that had been in default for more than five years.

47.    Fink on behalf of HLBC, Inc. obtained a trial date in the Childs matter subsequent to being placed on notice that Defendants had sued Childs on a debt that had been in default for more than five years.

48.    On information and belief Fink has issued at least one subpoena in an attempt to obtain documents related to the credit card account Defendants filed suit against Childs on.

49.    Glass' attorney provided notice to Defendants that Defendants had sued Glass on a debt that had been in default for more than ten years by filing an answer to HBLC's state court complaint against Glass.

50.    On June 27, 2008, in open court in the state court matter against Glass, Steven J. Fink informed the judge that Glass' attorney had the audacity to take him to trial.

51.    On June 27, 2008, in open court in the state court matter against Glass, Steven J. Fink informed the judge that he would need several months before he could take the matter to trial as he would need to subpoena documents.

52.    On June 27, 2008, in open court in the state court matter against Glass Steven J. Fink on behalf of HLBC, Inc. obtained a trial date.

53.    Prieto has expended his own monies in defense of <u>HBLC, Inc., final transfer of Discover v. Carlos Prieto</u>, 08 M1 116396, Circuit Court of Cook County, Illinois, Municipal Division, First District.

54.    Childs has expended her own monies in defense of <u>HBLC, Inc., final transfer of Discover v. Natalie Childs</u>, 08 M1 116393, Circuit Court of Cook County, Illinois, Municipal Division, First District.

55.    Glass has expended his own monies in defense of <u>HBLC, Inc., final transfer of Discover v. James Glass</u>, 07 M1 160024, Circuit Court of Cook County, Illinois, Municipal Division, First District.

## COUNT I – FDCPA § 1692e VIOLATIONS
## CLASS ALLEGATION

56.    Plaintiff incorporates paragraphs 1-34 above.

57.    15 U.S.C § 1692e, in pertinent part, provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> * * *
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

58.    Under Illinois law, 735 ILCS 5/13-206 for there to be a "written contract" the writing must: (1) identifies the parties, (2) states the date of the agreement, (3) contains the signatures of the parties, (4) and sets forth all terms of the parties' agreement. *Brown v. Goodman*, 147 Ill. App. 3d 935, 940, 498 N.E.2d 845 (1st Dist. 1986); *Clark v. Western Union Telegraph Co.*, 141 Ill. App. 3d 174, 176, 490 N.E.2d (1st Dist. 1986); *Weaver v. Watson*, 130 Ill App. 3d 563, 567, 474 N.E.2d 759, 762 (5th Dist. 1984); *Munsterman v. Illinois Agricultural Auditing Association*, 106 Ill. App. 3d 237, 238-39, 435 N.E.2d 923, 925 (3rd Dist. 1982); *O.K. Electric Co. v. Fernandes,* 111 Ill. App. 3d 466, 444 N.E.2d 264, 267, 67 Ill. Dec. 225 (Ill. App. Ct. 1982); *Plocar v. Dunkin' Donuts of America, Inc.,* 103 Ill. App. 3d 740, 748, 431 N.E.2d

1175, 59 Ill. Dec. 418 (1st. Dist. 1981); *Baird & Warner, Inc. v. Addison Industrial Park, Inc.*, 70 Ill. App. 3d 39, 73, 387 N.E. 831, 838 (1st Dist. 1979).

59.     On information and belief, the majority of judgments HBLC, Inc. obtains against consumers are default judgments.

60.     It is suggested that over 90% of collection suits filed against consumers where service of process is made on the consumer result in a default judgment being entered against the consumer. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 327 (6th Cir. 2006); *See also Chavez v. Bowman, Heintz, Boscia & Vician*, 07 C 640, Dkt. 42-2, Affidavit of Gerald E. Bowman, pp. 7-8 ¶ 14 (N.D. Ill. Oct. 3, 2007) (law firm obtains a majority of judgments for creditors by default judgment on debt collection cases it filed in Cook County, Illinois).

61.     Copies of the document, a copy of which is attached as <u>Exhibit 1</u> or <u>Exhibit 2</u> are used to make it appear to the state court judge that HBLC, Inc. has attached the consumer's actual "Cardmember Agreement".

62.     The purpose and effect of <u>Exhibit 1</u> and <u>Exhibit 2</u> is to falsely represent that HBLC, Inc. has attached the actual "written contract" of the consumer it has sued in order to obtain a default judgment against a consumer who fails to object to the state court complaint.

63.     The use of a copy of <u>Exhibit 1</u> or <u>Exhibit 2</u> coupled with the statement that, "A true and correct copy of the Cardmenber Agreement is attached. . . ." amounts to a fraud being perpetrated upon the state court.

64.     The statement in HLBC, Inc's state court complaint that, "A true and correct copy of the Cardmenber Agreement is attached. . . " is false.

65.     Defendants violated 15 U.S.C. §§ 1692e and1692e(10).

## COUNT II – FDCPA § 1692f
## CLASS ALLEGATION

66.     Plaintiff incorporates paragraphs 1-34 above.

67.     15 U.S.C. §1692f in pertinent part, states, "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

68.     The purpose and effect of <u>Exhibit 1</u> and <u>Exhibit 2</u> is to falsely represent that HBLC, Inc. has attached the actual "written contract" of the consumer it has sued in order to obtain a default judgment against a consumer who fails to object to the state court complaint.

69.     The use of a copy of <u>Exhibit 1</u> or <u>Exhibit 2</u> coupled with the statement that, "A true and correct copy of the Cardmenber Agreement is attached. . . ." amounts to a fraud being perpetrated upon the state court.

70.     The purpose and effect of <u>Exhibit 1</u> and <u>Exhibit 2</u> is to avoid having HBLC, Inc.'s state court claims against a consumer from being dismissed for failing to attach the written contract as required under 735 ILCS 5/2−606 that HLBC, Inc. has sued the consumer upon.

71.     Defendants' conduct violated 15 U.S.C. § 1692f.

## CLASS ALLEGATION

72.      Plaintiff brings this action on behalf of a class pursuant to FED. R. CIV. P. 23(a) and 23(b)(3) of: (a) all natural persons with an Illinois address (b) where Fink on behalf of HBLC, Inc. filed a lawsuit against the person (c) where a copy of either <u>Exhibit 1</u> or <u>Exhibit 2</u> was attached to the state court complaint (d) where the state court complaint stated that either <u>Exhibit 1</u> or <u>Exhibit 2</u> was, "A true and correct copy of the Cardmenber Agreement" (e) during a period beginning May 9, 2007 and ending May 29, 2008.

73.    There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members.

74.    The predominate question is whether the use of document attached to a state court complaint, Exhibit 1 or Exhibit 2, coupled with the statement in the state court complaint, "A true and correct copy of the Cardmenber Agreement is attached hereto . . ." violates the FDCPA.

75.    Plaintiffs' claims are typical of the claims of the class members in regard to the copied document attached as Exhibit 1 and Exhibit 2 as all are based on the same factual and legal theories.

76.    The class is so numerous that joinder of all members is impractical.

77.    On information and belief there are 42 persons, including Plaintiffs, in Cook County, Illinois alone who are identified by putative class definition above.

78.    Plaintiff will fairly and adequately represent the members of the class.

79.    Plaintiff has retained experienced counsel in FDCPA matters and class action litigation.

80.    A class action is superior for the fair and efficient adjudication of this matter in that:

a.    Defendants course of conduct arises out of a single transaction, involving a form document affecting a large group of individuals;

b.    Individual actions are not economical;

c.    Congress contemplated class actions as a means of enforcing the FDCPA; and

d.    The Class members are unaware of the fraud that has perpetrated

upon them.

## COUNT III – FDCPA VIOLATIONS
## PLAINTIFFS' ADDITIONAL INDIVIDUAL ALLEGATIONS
## TIME BARRED DEBTS

81.    Plaintiff incorporates paragraphs 1-55 above.

82.    The statute of limitations applicable to an action on a contract that is not

wholly in writing under Illinois law is five years. 735 ILCS 5/13-205. *Parkis v. Arrow Financial*

*Services, LLC*, 07 C 410, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill., Jan. 8, 2008); *Nicolai v. Mason*,

118 Ill. App. 3d 300; 454 N.E.2d 1049 (5th Dist. 1983).

83.    Furthermore, a contract is not wholly in writing if it is subject to change

from time to time by means of one party sending terms to the other and the other continuing to

do business or failing to object. *Toth v. Mansell*, 207 Ill. App. 3d 665, 669, 566 N.E.2d 730, 733

(1st Dist. 1990); *Classified Ventures, Inc. v. Wrenchead, Inc.,* 06 C 2373, 2006 U.S. Dist. LEXIS

77359 (N.D. Ill. October 11, 2006). This is because parol evidence is necessary to show what

terms were sent from time to time and that the putative debtor accepted them by continuing to

do business.

84.    Defendants conduct of filing suit against Plaintiffs on a time-barred debt

violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5) and 1692e(10).

85.    Defendants conduct of continuing to prosecute each of Plaintiffs' debt

after being given notice that such debt is time barred violates 15 U.S.C. § 1692f.

## COUNT IV – MALICIOUS PROSECTION
## PLAINTIFFS' ADDITIONAL INDIVIDUAL ALLEGATIONS

86.     Plaintiff incorporates paragraphs 1-55 above.

87.     Defendants had no probable cause to file the state court complaints against Prieto and Childs after the decision in *Parkis v. Arrow Financial Services, LLC*, 07 C 410, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill., Jan. 8, 2008).

88.     Defendants had no probable cause to file the state court complaint against Glass.

89.     Defendants had no probable cause to continue the state court proceedings against Prieto after Defendants were notified that Prieto's debt was barred by the statute of limitations.

90.     Defendants had no probable cause to continue the state court proceedings against Childs after Defendants were notified that Childs' debt was barred by the statute of limitations.

91.     Defendants had no probable cause to continue the state court proceedings against Glass after Defendants were notified that Glass' debt was barred by the statute of limitations.

92.     At the time a trial date was set by Defendants in the Prieto matter, on information and belief, Defendants did not have any information to dispute Prieto's notice to Defendants that his debt was in default for mare than 5 years.

93.     At the time a trial date was set by Defendants in the Childs matter, on information and belief, Defendants did not have any information to dispute Childs' notice to Defendants that her debt was in default for more than 5 years.

94.    At the time a trial date was set by Defendants in the Glass matter, on information and belief, Defendants did not have any information to dispute Glass' notice to Defendants that his debt was in default for more than 10 years.

95.    Defendants' conduct in filing suit against Prieto on a time barred debt was malicious.

96.    Defendants' conduct in filing suit against Childs on a time barred debt was malicious.

97.    Defendants' conduct in filing suit against Glass on a time barred debt was malicious.

98.    Defendants' conduct of continuing to prosecute the state court matter against Prieto was malicious.

99.    Defendants' conduct of continuing to prosecute the state court matter against Childs was malicious.

100.    Defendants' conduct of continuing to prosecute the state court matter against Glass was malicious.

**WHERFORE**, Plaintiff requests this Honorable Court to enter judgment against Defendants for:

(1)    Statutory, actual and punitive damages for Plaintiffs;

(2)    Statutory damages for the class in the amount of $500,000 or 1% of Defendants' net worth which ever is lesser;

(3)    Attorney's fees, litigation expenses and costs of suit; and

(4)    Such other relief as the Court deems proper.

Respectfully submitted,

s/ Curtis C. Warner
Curtis C. Warner

Curtis C. Warner
Warner Law Firm, LLC
155 N. Michigan Avenue, Suite 737
Chicago, Illinois 60601
(312) 238-9820 (TEL)

Laura K. Bautista
205 W. Monroe, 4th Floor
Chicago, IL 60606
(312) 263-1642 (TEL)

# EXHIBIT 1

Bose Card

# CARDMEMBER AGREEMENT

**Please read this Agreement carefully before using the Discover Card. It contains the terms and conditions of the Discover Card Account, some of which may bear more than similar materials provided to you, in the event of any differences, this Agreement shall control.**

**1. AGREEMENT TERMS.** The word Card means any one or more Discover Cards issued to you or to an authorized user. The word Account means your Discover Card Account. The words you, your, or yours mean you, the cardmember, and any person or persons who are also contractually liable under this Agreement. The words we, us, and our mean Greenwood Trust Company, a Delaware bank.

**2. ACCEPTANCE OF AGREEMENT.** The use of your Account or the Card by you or anyone whom you authorize or permit to use your Account or the Card means you accept this Agreement. However, only if you are a resident of North Dakota or Wisconsin, in which event an additional fee provided for in Section 15 will be charged to your Account regardless of whether you use your Account or the Card, unless you have cancelled your Account as provided for in Section 19 within 30 days of receipt of your Card.

**3. USE OF YOUR ACCOUNT AND THE CARD.** You agree that you will only use your Account or the Card for personal, family, household, or charitable purposes. Your Account or the Card may not be used for business or commercial purposes or to obtain loans to purchase, carry or trade in securities. Prior to its use, each Card must be signed by the person to whom it is issued. Your Account and the Card may be used for the following purposes:

• To purchase or lease goods or services from participating establishments.

• To obtain cash advances by means of automated teller machines or checks in accordance with such additional terms and conditions as may be imposed from time to time.

• To guarantee personal checks at participating establishments subject to cash availability and such conditions as the participating establishments may impose. Any guaranteed personal check returned unpaid for which we become liable shall be treated as a cash advance and a returned check and shall be subject to a Returned Check Charge.

• To guarantee hotel reservations at participating establishments. You will be liable for guaranteed reservations that are not cancelled prior to 6 p.m. of the date of arrival or such other time as the establishment may impose.

We are not responsible for the refusal of anyone to accept or honor the Card. The Card is our property. You must return it to us or our agent upon request.

**4. AUTHORIZED CARD USERS.** If you want to cancel the authorized or permitted use of your Account or the Card by another person, you must notify us in writing and recover, cut in half and return to us any Card at such person's possession.

**5. LIABILITY FOR UNAUTHORIZED USE.** If the Card is lost or stolen, or if you think that someone is using your Account or the Card without your permission, notify us immediately. You can notify us by telephoning us at 1-800-DISCOVER, or by writing us at DISCOVER CARD, P.O. Box 33507-NAT'L. REV. 2/90

---

JUN 17 '96  09:18AM NOVUS SERVICE
15156, Wilmington, DE 19886-1002. You may be liable for the unauthorized use of your Account or the Card. You will not be liable for unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability will not exceed $50.00.

**6. LINE OF CREDIT.** We will advise you of your line of credit. We may increase or decrease your line of credit from time to time. If you exceed or attempt to exceed your line of credit, you will be in default.

**7. PROMISE TO PAY.** You agree to pay us in U.S. Dollars, for all purchases and cash advances, including applicable Finance Charges and other charges or fees, incurred by you or anyone you authorize or permit to use your Account or the Card, even if you do not notify us that others are using your Account or the Card. We will convert purchases and cash advances made in a foreign currency to U.S. Dollars at the exchange rate and on the terms described in Section 8. In other than U.S. Dollars, we may refuse to accept the payment of charge your Account our cost to convert your Payment to U.S. Dollars. All checks must be drawn on funds on deposit in the U.S. If your Account is a joint Account, each of you agrees to be liable individually and jointly for the entire amount owed on your Account.

We can accept late payments or partial payments or checks and money orders marked "payment in full" without losing any of our rights under this Agreement.

**8. MONTHLY BILLING STATEMENT.** We will send you a billing statement, after each monthly billing cycle in which you have a debit or credit balance in excess of $1.00. The billing statement will show all purchases, cash advances, Finance Charges and other charges, fees and all payments or other credits posted to your Account during the billing cycle. It will show your New Balance, Minimum Payment Due and Payment Due Date. Purchases will be identified by the amount and date of the transaction, the date of posting to your Account, the seller's name and the city and state or foreign country where the transaction took place. Cash advances will be identified by the amount of the transaction, the date of the transaction and either the amount of the cash advance, or the date of the credit document and the date of posting to your Account.

**9. MINIMUM PAYMENT OPTIONS.** You may at any time pay the entire New Balance shown on your billing statement, but each month you must pay at least the Minimum Payment Due. All payments must be mailed or delivered to us at the address shown on your monthly billing statement or by using the envelope enclosed with such statement. All payments will be applied in the following order: Finance Charges and other charges or fees, cash advances in the order made and purchases in the order made.

**10. MINIMUM MONTHLY PAYMENT.** The Minimum Payment Due each month will be either (a) the entire New Balance shown on your billing statement of the New Balance is less than $10.00, or (b) the greater of $10.00 or an amount equal to 1/36th of the New Balance rounded to the next higher whole dollar amount. You can pay ahead. The minimum payment due for each monthly billing cycle will be reduced by the amount you have paid in excess of the Minimum Payment Due, as calculated in (a) and (b) above. In any of the three previous months' billing cycles, less any amount of the excess already used to reduce payments. However, there will be no reduction if you have exceeded your line of credit or if you have paid the entire New Balance shown on your billing statement.

**11. FAILURE TO MAKE MINIMUM PAYMENT.** If you do not make at least the Minimum Payment Due by the Payment Due Date each month, you will be in default.

---

**12. CREDIT BALANCES.** We will refund any credit balance when seven business days from receipt of your written request. If you do not request a refund, we will automatically refund credit balances greater than $1.00 which remain in your Account after two billing cycles.

**13. FINANCE CHARGES.** We will impose Finance Charges as follows:

**Purchases**

A. A Finance Charge is imposed on purchases (except as referred to in paragraph C below) from the date of posting to your Account to the date of repayment.

B. For each billing cycle:

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Purchases is the sum of the daily unpaid balances of purchases on each day of the billing cycle (excluding any current unpaid balances) divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

(2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Purchases is the sum of the unpaid balances of purchases itemized on your last billing statement on each day of the billing cycle covered by your last billing statement (excluding any current unpaid balances) divided by the number of days in such billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

(3) We add the amounts determined under (1) and (2) to compute the Finance Charge on purchases.

C. A Finance Charge is not imposed on:

(1) New purchases posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement of such New Balance was zero and (b) you pay the New Balance shown on the billing statement itemizing the new purchases by the Payment Due Date shown on that billing statement.

(2) Old purchases previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

JUN 17 '96  09:19AM  NOVUS SERVICE                    P.4

*[Signature]*
Greenwood Trust Company
DISCOVER CARD
Vice President

**14. MINIMUM FINANCE CHARGE.** We will charge you a minimum FINANCE CHARGE of $.50 for any billing cycle in which a FINANCE CHARGE of less than $.50 would otherwise be imposed.

**15. ANNUAL MEMBERSHIP FEE.** (ONLY NORTH CAROLINA AND WISCONSIN RESIDENTS.) If you are a resident of North Carolina or Wisconsin, you agree to pay us, at the beginning of your membership year in North Carolina and at the end of your membership year in Wisconsin, a nonrefundable Annual Membership Fee of $15.00, posted to your Account for each Account. Such fee will be waived for the first year unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate of 1.5% when corresponds to an ANNUAL PERCENTAGE RATE of 18%. The Average Daily Balance of Cash Advances is the sum of the daily unpaid balances of each advances on each day of the billing cycle covered by your current billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding unpaid finance charges, in each case, as of the date posted to your Account and by adding new cash advances as of the date of the transaction.

**16. RETURNED CHECK CHARGE.** We will charge you a Returned Check Charge of $15.00 each time you pay us with or we guarantee a check that is returned unpaid.

**17. LATE CHARGE.** We will charge you a Late Charge of $10.00 if you fail to make a required payment within 30 days after the Payment Due Date in any month.

**18. DEFAULT COLLECTION COSTS.** You are in default if you fail to comply with the terms of this Agreement, including failing to make a required payment when due or exceeding your line of credit. If you are in default and we refer the collection of your Account to an attorney, we may charge you reasonable attorneys' fees and court or other collection costs as permitted by law and as actually incurred by us.

**19. CANCELLATION.** You may cancel your Account by notifying us in writing and returning the Card to us cut in half. Of course, you will be responsible to pay any amount you owe us according to the terms of this Agreement. We may cancel your Account or suspend your Account at any time without notice. If we do cancel or suspend your Account, we may declare the entire balance of your Account immediately due and payable without notice if you are in default. If we have a reasonable belief that you are unable or unwilling to repay your obligation to us, if you are in default due to the death of the primary cardmember, or if there is any other default.

**20. PRIVACY.** We may investigate your credit, employment and income records and verify your credit references. We also may report to credit reporting agencies and other creditors the status and payment history of your Account. We will not release this information to any other party without your prior written permission or proper legal process, unless you are in default or if you file a petition in bankruptcy, in which case we may release information regarding your accounts to third parties related by us to assist us in enforcing our rights under this Agreement. However, we may include your name and address and other identifying information on lists of cardmembers furnished to companies selling products or services that may be of interest to you. Our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to our cardmembers.

**21. CREDIT AUTHORIZATIONS.** Certain purchases and cash advances will require our authorization prior to completion of the transaction. In some cases, you may be asked to provide identification. If our authorization system is not working at the time you want to obtain a transaction using your Card, or if the quality of the transaction is not available to approve credit. We will not be liable to you if you are unable to complete a transaction.

**22. CHANGE OF TERMS.** We may change any term or part of this Agreement, including finance charge rate, fee or method of computing any balance upon which the finance charge rate is assessed, by

sending you a written notice at least 30 days before the change is to become effective. We may apply any such change to the outstanding balance of your Account on the effective date of the change and to new charges made after that date. If you do not agree to the change, you must notify us in writing within 30 days of the mailing of the notice of change at the address provided in the notice of change, in which case your Account will be closed and you must pay us the balance that you owe us under the existing terms of the Agreement. Otherwise, we will treat your use of the Card or the Account after the effective date of the change shall be deemed acceptance of the new terms as of such effective date, even if you previously notified us that you did not agree to the change.

**23. CHANGE OF ADDRESS.** If you change your address you must notify us of your new address within 15 days.

**24. ASSIGNMENT OF ACCOUNT.** We may sell, assign or transfer your Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account without first obtaining our prior written consent.

**25. GOVERNING LAW.** This Agreement will be governed by the laws of the State of Delaware and applicable federal laws. If any part of this Agreement becomes unenforceable, it will not make any other part unenforceable.

---

JUN 17 '96  09:19AM  NOVUS SERVICE

**Cash Advances**

**A.** A Finance Charge on cash advances (except as referred in paragraph (c) below) from the date of transaction to the date of repayment.

**B. For each billing cycle:**

**(1)** We multiply the Monthly Periodic Rate times the Average Daily Balance of Cash Advances. The Monthly Periodic Rate is 1.65% which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate of 1.5% when corresponds to an ANNUAL PERCENTAGE RATE of 18%. The Average Daily Balance of Cash Advances is the sum of the daily unpaid balances of cash advances on each day of the billing cycle covered by your current billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding unpaid finance charges, in each case, as of the date posted to your Account and by adding new cash advances as of the date of the transaction.

**(2)** We also charge a one-time FINANCE CHARGE for cash advances equal to 2.5% of the amount of each new cash advance, with a minimum FINANCE CHARGE of $2.00 and a maximum FINANCE CHARGE of $10.00 (except that cash advances which are made in respect of guaranteed personal checks for which we honor label). This charge may result in an ANNUAL PERCENTAGE RATE for cash advances which is higher than the nominal ANNUAL PERCENTAGE RATE.

**(4)** We add the amounts determined under (1), (2) and (3) to obtain the Finance Charge on Cash Advances.

**C.** A Finance Charge (other than the one-time Finance Charge in subparagraph B(2) above) is not imposed on:

**(1)** New cash advances posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or such New Balance was zero and (b) you pay the New Balance shown on the billing statement itemizing the new cash advances by the Payment Due Date shown on that billing statement.

**(2)** Old cash advances previously posted but if billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

**D.** All forms of cash advances, including the use of Discover Card Checks, regardless of the purpose for which used, shall be subject to the Finance Charges as set forth above.

# EXHIBIT 2

Please read this Agreement carefully before using the Discover Card. It contains the terms and conditions of the Discover Card Account, some of which may have changed from earlier materials provided to you. In the event of any differences, this Agreement shall control.

1. **AGREEMENT TERMS.** The word Card means any one or more Discover Card issued to you or to an authorized user. The word Account means your Discover Card Account. The words you, your, or yours mean you, the cardmember, and any person or persons who are also contractually liable under this Agreement. The words we, us and our mean Greenwood Trust Company, a Delaware bank.

2. **ACCEPTANCE OF AGREEMENT.** The use of your Account or the Card by you or anyone whom you authorize or permit to use your Account or the Card means you accept this Agreement. However, only if you are a resident of North Carolina or Wisconsin, the Annual Membership Fee provided for in Section 15 will be charged to your Account regardless of whether you use your Account or the Card, unless you have cancelled your Account as provided for in Section 19 within 30 days of receipt of your Card.

3. **USE OF YOUR ACCOUNT AND THE CARD.** You agree that you will only use your Account or the Card for personal, family, household and charitable purposes. Your Account or the Card may not be used for business or commercial purposes or to obtain loans to purchase, carry or trade in securities. Prior to its use, each Card must be signed by the person to whom it is issued. Your Account and the Card may be used for the following purposes:

- To purchase or lease goods or services from participating establishments.

- To obtain cash advances by means of automated teller machines or checks in accordance with such additional terms and conditions as may be imposed from time to time.

- To guarantee personal checks at participating establishments subject to cash availability and such conditions as the participating establishments may impose. Any guaranteed personal check returned unpaid for which we become liable shall be treated as a cash advance and a returned check, and shall be subject to a Returned Check Charge.

- To guarantee hotel reservations at participating establishments. You will be liable for guaranteed reservations that are not cancelled prior to 6 p.m. of the date of arrival or such other time as the establishment may impose.

We are not responsible for the refusal of anyone to accept or honor the Card. The Card is our property. You must return it to us or our agent upon request.

4. **AUTHORIZED CARD USERS.** If you want to cancel the authorized or permitted use of your Account or the Card by another person, you must notify us in writing and recover, cut in half and return to us any Card in such person's possession.

5. **LIABILITY FOR UNAUTHORIZED USE.** If the Card is lost or stolen, or if you think that someone is using your Account or the Card without your permission, notify us immediately. You can notify us by telephoning us at 1-800-DISCOVER, or by writing us at DISCOVER CARD, P.O. Box 33507-NAT'L REV. 2/90

---

15156, Wilmington, DE 19886-1009. You may be liable for the unauthorized use of your Account or the Card. You will not be liable for unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability will not exceed $50.00.

6. **LINE OF CREDIT.** We will advise you of your line of credit. We may increase or decrease your line of credit from time to time. If you exceed or attempt to exceed your line of credit, you will be in default.

7. **PROMISE TO PAY.** You agree to pay us in U.S. Dollars for all purchases and cash advances, including applicable Finance Charges and other charges or fees, incurred by you or anyone you authorize or permit to use your Account or the Card, even if you do not notify us that others are using your Account or the Card. We will convert purchases and cash advances made in a foreign currency to U.S. Dollars at the rate existing on the date of conversion. If you pay us in other than U.S. Dollars, we may refuse to accept the payment or charge your Account our cost to convert your payment to U.S. Dollars. All checks must be drawn on funds on deposit in the U.S. If your Account is a joint Account, each of you agrees to be liable individually and jointly for the entire amount owed on your Account.

We can accept late payments or partial payments or checks and money orders marked "payment in full" without losing any of our rights under this Agreement.

8. **MONTHLY BILLING STATEMENT.** We will send you a billing statement after each monthly billing cycle in which you have a debit or credit balance in excess of $1.00. The billing statement will show all purchases, cash advances, Finance Charges and other charges or fees and all payments or other credits posted to your Account during the billing cycle. It will show your New Balance, Minimum Payment Due and Payment Due Date. Purchases will be identified by the amount and date of the transaction, the date of posting to your Account, the seller's name and the city and state or foreign country where the transaction took place. Cash advances will be identified by the amount of the transaction, the date of the transaction (either the date the cash advance is obtained or the date of the credit document) and the date of posting to your Account.

9. **MONTHLY PAYMENT OPTIONS.** You may at any time pay the entire New Balance shown on your billing statement, but each month you must pay at least the Minimum Payment Due. All payments must be mailed or delivered to us at the address shown on your monthly billing statement or by using the envelope enclosed with such statement. All payments will be applied in the following order: Finance Charges and other charges or fees, cash advances in the order made and purchases in the order made.

10. **MINIMUM MONTHLY PAYMENT.** The Minimum Payment Due each month will be either (a) the entire New Balance shown on your billing statement if the New Balance is less than $10.00, or (b) the greater of $10.00 or an amount equal to 1/36th of the New Balance (rounded to the next higher whole dollar amount). You can pay ahead. The minimum payment for each monthly billing cycle will be reduced by the amount you have paid in excess of the Minimum Payment Due, as calculated in (a) and (b) above, in any of the three previous monthly billing cycles, less any portion of the excess already used to reduce payments. However, each month no reduction if you have exceeded your line of credit or if you have paid the entire New Balance shown on your billing statement.

11. **FAILURE TO MAKE MINIMUM PAYMENT.** If you do not make at least the Minimum Payment Due by the Payment Due Date each month, you will be in default.

---

13. **FINANCE CHARGES.** We will impose Finance Charges as follows:

**Purchases**

A. A Finance Charge is imposed on purchases (except as referred to in paragraph C below) from the date of posting to your Account to the date of repayment.

B. For each billing cycle:

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Purchases is the sum of the outstanding balances of purchases on each day of the billing cycle covered by your current billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

(2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Purchases is the sum of the unpaid balances of purchases itemized on your last billing statement on each day of the billing cycle covered by that last billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

(3) We add the amounts determined under (1) and (2) to obtain the Finance Charge on purchases.

C. A Finance Charge is not imposed on:

(1) New purchases posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or (b) there was no New Balance on that billing statement.

(2) Old purchases previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

---

**Cash Advances**

A. A Finance Charge is imposed on cash advances (except as referred to in paragraph C below) from the date of transaction to the date of repayment.

B. For each billing cycle:

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Cash Advances. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Cash Advances is the sum of the daily unpaid balances of your current billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding unpaid finance charges, in each case, as of the date of the transaction.

(2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Cash Advances. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Cash Advances is the sum of the unpaid balances of cash advances itemized on your last billing statement on each day of the billing cycle covered by your last billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new cash advances as of the date of the transaction.

(3) We also charge a one-time FINANCE CHARGE for each cash advance equal to 2.5% of the amount of each new cash advance, with a minimum FINANCE CHARGE of $2.00 and a maximum FINANCE CHARGE of $10.00 (except for cash advances which are made in respect of guaranteed personal checks for which we become liable). This charge may result in an ANNUAL PERCENTAGE RATE for cash advances which is higher than the nominal ANNUAL PERCENTAGE RATE.

(4) We add the amounts determined under (1), (2) and (3) to obtain the Finance Charge on Cash Advances.

C. A Finance Charge (other than the one-time Finance Charge in subparagraph B(3) above) is not imposed on:

(1) New cash advances posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement of such New Balance was zero and (b) you paid the New Balance shown on the billing statement covering the new cash advances by the Payment Due Date shown on that billing statement.

(2) Old cash advances previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

D. All forms of cash advances, including the use of Discover Card Checks, regardless of the purpose for which used, shall be subject to the Finance Charges as set forth above.

---

14. **MINIMUM FINANCE CHARGE.** We will charge you a minimum FINANCE CHARGE of $.50 for any billing cycle in which a FINANCE CHARGE of less than $.50 would otherwise be imposed.

15. **ANNUAL MEMBERSHIP FEE. (ONLY NORTH CAROLINA AND WISCONSIN RESIDENTS.)** If you are a resident of North Carolina or Wisconsin, you agree to pay us at the beginning of your membership year in North Carolina and at the end of your membership year in Wisconsin, a nonrefundable Annual Membership Fee of $18.00, posted as a purchase, for each Account. Such fee will be waived for the first year you are a Cardmember unless you became a Cardmember through acceptance of a special offer from us, in which case all or a portion of the fee may be waived or retained in accordance with the terms of such offer. You may have more than one Card per Account, but only be charged only one fee for that Account. Unless you notify us not to renew your Account, the fee will be posted to your Account annually during the billing cycle following the expiration month shown on the face of your Card.

16. **RETURNED CHECK CHARGE.** We will charge you a Returned Check Charge of $15.00 each time you pay us with or we guarantee a check that is returned unpaid.

17. **LATE CHARGE.** We will charge you a Late Charge of $10.00 if you fail to make a required payment within 20 days after the Payment Due Date in any month.

18. **DEFAULT-COLLECTION COSTS.** You are in default if you fail to comply with the terms of this Agreement, including failing to make a required payment when due or exceeding your line of credit. If you are in default and we refer the collection of your Account to an attorney, we may charge you reasonable attorneys' fees and court or other collection costs as permitted by law and as actually incurred by us.

19. **CANCELLATION.** You may cancel your Account by notifying us in writing and returning the Card to us cut in half. Of course, you will still be responsible to pay any amount you owe us according to the terms of this Agreement. We may cancel or suspend your Account at any time without notice. If we do cancel or suspend your Account, we may declare the entire balance of your Account immediately due and payable without notice. If you are in default, if we have a reasonable belief that you are unable or unwilling to repay your obligations to us, if you are insolvent or in bankruptcy, or if you die.

20. **PRIVACY.** We may investigate your credit, employment and income records and verify your credit references. We also may report to credit reporting agencies and other creditors the status and payment history of your Account. We will not release any information to any other party without your written permission or proper legal process, unless you are in default or if you file a petition in bankruptcy, in which case we may release information regarding your account to third parties retained by us to assist us in enforcing our rights under this Agreement. However, we may include your name and address and other identifying information on lists of cardmembers furnished to companies selling products or services that may be of interest to you. Our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to our cardmembers.

21. **CREDIT AUTHORIZATIONS.** Certain purchases and cash advances will require our authorization prior to completion of the transaction. In some cases, you may be asked to provide identification. If our authorization system is not working, we may not be able to authorize a transaction, even if you have sufficient available credit. We will not be liable to you if any of these events happen.

22. **CHANGE OF TERMS.** We may change any term of this Agreement, including finance charge rate, fee or method of computing any balance upon which the finance charge rate is assessed, by

---

CREDIT BALANCES. We will refund any credit balance within seven business days after receipt of your written request. If you do not request a refund, we will automatically refund credit balances greater than $1.00 which remain in your Account after two billing cycles.

sending you a written notice at least 30 days before the change is to become effective. We may apply any such change to the outstanding balance of your Account on the effective date of the change and to new charges made after that date. If you do not agree to the change, you must notify us in writing within 30 days after the mailing of the notice of change at the address provided in the notice of change, in which case your Account will be closed and you must pay us the balance that you owe us under the existing terms of the unchanged Agreement. Otherwise, you will have agreed to the changes in the notice. Use of the Card after the effective date of the change shall be deemed acceptance of the new terms as of such effective date, even if you previously notified us that you did not agree to the change.

23. **CHANGE OF ADDRESS.** If you change your address you must notify us of your new address within 15 days.

24. **ASSIGNMENT OF ACCOUNT.** We may sell, assign or transfer your Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account without first obtaining our prior written consent.

25. **GOVERNING LAW.** This Agreement will be governed by the laws of the State of Delaware and applicable federal laws. If any part of this Agreement becomes unenforceable, it will not make any other part unenforceable.

Greenwood Trust Company
DISCOVER CARD

*J B Smith*
Vice President

# EXHIBIT 3

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

**'08 M1  116396**

HBLC, Inc., final transfer
of DISCOVER

Case No. _____

                    Plaintiff,

v.                                              Claimed: $ 4715.41 plus costs

CARLOS PRIETO,

                    Defendant.                  Return Date:

                                                APR 0 4 2008

VERIFIED COMPLAINT

Now comes Plaintiff, HBLC, Inc., final transferee of DISCOVER and claims as follows:

    1.    That the Plaintiff is a corporation authorized to transact business in the State of
Illinois and is the owner of this account having purchased said account in the regular course of business
in good faith and for value.

    2.    That Defendant(s) opened an DISCOVER credit card account (account number
6011007480186831) and made purchases and charged same to the account but has failed to make monthly
payments called for on the account.  A true and correct copy of the Cardmember Agreement is attached
hereto as Exhibit "2".

    3.    That pursuant to the Affidavit attached hereto as Exhibit "1" there is due to Plaintiff
from the Defendant, as of the filing date of this complaint, the sum of $4715.41 (which includes $350 as
reasonable attorneys' fees as permitted by the Cardmember Agreement) plus court costs as permitted by the
Cardmember Agreement and as permitted by statute plus post-judgment interest at the rate allowed by law
until the debt is paid.

    4.    That Defendant(s) is in default on the account and has refused to pay the balance due
after demand by Plaintiff or its Assignor.

    WHEREFORE, Plaintiff, HBLC, Inc., prays for judgment against Defendant, CARLOS PRIETO, in the
amount of $4715.41 (which includes reasonable attorneys' fees of $350) plus court costs plus post-judgment
interest at the rate allowed by law on the unpaid balance.

                                        Steven J. Fink & Assoc., P.C.

                                        By:

Steven J. Fink & Assoc., P.C.
Attorney for the Plaintiff
25 E. Washington Ste. 1233(a)
Chicago, IL 60602
(312) 659-2024
Attorney's No. 52383

Federal law requires me to advise you that we are attempting to collect a debt and any information
obtained from you will be used for that purpose.  Unless you dispute the validity of this debt, or any
portion of it, within 30 days after receipt of this notice, in writing, the debt will be assumed to valid.
If you do dispute the debt's validity, we will provide verification or a copy of any Judgment taken
against you and the and address of the original creditor if different from the current creditor.

AFFIDAVIT OF INDEBTEDNESS

Cynthia Rogers, after having been first duly sworn, on oath states that if called to testify in this matter she would testify to the following facts:

1.    That she is an agent of Plaintiff, HBLC, Inc.. Upon information provided to her by the transferor of the debt, she is familiar with certain facts surrounding the debt forming the basis of the herein Complaint, including but not limited to the amount due.

2.    That Plaintiff is the owner of the account forming the basis of the herein Complaint having purchased said account in the regular course of business in good faith and for value, and as such, Plaintiff is the current holder of this debt and the party to whom the Defendant, CARLOS PRIETO, is liable.

3.    That after all charges and just credits to this account have been given to the defendant, there remains due and owing to Plaintiff from Defendant, CARLOS PRIETO, the sum of $4715.41 (which includes $350 as reasonable attorney fees) plus court costs and post-judgment interest at the rate allowed by law.

_____
Cynthia Rogers

Subscribed and sworn to before me
on this the 2nd day of Jan, 2008

_____
Notary

OFFICIAL SEAL
BRIAN ROGERS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/13/11

Base Card

# CARDMEMBER AGREEMENT

**Please read this Agreement carefully before using the Discover Card. It contains the terms and conditions of the Discover Card Account, some of which may have resulted from earlier materials provided to you. In the event of any differences, this Agreement shall control.**

JUN 17 '96  09:18AM NOVUS SERVICE
15156. Wilmington, DE 19886-1002. You may be liable for the unauthorized use of your Account or the Card. You will not be liable for unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability will not exceed $50.00.

1. **AGREEMENT TERMS.** The word Card means any one or more Discover Cards issued to you or to an authorized user. The word Account means your Discover Card Account. The words you, your, or yours mean you, the cardmember, and any person or persons who are also contractually liable under this Agreement. The words we, us, and our mean Greenwood Trust Company, a Delaware bank.

2. **ACCEPTANCE OF AGREEMENT.** The use of your Account or the Card by you or anyone whom you authorize or permit to use your Account or the Card means you accept this Agreement. However, only if you are a resident of North Dakota or Wisconsin, a non-refundable membership fee provided for in Section 15 will be charged to your Account regardless of whether you use your Account or the Card, unless you have cancelled your Account as provided for in Section 19 within 30 days of receipt of your Card.

3. **USE OF YOUR ACCOUNT AND THE CARD.** You agree that you will only use your Account or the Card for personal, family, household, or charitable purposes. Your Account or the Card may not be used for business or commercial purposes or to obtain loans to purchase, carry or trade in securities. Prior to its use, each Card must be signed by the person to whom it is issued. Your Account and the Card may be used for the following purposes:

• To purchase or lease goods or services from participating establishments.

• To obtain cash advances by means of automated teller machines or checks in accordance with such additional terms and conditions as may be imposed from time to time.

• To guarantee personal checks at participating establishments subject to cash availability and such conditions as the participating establishments may impose. Any guaranteed personal check returned unpaid for which we become liable shall be treated as a cash advance and a returned check and shall be subject to a Returned Check Charge.

• To guarantee hotel reservations in participating establishments. You will be liable for guaranteed reservations that are not cancelled prior to 6 p.m. of the date of arrival or such other time as the establishment may impose.

We are not responsible for the refusal of anyone to accept or honor the Card. The Card is our property. You must return it to us or our agent upon request.

4. **AUTHORIZED CARD USERS.** If you want to cancel the authorized or permitted use of your Account or the Card by another person, you must notify us in writing and recover, cut in half and return to us any Card at such person's possession.

5. **LIABILITY FOR UNAUTHORIZED USE.** If the Card is lost or stolen, or if you think that someone is using your Account or the Card without your permission, notify us immediately. You can notify us by telephoning us at 1-800-DISCOVER, or by writing us at DISCOVER CARD, P.O. Box 33507-NAT'L. REV. 2/90

6. **LINE OF CREDIT.** We will advise you of your line of credit. We may increase or decrease your line of credit from time to time. If you exceed or attempt to exceed your line of credit, you will be in default.

7. **PROMISE TO PAY.** You agree to pay us in U.S. Dollars, for all purchases and cash advances, including applicable Finance Charges and other charges or fees, incurred by you or anyone you authorize or permit to use your Account or the Card, even if you do not notify us that others are using your Account or the Card. We will convert purchases and cash advances made in a foreign currency to U.S. Dollars. We may use a rate of exchange that is higher than the rate in other than U.S. Dollars, we may refuse to accept the payment or charge your Account our cost to convert your Payment to U.S. Dollars. All checks must be drawn on funds on deposit in the U.S. Dollars. Account is a joint Account, each of you agrees to be liable individually and jointly for the entire amount owed on your Account.

We can accept late payments or partial payments or checks and money orders marked "payment in full" without losing any of our rights under this Agreement.

8. **MONTHLY BILLING STATEMENT.** We will send you a billing statement, after each monthly billing cycle in which you have a debit or credit balance in excess of $1.00. The billing statement will show all purchases, cash advances, Finance Charges and other charges or fees and all payments or other credits posted to your Account during the billing cycle. It will show your New Balance, Minimum Payment Due and Payment Due Date. Purchases will be identified by the amount and date of the transaction, the day of posting to your Account, the seller's name and the city and state or foreign country where the transaction took place. Cash advances will be identified by the amount of the transaction, the date of the advance (which may not be the same as the date of posting to your Account), and the date of posting to your Account.

9. **MINIMUM MONTHLY PAYMENT.** At any time you pay the entire New Balance shown on your billing statement, but each month you must pay at least the Minimum Payment Due. All payments must be mailed or delivered to us at the address shown on your monthly billing statement or by using the envelope enclosed with such statement. All payments will be applied in the order of Finance Charges and other charges or fees, cash advances in the order made and purchases in the order made.

10. **MINIMUM MONTHLY PAYMENT.** The Minimum Payment Due each month will be either (a) the entire New Balance shown on your billing statement of the New Balance is less than $10.00, or (b) the greater of $10.00 or an amount equal to 1/36th of the New Balance rounded to the next higher whole dollar amount. You can pay ahead. The minimum payment due for each monthly billing cycle will be reduced by the amount you have paid in excess of the Minimum Payment Due, as calculated in (a) and (b) above. In any of the three previous monthly billing cycles, less any amounts for which if you have exceeded your line of credit or if you have paid the entire New Balance shown on your billing statement.

11. **FAILURE TO MAKE MINIMUM PAYMENT.** If you do not make at least the Minimum Payment Due by the Payment Due Date each month, you will be in default.

12. **CREDIT BALANCES.** We will refund any credit balance when seven business days from receipt of your written request. If you do not request a refund, we will automatically refund credit balances greater than $1.00 which remain in your Account after two billing cycles.

13. **FINANCE CHARGES.** We will impose Finance Charges as follows:

**Purchases**

A. A Finance Charge is imposed on purchases (except as referred to in paragraph C below) from the date of posting to your Account to the date of repayment.

B. For each billing cycle:

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Purchases is the sum of the daily unpaid balances of purchases on each day of the billing cycle divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

(2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Purchases is the sum of the unpaid balances of purchases itemized on your last billing statement on each day of the billing cycle covered by that billing statement. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

(3) We add the amounts determined under (1) and (2) to set the Finance Charge on purchases.

C. A Finance Charge is not imposed on:

(1) New purchases posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement of such New Balance was zero and (b) you pay the New Balance shown on the billing statement itemizing the new purchases by the Payment Due Date shown on that billing statement.

(2) Old purchases previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

**Cash Advances**

A. A Finance Charge on cash advances (except as referred to in paragraph (C) below) from the date of transaction to the date of repayment.

B. For each billing cycle:

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Cash Advances. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Cash Advances is the sum of the daily unpaid balances of cash advances itemized on your last billing statement on each day of the billing cycle covered by your last billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding unpaid finance charges, in each case, as of the date posted to your Account and by adding new cash advances as of the date of the transaction.

(2) We also charge a one-time FINANCE CHARGE for each cash advance equal to 2.5% of the amount of each new cash advance, with a minimum FINANCE CHARGE of $2.50 and a maximum FINANCE CHARGE of $10.00 (except for cash advances made in respect of guaranteed personal checks for which we impose no FINANCE CHARGE). This charge may result in an ANNUAL PERCENTAGE RATE for cash advances which is higher than the nominal ANNUAL PERCENTAGE RATE.

(3) We add the amounts determined under (1), (2) and (3) to obtain the Finance Charge on Cash Advances.

C. A Finance Charge (other than the one-time Finance Charge in subparagraph B(3) above) is not imposed on:

(1) New cash advances posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement at such New Balance was zero and (b) you pay the New Balance shown on the billing statement itemizing the new cash advances by the Payment Due Date shown on that billing statement.

(2) Old cash advances previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

D. All forms of cash advances, including the use of Discover Card Checks, regardless of the purpose for which used, shall be subject to the Finance Charges as set forth above.

---

14. **MINIMUM FINANCE CHARGE.** We will charge you a minimum FINANCE CHARGE of $.50 for any billing cycle in which a FINANCE CHARGE of less than $.50 would otherwise be imposed.

15. **ANNUAL MEMBERSHIP FEE.** (ONLY NORTH CAROLINA AND WISCONSIN RESIDENTS.) If you are a resident of North Carolina or Wisconsin, you agree to pay us, at the beginning of your membership year in North Carolina and at the end of your membership year in Wisconsin, a nonrefundable Annual Membership Fee of $15.00, posted as a FINANCE CHARGE. For each Account, such fee will be waived for the first year if your Account is opened in connection with a purchase in which case you shall receive the benefit of a special offer from us, in which case all of a portion of the fee may be waived or reduced in accordance with the terms of such offer. You may have more than one Card per Account, but only be charged only one fee for that Account. Unless you notify us not to renew your Account, the fee will be posted to your Account annually during the billing cycle following the expiration month shown on the face of your Card.

16. **RETURNED CHECK CHARGE.** We will charge you a Returned Check Charge of $15.00 each time you pay us with or we guarantee a check that is returned unpaid.

17. **LATE CHARGE.** We will charge you a Late Charge of $10.00 if you fail to make a required payment within 20 days after the Payment Due Date on any statement.

18. **DEFAULT COLLECTION COSTS.** You are in default if you fail to comply with the terms of this Agreement, including failing to make a required payment when due or exceeding your line of credit. If you are in default and we refer the collection of your Account to an attorney, we may charge you reasonable attorneys' fees and court or other collection costs as permitted by law and as actually incurred by us.

19. **CANCELLATION.** You may cancel your Account by notifying us in writing and returning the Card to us cut in half. Of course, you will still be responsible to pay any amounts you owe us according to the terms of this Agreement. We may cancel your Account or suspend your Account at any time without notice. If we do cancel or suspend your Account, we may declare the entire balance of your Account immediately due and payable without notice. If you are in default, if we have a reasonable belief that you are unable or unwilling to repay your obligations to us, if you are in default on any other agreements you have with us.

20. **PRIVACY.** We may investigate your credit, employment and income records and verify your credit references. We also may report to credit reporting agencies and other creditors the status and payment history of your Account. We will not release this information to any other party without your prior written permission or as otherwise required by law except as we may do as permitted by law, in which case we may release information regarding your accounts to third parties related by us to assist us in enforcing our rights under this Agreement. However, we may include your name and address and other identifying information on lists of cardmembers furnished to companies selling products or services that may be of interest to you. Our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to our cardmembers.

21. **CREDIT AUTHORIZATIONS.** Certain purchases and cash advances will require our authorization prior to completion of the transaction. In some cases, you may be asked to provide identification. If our authorization system is not working, we may not be able to authorize a transaction even if you have sufficient available credit. We will not be liable to you if any of these events happen.

22. **CHANGE OF TERMS.** We may change any term or part of this Agreement, including finance charge rate, fee or method of computing any balance upon which the finance charge rate is assessed, by

---

sending you a written notice at least 30 days before the change is to become effective. We may apply any such change to the outstanding balance of your Account on the effective date of the change and to new charges made after that date. If you do not agree to the change, you must notify us in writing within 30 days of the mailing of the notice of change at the address provided on the notice of change, in which case your Account will be closed and you must pay us the balance that you owe us under the existing terms of the unchanged Agreement. Otherwise, we will deem your use of the Card, or the Card of any person to whom you permit use of the Card after the effective date of the change shall be deemed acceptance of the new terms as of such effective date, even if you previously notified us that you did not agree to the change.

23. **CHANGE OF ADDRESS.** If you change your address you must notify us of your new address within 15 days.

24. **ASSIGNMENT OF ACCOUNT.** We may sell, assign or transfer your Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account without first obtaining our prior written consent.

25. **GOVERNING LAW.** This Agreement will be governed by the laws of the State of Delaware and applicable federal laws. If any part of this Agreement becomes unenforceable, it will not make any other part unenforceable.

Greenwood Trust Company
DISCOVER CARD

Vice President

# EXHIBIT 4

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

00 M1  116393

HBLC, Inc., final transfer
of DISCOVER

                          Plaintiff,

v.

NATALIE CHILDS,

                          Defendant.

Case No. _____

Claimed: $ 5293.39 plus costs

Return Date:

APR 0 4 2008

VERIFIED COMPLAINT

Now comes Plaintiff, HBLC, Inc., final transferee of DISCOVER and claims as follows:

     1.     That the Plaintiff is a corporation authorized to transact business in the State of
Illinois and is the owner of this account having purchased said account in the regular course of business
in good faith and for value.

     2.     That Defendant(s) opened an DISCOVER credit card account (account number
6011007690182661) and made purchases and charged same to the account but has failed to make monthly
payments called for on the account.  A true and correct copy of the Cardmember Agreement is attached
hereto as Exhibit "2".

     3.     That pursuant to the Affidavit attached hereto as Exhibit "1" there is due to Plaintiff
from the Defendant, as of the filing date of this complaint, the sum of $5293.39 (which includes $350 as
reasonable attorneys' fees as permitted by the Cardmember Agreement) plus court costs as permitted by the
Cardmember Agreement and as permitted by statute plus post-judgment interest at the rate allowed by law
until the debt is paid.

     4.     That Defendant(s) is in default on the account and has refused to pay the balance due
after demand by Plaintiff or its Assignor.

     WHEREFORE, Plaintiff, HBLC, Inc., prays for judgment against Defendant, NATALIE CHILDS, in the
amount of $5293.39 (which includes reasonable attorneys' fees of $350) plus court costs plus post-judgment
interest at the rate allowed by law on the unpaid balance.

                                        Steven J. Fink & Assoc., P.C.

                                        By: _____

Steven J. Fink & Assoc., P.C.
Attorney for the Plaintiff
25 E. Washington Ste. 1233(a)
Chicago, IL 60602
(312) 659-2024
Attorney's No. 52383

Federal law requires me to advise you that we are attempting to collect a debt and any information
obtained from you will be used for that purpose.  Unless you dispute the validity of this debt, or any
portion of it, within 30 days after receipt of this notice, in writing, the debt will be assumed to valid.
If you do dispute the debt's validity, we will provide verification or a copy of any Judgment taken
against you and the and address of the original creditor if different from the current creditor.

AFFIDAVIT OF INDEBTEDNESS

Cynthia Rogers, after having been first duly sworn, on oath states that if called to testify in this matter she would testify to the following facts:

1.   That she is an agent of Plaintiff, HBLC, Inc..  Upon information provided to her by the transferor of the debt, she is familiar with certain facts surrounding the debt forming the basis of the herein Complaint, including but not limited to the amount due.

2.   That Plaintiff is the owner of the account forming the basis of the herein Complaint having purchased said account in the regular course of business in good faith and for value, and as such, Plaintiff is the current holder of this debt and the party to whom the Defendant, NATALIE CHILDS, is liable.

3.   That after all charges and just credits to this account have been given to the defendant, there remains due and owing to Plaintiff from Defendant, NATALIE CHILDS, the sum of $5293.39 (which includes $350 as reasonable attorney fees) plus court costs and post-judgment interest at the rate allowed by law.

_____
Cynthia Rogers

Subscribed and sworn to before me
on this the 2nd day of Jan, 2008

_____
Notary Public

```
OFFICIAL SEAL
BRIAN ROGERS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 06/13/11
```

Base Card

# CARDMEMBER AGREEMENT

Please read this Agreement carefully before using the Discover Card. It contains the terms and conditions of the Discover Card Account, some of which may have been changed from earlier materials provided to you. In the event of any differences, this Agreement shall control.

**1. AGREEMENT TERMS.** The word Card means any one or more Discover Cards issued to you or to an authorized user. The word Account means your Discover Card Account. The words you, your and yours mean you, the cardmember, and any person or persons who are also contractually liable under this Agreement. The words we, us and our mean Greenwood Trust Company, a Delaware bank.

**2. ACCEPTANCE OF AGREEMENT.** The use of your Account or the Card by you or anyone whom you authorize or permit to use your Account or the Card means you accept this Agreement. However, only if you are a resident of North Carolina, Wisconsin or Maine, each Card must be signed by the person to whom it is issued. Your Account may not be used for any illegal transaction. Your Account and the Card may be used for the following purposes:

• To purchase of lease goods or services from participating establishments.

• To obtain cash advances by means of automated teller machines or checks we provide with such additional terms and conditions as may be imposed from time to time.

• To guarantee personal checks at participating establishments subject to cash conditions in the participating establishment. You will be liable for guaranteed personal checks returned unpaid for which we become liable but shall be mailed the check amount plus any applicable Finance Charges. You may cancel guaranteed personal checks any time as is the establishment.

• To guarantee hotel reservations at participating establishments. You will be liable for guaranteed reservations that are not cancelled prior to 6 p.m. on the date of arrival of such other time as is the establishment may impose.

**3. USE OF YOUR ACCOUNT AND THE CARD.** You agree that you will only use your Account and the Card for personal, family, household or charitable purposes. Your Account or the Card may not be used for business or commercial purposes or to obtain loans to purchase, carry or trade in securities. Prior to its use, each Card must be signed by the person to whom it is issued. Your Account is a joint account, each of you agrees to be liable individually and jointly for the entire amount owed on your Account as provided for in Section 18 within 30 days of receipt of your Card.

**5. LIABILITY FOR UNAUTHORIZED USE.** If the Card is lost or stolen, or if someone else is using your Account or the Card without your permission, you must notify us in writing around or you DISCOVER Card, P.O. Box 30943 NAT'L REV. 2/90

**6. LINE OF CREDIT.** We will advise you of your line of credit. We may increase or decrease your line of credit from time to time. If you exceed or attempt to exceed your line of credit, you will be in default, and will not exceed $50.00.

**7. PROMISE TO PAY.** You agree to pay us in U.S. Dollars, for all purchases and cash advances, including applicable Finance Charges and other charges or fees, incurred by you or anyone you authorize or permit to use your Account or the Card. We will convert us that others are using your Account or the Card. We will convert purchases and cash advances made in a foreign currency to U.S. Dollars. All checks must be drawn on funds on deposit in the U.S. If your Account is a joint account, each of you agrees to be liable individually and jointly for the entire amount owed on your Account.

We can accept late payments or partial payments of checks and money orders marked "payment in full" without losing any of our rights under this Agreement.

**8. MONTHLY BILLING STATEMENT.** We will send you a billing statement after each monthly billing cycle in which you have a debit or credit balance in excess of $1.00. The billing statement will show all purchases, cash advances, Finance Charges and other charges or fees and all payments and credits posted to your Account during the billing cycle. It will show your New Balance, Minimum Payment Due and Payment Due Date. Purchases will be identified by the amount and date of the transaction, the date of posting to your Account, the seller's name and the city and state of foreign country where the transaction took place. Cash advances will be identified by the amount and date of the transaction (either the date the cash advance is obtained or the date of the credit document) and the date of posting to your Account.

**9. MONTHLY PAYMENT OPTIONS.** You may at any time pay the entire New Balance or pay in cash advances may at any time pay the entire amount must pay at least the Minimum Payment Due. All payments must be mailed or delivered to us at the address shown on your monthly billing statement or in the envelope enclosed with such statement. All payments will be applied in the following order: Finance Charges and other charges or fees, cash advances in the order made and purchases in the order made.

**10. MINIMUM MONTHLY PAYMENT.** The Minimum Payment Due each month is the New Balance shown on the billing statement if that amount is less than $10.00, or (b) the greater of $10.00 or an amount equal to 1/36th of the New Balance rounded to the next higher whole dollar. You can pay less. The minimum payment due for each monthly billing cycle will be reduced by the amount you have paid in excess of the Minimum Payment Due, as calculated in (a) and (b) above, in any of the three previous monthly billing cycles, less any portion of the excess already used to reduce payments. However, there will be no reduction if you have paid the New Balance shown on the billing cycle by the Payment Due Date shown on that New Balance shown on your billing statement.

**11. FAILURE TO MAKE MINIMUM PAYMENT.** If you do not make at least the Minimum Payment Due by the Payment Due Date each month, you will be in default.

**12. CREDIT BALANCES.** We will refund any credit balance within seven in paragraph C below) from the date of posting to your Account in the date of repayment.

**13. FINANCE CHARGES.** We will impose Finance Charges as follows:

**Purchases**

A. A Finance Charge is imposed on purchases (except as referred to in paragraph C below) from the date of posting to your Account in the date of repayment.

B. For each billing cycle:

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Purchases. The Monthly Periodic Rate is 1.55% (which corresponds to an ANNUAL PERCENTAGE RATE of 18.9%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Purchases is the sum of the daily unpaid balances of purchases on each day of the billing cycle covered by your current billing statement divided by the number of days in the billing cycle. Such daily balances are determined by starting with the beginning balance of purchases and adding new purchases and by adding any new debit or credit charges against such unpaid balances and by deducting payments and credits applied against such unpaid balances, and by adding new purchases. The unpaid balance of each billing cycle's purchases, in each case, is the amount posted to your Account.

(2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Purchases. The Monthly Periodic Rate is 1.55% (which corresponds to an ANNUAL PERCENTAGE RATE of 18.9%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Purchases is the sum of the daily balances of purchases in that billing cycle divided by the number of days in that billing cycle. Such daily balances are determined by starting with the beginning balance of purchases and by deducting payments and credits applied against such unpaid balances and by adding new purchases. The unpaid balance of purchases, in each case, is the amount posted to your Account.

C. We add the amounts determined under (1) and (2) to obtain the Finance Charge on purchases.

C. A Finance Charge is not imposed on:

(1) New purchases posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or (b) there was no previous balance; and in either case (b) you pay the New Balance shown on the current billing statement covering the billing cycle in which the new purchase is shown by the Payment Due Date shown on that billing statement.

(2) Old purchases previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

JUN 17 '96  09:18AM  NOVUS SERVICE  P.1

JUN 17 '96  09:19PM  NOVUS SERVICE                                                P.4

for each billing cycle:

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Cash Advances. The Monthly Periodic Rate is 1.55% (which corresponds to an ANNUAL PERCENTAGE RATE of 18.6%) unless you are a resident of Maine, North Carolina or Wisconsin. If you are a resident of Maine, North Carolina or Wisconsin, the Monthly Periodic Rate is 1.583% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.0%). The Average Daily Balance of Cash Advances is the sum of the daily unpaid balances of cash advances on each day of the billing cycle covered by the current billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting from the sum of all unpaid balances of cash advances as of the date of the transaction.

We add to the amounts determined under (1), and (3) to obtain the Finance Charge on Cash Advances.

9. Finance Charge (other than the one-time Finance Charge in sub-paragraph 8(3) above) is not imposed on:
New cash advances posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or such New Balance was zero and (b) you pay the New Balance shown on the billing statement itemizing the cash advances by the Payment Due Date shown on that billing statement.

---

14. MINIMUM FINANCE CHARGE. We will charge you a minimum FINANCE CHARGE of $.50 for any billing cycle in which a FINANCE CHARGE of less than $.50 would otherwise be imposed.

15. ANNUAL MEMBERSHIP FEE. (ONLY NORTH CAROLINA AND WISCONSIN RESIDENTS.) If you are a resident of North Carolina or Wisconsin, such fee will be waived for the first year in which you use the Account. Such fee will be waived for the first year in which you are a Cardmember unless you become a Cardmember through acceptance of a special offer from us, in which case a pro-rated portion of such fee is not refundable Annual Membership Fee of $15.00, posted to an Account subject to this Agreement. You may thereafter renew your Account, but such fee will be charged only once for the billing cycle which your Account is not in default. You may renew your Account for the next year from the date when such fee is charged by paying the next Annual Membership Fee which we will post to your Account annually during the billing cycle following the anniversary month shown on the face of your Card.

16. (circled) DEFAULT-COLLECTION COSTS. You are in default if you fail to comply with terms of this Agreement, including failure to make a required payment when due or exceeding your line of credit. If you are in default and we refer your Account to an attorney, we may charge you a reasonable attorney's fee plus court costs as permitted by law and as actually incurred by us.

17. LATE PAYMENT CHARGE. We will charge you a Returned Check Charge of $10.00 if you fail to make a required payment within 20 days after the Payment Due Date in each billing cycle.

18. RETURNED CHECK CHARGE. We will charge you a Returned Check Charge of $10.00 if any check you give us with or we guarantee a check that is returned unpaid.

19. CANCELLATION. You may cancel your Account by notifying us in writing and returning the Card to us cut in half. Of course, you will be responsible to pay any amount you owe us according to the terms of this Agreement. We may cancel or suspend your Account at any time without notice. If we are unable to pay your obligations to us, if you are insolvent or in bankruptcy, or if you die.

20. PRIVACY. We may investigate your credit, employment and income records and verify your credit references. We also may report to credit reporting agencies and other creditors the status and payment history of your Account. We may obtain information concerning you, and we may release information regarding your account to third parties unless you are in default or if you are a party to a transaction. However, we may include your name and address and other information in lists that customers of may be of interest to you. Our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to our cardmembers.

21. CREDIT AUTHORIZATIONS. Certain purchases and cash advances will require our authorizations prior to completion of the transaction. In some cases, you may be asked to provide identification. If our authorization system is not working, we may not be able to authorize a transaction, even if you have sufficient available credit. We will not be liable to you if any of these events happen.

22. CHANGE OF TERMS. We may change any term or part of this Agreement, including future charges risk, fee or method of computing any balance upon which this finance charge rate is assessed, by

---

23. CHANGE OF ADDRESS. If you change your address you must notify us of your new address within 15 days.

24. ASSIGNMENT OF ACCOUNT. We may sell, assign or transfer your Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account without first obtaining our prior written consent.

25. GOVERNING LAW. This Agreement will be governed by the laws of the United States and applicable federal laws. If any part of this Agreement becomes unenforceable, it will not make any other part unenforceable.

Greenwood Trust Company
DISCOVER CARD

Vice President

# EXHIBIT 5

MUNICIPAL DEPARTMENT, FIRST DISTRICT

07M1 160024

HBLC, Inc., final transfer             Case No. _____
of Discover Card

          Plaintiff,

v.                                    Claimed: $ 8599.49 plus costs

JAMES GLASS,

          Defendant.                 Return Date: July 27, 2007
                                                     JUNE 13, 2008

### VERIFIED COMPLAINT

Now comes Plaintiff, HBLC, Inc., final transferee of Discover Card and claims as follows:

      1.       That the Plaintiff is a corporation authorized to transact business in the State of Illinois and is the owner of this account having purchased said account in the regular course of business in good faith and for value.

      2.       That Defendant(s) opened an Discover Card credit card account (account number 601100797042336) and made purchases and charged same to the account but has failed to make monthly payments called for on the account. A true and correct copy of the Cardmember Agreement is attached hereto as Exhibit "2".

      3.       That pursuant to the Affidavit attached hereto as Exhibit "1" there is due to Plaintiff from the Defendant, as of the filing date of this complaint, the sum of $8599.49 (which includes $350 as reasonable attorneys' fees as permitted by the Cardmember Agreement) plus court costs as permitted by the Cardmember Agreement and as permitted by statute plus post-judgment interest at the rate allowed by law until the debt is paid.

      4.       That Defendant(s) is in default on the account and has refused to pay the balance due after demand by Plaintiff or its Assignor.

      WHEREFORE, Plaintiff, HBLC, Inc., prays for Judgment against Defendant, JAMES GLASS, in the amount of $8599.49 (which includes reasonable attorneys' fees of $350) plus court costs plus post-Judgment interest at the rate allowed by law on the unpaid balance.



                                     Steven J. Fink & Assoc., P.C.

                                     By_____

Steven J. Fink & Assoc., P.C.
Attorney for the Plaintiff
25 E. Washington Ste. 1233(a)
Chicago, IL 60602
(312) 659-2024
Attorney's No. 52383

Federal law requires me to advise you that we are attempting to collect a debt and any information obtained from you will be used for that purpose. Unless you dispute the validity of this debt, or any portion of it, within 30 days after receipt of this notice, in writing, the debt will be assumed to valid. If you do dispute the debt's validity, we will provide verification or a copy of any Judgment taken against you and the and address of the original creditor if different from the current creditor.




AFFIDAVIT OF INDEBTEDNESS


Cynthia Rogers, after having been first duly sworn, on oath states that if called to testify in this matter she would testify to the following facts:

1.    That she is an agent of Plaintiff, HBLC, Inc.. Upon information provided to her by the transferor of the debt, she is familiar with certain facts surrounding the debt forming the basis of the herein Complaint, including but not limited to the amount due.

2.    That Plaintiff is the owner of the account forming the basis of the herein Complaint having purchased said account in the regular course of business in good faith and for value, and as such, Plaintiff is the current holder of this debt and the party to whom the Defendant, JAMES GLASS, is liable.

3.    That after all charges and just credits to this account have been given to the defendant, there remains due and owing to Plaintiff from Defendant, JAMES GLASS, the sum of $8599.49 (which includes $350 as reasonable attorney fees) plus court costs and post-judgment interest at the rate allowed by law.


_____
Cynthia Rogers


Subscribed and sworn to before me
on this the 8th day of June, 2007


_____
Notary Public

OFFICIAL SEAL
BRIAN ROGERS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/13/11

Case 3:08-cv-02714-JSW Document 37-2 Filed 12/01/2008 Page 37 of 38

# Base Card
# CARDMEMBER AGREEMENT

Please read this Agreement carefully before using the Discover Card. It contains the terms and conditions of the Discover Card Account, some of which may have been changed from earlier materials provided to you. In the event of any differences, this Agreement shall control.

**AGREEMENT TERMS.** The word Card means any one or more Discover Cards issued to you or to an authorized user. The word Account means your Discover Card Account. The words you, your, or yours mean you, the cardmember, and any person or persons who are also contractually liable under this Agreement. The words we, us and our mean Greenwood Trust Company, a Delaware bank.

**ACCEPTANCE OF AGREEMENT.** The use of your Account or the Card by you or by anyone whom you authorize or permit to use the Card means you accept this Agreement. However, only if you are a resident of North Carolina or Wisconsin, the Annual Membership Fee provided for in Section 15 will be charged to your Account regardless of whether you use your Account or the Card, unless you have cancelled your Account as provided for in Section 16 within 30 days of receipt of your Card.

**USE OF YOUR ACCOUNT AND THE CARD.** You agree that you will only use your Account or the Card for personal, family, household and charitable purposes. Your Account or the Card may not be used for business or commercial purposes or to obtain loans to purchase, carry or trade in securities. Prior to its use, each Card must be signed by the person to whom it is issued. Your Account and the Card may be used for the following purposes:

To purchase or lease goods or services from participating establishments.

To obtain cash advances by means of automated teller machines or checks in accordance with such additional terms and conditions as may be imposed from time to time.

To guarantee personal checks at participating establishments subject to cash availability and such conditions as the participating establishments may impose. Any guaranteed personal check returned unpaid for any reason will become liable shall be treated as a cash advance and a returned check and shall be subject to a Returned Check Charge.

To guarantee hotel reservations at participating establishments. You will be liable for guaranteed reservations that are not cancelled prior to 6 p.m. of the date of arrival or such other time as the establishment may impose.

If you are not responsible for the refusal of anyone to accept or honor the Card. The Card is our property. You must return it to us or our agent on request.

**AUTHORIZED CARD USERS.** If you want to cancel the authorized or permitted use of your Account or the Card by another person, you must notify us in writing and may, cut in half and return to us any Card in such person's possession.

**LIABILITY FOR UNAUTHORIZED USE.** If the Card is lost or stolen, or if you think that someone is using your Account or the Card without your permission, notify us immediately. You can notify us by telephoning us at 1-800-DISCOVER, or by writing us at DISCOVER CARD, P.O. Box 30943, Salt Lake City, UT 33507-NAT'L. REV. 2/90

**6. LINE OF CREDIT.** We will advise you of your line of credit. We may increase or decrease your line of credit from time to time. If you exceed or attempt to exceed your line of credit, you will be in default.

**7. PROMISE TO PAY.** You agree to pay us in U.S. Dollars for all purchases and cash advances, including applicable Finance Charges and other charges or fees, incurred by you or anyone you authorize or permit to use your Account or the Card, even if you do not notify us that others are using your Account or the Card. We will convert purchases and cash advances made in a foreign currency to U.S. Dollars at the rate existing on the date of conversion. We may refuse to accept the payment of or charge your Account our cost to convert your payment to U.S. Dollars. All checks must be drawn on funds on deposit in the U.S. If your Account is a joint account, each of you agrees to be liable individually and jointly for the entire amount owed on your Account.

We can accept late payments or partial payments or checks and money orders marked "payment in full" without losing any of our rights under this Agreement.

**8. MONTHLY BILLING STATEMENT.** We will send you a billing statement after each monthly billing cycle in which you have a debit or credit balance in excess of $1.00. The billing statement will show all purchases, cash advances, Finance Charges and other charges or fees and all payments or other credits posted to your Account during the billing cycle. It will show your New Balance. Minimum Payment Due and Payment Due Date. Purchases will be identified by the amount and date of the transaction, the date of posting to your Account, the seller's name and the city and state of foreign country where the transaction took place. Cash advances will be identified by the amount of the transaction, the date of the transaction (either the date the cash advance is obtained or the date of the credit document) and the date of posting to your Account.

**9. MONTHLY PAYMENT OPTIONS.** You may at any time pay the entire New Balance shown on your billing statement, but each month you must pay at least the Minimum Payment Due. All payments must be mailed or delivered to us at the address shown on your monthly billing statement or by using the envelope enclosed with such statement. All payments will be applied in the following order: Finance Charges and other charges or fees, cash advances in the order made and purchases in the order made.

**10. MINIMUM MONTHLY PAYMENT.** The Minimum Payment Due each month will be either (a) the entire New Balance shown on your billing statement if the New Balance is less than $10.00, or (b) the greater of $10.00 or an amount equal to 1/35th of the New Balance rounded to the next higher amount during each monthly billing cycle which will be adjusted by the minimum payment due for each monthly billing cycle will be reduced by the Minimum payment for in excess of the New Balance shown due, as calculated in (a) and (b) above. In any of the above previous monthly billing cycles, less any portion of the excess already used to reduce payments. However, there will be no reduction if you have previously paid or credit or if you have paid the entire New Balance shown on your billing statement.

**11. FAILURE TO MAKE MINIMUM PAYMENT.** If you do not make at least the Minimum Payment Due by the Payment Due Date each month, you will be in default.

**12. CREDIT BALANCES.** We will refund any credit balance within seven business days from receipt of your written request. If you do not request a refund, we will automatically refund credit balances greater than $1.00 which remain in your Account after two billing cycles.

**13. FINANCE CHARGES.** We will impose Finance Charges as follows:

**Purchases**

A. A Finance Charge is imposed on purchases (except as referred to in paragraph C below) from the date of posting to your Account to the date of repayment.

B. For each billing cycle:

(1) We multiply the Monthly Periodic Rate times the Average Daily Balance of Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin, in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Purchases is the sum of the daily unpaid balances of purchases on each day of the billing cycle divided by your current billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case as of the date posted to your Account.

(2) We multiply the Monthly Periodic Rate times the Average Daily Balance of Previous Billing Cycle Purchases. The Monthly Periodic Rate is 1.65% (which corresponds to an ANNUAL PERCENTAGE RATE of 19.8%) unless you are a resident of Maine, North Carolina or Wisconsin in which case the Monthly Periodic Rate is 1.5% (which corresponds to an ANNUAL PERCENTAGE RATE of 18%). The Average Daily Balance of Previous Billing Cycle Purchases is the sum of the unpaid balances of purchases itemized on your last billing statement on each day of the billing cycle covered by your last billing statement divided by the number of days in the billing cycle. Such unpaid balances are determined by deducting payments and credits applied against such unpaid balances and by adding new purchases, unpaid finance charges, fees and other charges, in each case, as of the date posted to your Account.

(3) We add the amounts determined under (1) and (2) to obtain the Finance Charge on purchases.

C. A Finance Charge is not imposed on:

(1) New purchases posted during a billing cycle if (a) you paid the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement or such New Balance was zero and (b) you pay the New Balance shown on the billing statement itemizing the new purchases by the Payment Due Date shown on that billing statement.

(2) Old purchases previously posted for a billing cycle during which you pay the New Balance shown on the billing statement covering the preceding billing cycle by the Payment Due Date shown on that billing statement.

Case 1:08-cv-02718 Document 137-2 Filed 07/07/2008 Page 38 of 38

P.4

**14. MINIMUM FINANCE CHARGE.** We will charge you a minimum FINANCE CHARGE of $.50 on any billing cycle in which a FINANCE CHARGE of less than $.50 would otherwise be imposed.

**15. ANNUAL MEMBERSHIP FEE.** (ONLY Agent of NORTH CAROLINA AND WISCONSIN Accounts to say) If you are a resident of North Carolina or Wisconsin, a nonrefundable Annual Membership Fee of $15.00, posted year in North Carolina and at the end of your membership year in Wisconsin, a nonrefundable Annual Membership Fee of $15.00, posted to your Account. Such fee will be waived for the first year you are a Cardmember unless you became a Cardmember through acceptance of a special offer from us, in which case, all or a portion of the fee may be waived or rebated in accordance with the terms of such offer. You may have more than one Card per Account, but only one charged only one fee for that account. Unless you notify us by during the billing period following the expiration month shown on the face of your Card.

**16. RETURNED CHECK CHARGE.** We will charge you a Returned Check Charge of $15.00 each time you pay us with or we guarantee a check that is returned unpaid.

**17. LATE CHARGE.** We will charge you a Late Charge of $10.00 if you fail to make a required payment within 20 days after the Payment Due Date in any month.

**18. DEFAULT-COLLECTION COSTS.** You are in default if you fail to comply with the terms of this Agreement, including failing to make a required payment when due or exceeding your line of credit. If you are in default and we refer the collection of your Account to an attorney, we may charge you reasonable attorneys' fees and court or other collection costs as permitted by law and as actually incurred by us.

**19. CANCELLATION.** You may cancel your Account by notifying us in writing and returning the Card to us cut in half. Of course, you will still be responsible to pay any amount you owe us according to the terms of this Agreement. We may cancel or suspend your Account at any time without notice. We or our agent suspect immediately and payable without notice. If you are in default, if we have a reasonable belief that you are unable or unwilling to repay your obligations to us. If you are insolvent or in bankruptcy, or if you die.

**20. PRIVACY.** We may investigate your credit, employment and income records and verify your credit references. We also may report to credit reporting agencies and other creditors the status and payment history of your Account. We will not release this information to any other party without your prior written permission or proper legal process, unless you are in default or if you file a petition in bankruptcy, or which case we may release information regarding your account to third parties related by us to assist us in enforcing our rights process and other providers information or lists of cardmembers furnished to companies selling products or services that may be of interest to you. Our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to our cardmembers.

**21. CREDIT AUTHORIZATIONS.** Certain purchases and cash advances will require our authorization prior to completion of the transaction. In some cases, you may be asked to provide identification. If our authorization system is not working, we may not be able to authorize a transaction, even if you have sufficient available credit. We will not be liable to you if any of these events happen.

**22. CHANGE OF TERMS.** We may change any term or part of this Agreement, including finance charge rate, fee or method of computing any balance upon which the finance charge is assessed, by

**23. CHANGE OF ADDRESS.** If you change your address you must tell us of your new address within 15 days.

**24. ASSIGNMENT OF ACCOUNT.** We may sell, assign or transfer your Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account without first obtaining our prior written consent.

**25. GOVERNING LAW.** This Agreement will be governed by the laws of the State of Delaware and applicable federal laws. In a case of this Agreement becomes unenforceable, it will not make and other part unenforceable.

sending you a written notice at least 30 days before date the change is to become effective. We may apply any such change to the outstanding balance of your Account on the effective date of the change and to new charges made after that date. If you do not agree to the change, you must notify us in writing within 30 days after the mailing of the notice of change at the address provided in the notice of change, in which case your Account will be closed and you must pay us the balance that you owe us under the existing terms of the unchanged Agreement. Otherwise, you will have agreed to the changes in the notice. Use of the Card after the new terms date of the change shall be deemed acceptance of the new terms as of such effective date, even if you previously notified us that you did not agree to the change.

Greenwood Trust Company
DISCOVER CARD

_Vice President_